## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DINO G. PETROCELLI,            )
                              )
              Plaintiff,       )
                              )
      vs.                      )
                              )   Case No. 04-CV-943-KAJ
DAIMLERCHRYSLER CORPORATION,   )
                              )
              Defendant.       )
                              )

## OPENING BRIEF IN SUPPORT OF DEFENDANT DAIMLERCHRYSLER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

Jennifer Gimler Brady (Bar I.D. #2874)
Sarah E. DiLuzio (Bar I.D. #4085)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000 - Telephone
(302) 658-1192 – Facsimile
jbrady@potteranderson.com – Email
sdiluzio@potteranderson.com - Email

*Attorneys for DaimlerChrysler Corporation*

OF COUNSEL:

William C. Martucci, Mo. #28237
Kristen Aggeler Page, Mo. #50852
SHOOK, HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Tel: 816-474-6550
Fax: 816-421-5547

Dated: November 1, 2005

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ iv

NATURE AND STAGE OF THE PROCEEDINGS ........................................... 1

SUMMARY OF ARGUMENT ......................................................................... 2

STATEMENT OF FACTS ................................................................................ 3

    Plaintiff's Employment With DaimlerChrysler ........................................ 3

    DaimlerChrysler's Discrimination and Harassment Prevention
        Policies ............................................................................................ 4

    Plaintiff's Relationship With Co-Worker Shannon Logan ....................... 5

    Plaintiff's Poor Record of Performance for DaimlerChrysler .................. 6

    Plaintiff's Record of Tardiness and Absenteeism While Employed
        By DaimlerChrysler ........................................................................ 8

    Individuals Plaintiff Claims Were Treated More Favorably
        Regarding Discipline ...................................................................... 8

    Plaintiff's Substance Abuse Problem, Conviction, and Sentence ............ 9

    Plaintiff's Statements About His Working Environment ......................... 10

        The Application Process ................................................................. 10

        Alleged Incidents of Harassment ................................................... 11

    Plaintiff's Beliefs About His Working Environment ............................... 14

    The End of Plaintiff's Employment With DaimlerChrysler ..................... 14

    Plaintiff's First Charge of Discrimination .............................................. 16

    Plaintiff's Second Charge of Discrimination .......................................... 16

    Plaintiff's Federal Lawsuit Against DaimlerChrysler ............................. 17

ARGUMENT .................................................................................................................... 18

I.    SUMMARY JUDGMENT IS APPROPRIATE ON ALL OF
      PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CANNOT MAKE
      OUT THE ESSENTIAL ELEMENTS OF HIS CLAIMS AND
      THERE ARE NO GENUINE ISSUES OF MATERIAL FACT ................................ 18

II.   DAIMLERCHRYSLER IS ENTITLED TO SUMMARY
      JUDGMENT ON PLAINTIFF'S TITLE VII AND STATE LAW
      DISCRIMINATION CLAIMS ............................................................................... 19

      A.    Plaintiff's National Origin Discrimination Claim Based on
            Discipline Fails As A Matter of Law ........................................................ 21

            1.    Plaintiff Cannot Meet His Prima Facie Burden ............................ 21

            2.    DaimlerChrysler Acted With Legitimate and Non-
                  Discriminatory Reasons ................................................................ 23

            3.    Plaintiff Cannot Establish that DaimlerChrysler's
                  Reasons are Pretextual .................................................................. 23

      B.    Plaintiff's National Origin Discrimination Claim Based on
            His Discharge Fails As A Matter of Law .................................................. 25

            1.    Plaintiff Cannot Meet His Prima Facie Burden ............................ 25

            2.    DaimlerChrysler Acted With Legitimate and Non-
                  Discriminatory Reasons ................................................................ 26

            3.    Plaintiff Cannot Establish that DaimlerChrysler's
                  Reasons are Pretextual .................................................................. 27

III.  DAIMLERCHRYSLER IS ENTITLED TO SUMMARY
      JUDGMENT ON PLAINTIFF'S TITLE VII HOSTILE WORK
      ENVIRONMENT CLAIM ...................................................................................... 27

      A.    DaimlerChrysler Is Entitled to Judgment As a Matter of
            Law on Plaintiff's Hostile Work Environment Claim
            Because the Alleged Incidents Supporting the Claim Do
            Not Demonstrate "Regular and Pervasive" Discrimination ...................... 28

            1.    Alleged Name-Calling ................................................................... 28

            2.    Alleged Unfair Discipline .............................................................. 29

            3.    Alleged Graffiti ............................................................................. 30

            4.    Alleged Unfair Treatment .............................................................. 30

IV.   DAIMLERCHRYSLER   IS   ENTITLED   TO   SUMMARY
JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM ............................................. 33

    A.   Plaintiff's Retaliation Claim Fails Because It Was Not
Timely Filed ................................................................................................. 33

    B.   Moreover, There is No Causal Link Between the Purported
Protected Activity and the Purported Adverse Action ................................. 34

V.   DAIMLERCHRYSLER   IS   ENTITLED   TO   SUMMARY
JUDGMENT ON PLAINTIFF'S DEFAMATION CLAIM ......................................... 35

CONCLUSION ................................................................................................................. 37

iii

## TABLE OF AUTHORITIES

### CASES

*Abramson v. William Paterson College of New Jersey*, 260 F.3d 286 (3d Cir. 2001)...................................................................................................................33

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074 (3d Cir. 1996)...................................27, 29

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).............................................................18

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990)..............................................27

*Battista v. Chrysler Corp.*, 454 A.2d 286 (Del. Super. Ct. 1981)...........................................36

*Cannon v. State of Delaware*, 523 F. Supp. 341 (D. Del. 1981)..............................................19

*Eddy v. V.I. Water & Power Authority*, 369 F.3d 227 (3d Cir. 2004) .......................................18

*EEOC v. Metal Service, Co.*, 892 F.2d 341 (3d Cir. 1990)......................................................19

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) ...........................................28, 29, 31, 32

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000).............................................33

*Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994) ................................................................20, 23

*Giles v. Family Court*, 411 A.2d 599 (Del. 1980) ....................................................................19

*Gill v. Delaware Park, LLC*, 294 F.Supp.2d 638 (D. Del. 2003) .............................................35

*Gonzalez v. Avon Products, Inc.*, 609 F. Supp. 1555 (D. Del. 1985) .......................................36

*Grice v. U.S. Postal Svc.*, No. 05-2404 (DRD), 2005 WL 152880 (D.N.J. June 29, 2005).....................................................................................................................33

*Hare v. H & R Industries, Inc.*, 67 Fed. Appx. 114 (3d Cir. 2003) ..........................................27

*Jones v. Boyd*, No. 97-3363, 1998 WL 314668 (E.D. Pa. June 11, 1998)...............................33

*Jones v. Sch. Dist. of Phila.*, 198 F.3d 403 (3d Cir. 1999)......................................................20

*Keller v. Orix Credit Alliance*, 130 F.3d 1101 (3d Cir. 1997)...................................................21

*Kidd v. MBNA America Bank, N.A.*, 224 F.Supp.2d 807 (D. Del. 2002)..................................18

*Kunin v. Sears Roebuck & Co.*, 175 F.3d 289 (3d Cir. 1999)..................................................27

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......................18

*McDonnell Douglas Corp v. Green.* 411 U.S. 792 (1973) ............................................19, 20, 21

*McKay v. Delaware State University*, No. 99-219-SLR, 2000 WL 1481018
 (D. Del. Sept. 29, 2000)............................................................................................................19

*Miller v. Town of Milton*, No. 03-876-SLR, 2005 WL 549531 (D. Del. Mar. 8,
 2005)...........................................................................................................................................20

*Ocasio v. Lehigh Valley Family Health Center*, 92 Fed.Appx. 876 (3d Cir.
 2004).............................................................................................................................................31

*Page v. City of Pittsburgh*, 114 Fed. Appx. 52 (3d Cir. 2004) .....................................................31

*Revis v. Slocumb Indus.*, 814 F. Supp. 1209 (D. Del. 1993)..........................................................18

*Seabrook v. Gadow*, No. 01-802-SLR, 2003 WL 2138719 (D. Del. June 10,
 2003).................................................................................................................................20, 24, 25

*Sherrod v. Philadephia Gas Works*, 57 Fed.Appx. 68 (3d Cir. 2003) ........................................31

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993)...........................................................21, 24

*Verdin v. Weeks Marine, Inc.*, 124 Fed. Appx. 92 (3d Cir. 2005) ..............................................32

## STATUTES

42 U.S.C. § 2000................................................................................................................ *passim*

## RULES

Fed. R. Civ. P. 56 .......................................................................................................................18

## NATURE AND STAGE OF THE PROCEEDINGS

This is an employment discrimination case brought by *pro se* Plaintiff Dino G. Petrocelli against his former employer, DaimlerChrysler Corporation. Plaintiff worked for DaimlerChrysler Corporation at its Newark, Delaware Parts Distribution Center as a picker/packer from May 19, 1997 through January 11, 2002. Plaintiff was a substandard employee who demonstrated numerous discipline and absenteeism problems during his employment with DaimlerChrysler, all of which culminated in his ultimate dismissal in January of 2002.

Plaintiff filed his Complaint against DaimlerChrysler on August 16, 2004, claiming that he was discriminated against in violation of Title VII and the Delaware Discrimination in Employment Act based on his national origin (Hispanic). (D.I. 2). He claims that he suffered discrimination when he was subjected to discipline, when his employment was terminated, and when he was subjected to working in a hostile environment. DaimlerChrysler was eventually served with Plaintiff's Complaint and filed its Answer on February 14, 2005, denying all of Plaintiff's claims and asserting a number of defenses to them. (D.I. 16). On February 25, 2005, Plaintiff filed a motion with the Court to amend his Complaint. (D.I. 21). The Court granted Plaintiff leave to file his Amended Complaint on September 28, 2005. (D.I. 53). The Amended Complaint appears to assert additional claims for retaliation and defamation. (D.I. 21). DaimlerChrysler filed its Answer to Plaintiff's Amended Complaint on October 12, 2005. (D.I. 54).

On March 31, 2005, the Court entered a Scheduling Order, which required that discovery be completed by October 1, 2005. (D.I. 31). During the discovery period, documents were exchanged and Plaintiff's deposition was taken. Plaintiff did not take any depositions nor did he propound any written discovery. DaimlerChrysler now moves the

1

Court to enter summary judgment in its favor on all of Plaintiff's claims and submits this Opening Brief in support of its motion.

## SUMMARY OF ARGUMENT

I.    Summary judgment is appropriate in this case because Plaintiff has failed to establish a genuine issue of material fact and cannot support all the elements of his claims.  Therefore, DaimlerChrysler is entitled to judgment as a matter of law.

II.    DaimlerChrysler is entitled to summary judgment on Plaintiff's disparate treatment claims under Title VII and the Delaware Discrimination in Employment Act  because: (1) Plaintiff cannot establish his prima facie case; (2) DaimlerChrysler acted with legitimate, non-discriminatory reasons; and (3) there is no evidence of pretext.

III.    DaimlerChrysler is entitled to summary judgment on Plaintiff's hostile work environment claim under Title VII and the Delaware Discrimination in Employment Act because the conduct alleged is not sufficiently "regular and pervasive."

IV.    DaimlerChrysler is entitled to summary judgment on Plaintiff's retaliation claim under Title VII.  First, Plaintiff's claim was not timely filed because it was filed far more than 90 days following the EEOC's issuance of the Dismissal and Notice of Rights with respect to the claim of retaliation – in fact, it was filed 341 days following issuance of the Dismissal and Notice of Rights.  Second, the retaliation claim fails because there is no causal link between the purported adverse employment action and the purported protected activity.

V.    DaimlerChrysler is entitled to summary judgment on Plaintiff's common law defamation claim because Plaintiff cannot make out his prima facie case and because DaimlerChrysler's alleged defamatory statements are protected by the employer-employee privilege.

2

## STATEMENT OF FACTS

### Plaintiff's Employment With DaimlerChrysler

1.      Plaintiff Dino G. Petrocelli applied for employment with DaimlerChrysler Corporation on March 15, 1997. *See* Plaintiff's Application for Employment (A1-A2)[1].

2.      Plaintiff was eventually hired and began working at DaimlerChrysler's Parts Distribution Center located in Newark, Delaware ("Newark PDC") in May of 1997. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 81:2-4 (A11).

3.      The primary business function of the Newark PDC is to consistently provide on a timely basis, quality and defect free parts deliveries to DaimlerChrysler corporation dealers servicing customer's automobiles. The Newark PDC services the following geographical areas: Delaware, Maryland, Southeastern Pennsylvania, South New Jersey, Virginia, West Virginia, and Eastern North Carolina. *See* DaimlerChrysler Newark Parts Distribution Center Guidelines Manual (A39-A90).

4.      Plaintiff initially began working on the dock at the Newark PDC and eventually moved to working in the warehouse as a picker/packer. During his entire employment at the Newark PDC, Plaintiff worked on the night shift. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 77:12-78-10 (A10-A11).

5.      For most of his employment, Plaintiff worked as a picker/packer, which means that he picked automotive parts from various shelving locations, so that those parts could be packaged and transported to the various locations where they were needed. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 85:7-19 (A12).

---

[1]      Pertinent documentary evidence and excerpts of the Plaintiff's deposition transcripts are included in Defendants' Appendix to their Opening Brief in Support of their Motion for Summary Judgment, referred to herein as ("A___"), and filed contemporaneously herewith.

6.      DaimlerChrysler Corporation discharged Plaintiff on January 11, 2002, based on his repeated violations of the company's standards of conduct and for his poor record of performance. *See* Letter from Dawn Reese to Plaintiff dated January 16, 2002 (A91).

7.      During his entire employment, Plaintiff was a member of the United Auto Workers union, Local 404. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 88:12-21 (A13).

### DaimlerChrysler's Discrimination and Harassment Prevention Policies

8.      DaimlerChrysler is committed to providing a workplace that is free of discrimination and harassment.  In working toward this commitment, DaimlerChrysler has established and promulgates its Discrimination and Harassment Prevention Policy to all employees. *See* DaimlerChrysler's Discrimination and Harassment Prevention Policy (A92-A95).

9.      DaimlerChrysler's policy is to provide equal employment opportunity without regard to race, color, gender, sexual orientation, age, veteran status, marital status, religion, national origin, and disability unrelated to the ability to perform a job.  *See* DaimlerChrysler's Discrimination and Harassment Prevention Policy (A92-A95).

10.      DaimlerChrysler also does not tolerate harassment of any kind in the workplace or retaliation. *See* DaimlerChrysler's Discrimination and Harassment Prevention Policy (A92-A95).

11.      It is DaimlerChrysler's policy that anyone who believes he or she has been subjected to or witnessed activity or behavior in the workplace that violates the Discrimination and Harassment Policy make DaimlerChrysler aware of the conduct. Employees are advised to notify either: (1) DaimlerChrysler's Diversity and Work/Life

4

Office at 1-866-374-1208; (2) the local Human Resources office; or (3) management. Employees covered by a collective bargaining agreement are also encouraged to use mechanisms provided under the terms and conditions of the applicable agreement. *See* DaimlerChrysler's Discrimination and Harassment Prevention Policy (A92-A95).

12. Plaintiff was aware of DaimlerChrysler's Discrimination and Harassment Prevention Policy. *See* Plaintiff's Deposition at August 8-9, 2005, at pp. 113:10-114:2 (A18-A19).

13. Plaintiff recalls attending anti-harassment training as an employee of DaimlerChrysler. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 224: 9-16 (A35).

14. Plaintiff specifically recalls being trained that he should bring concerns regarding harassment and discrimination to the attention of his supervisor or human resources. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 226:23-227:5 (A36).

15. Plaintiff also recalls that he knew if he had a concern about work, he should contact his union committee person. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 88:12-89-3 (A13).

16. Plaintiff testified that he found the various union committee persons on his shift easy to deal with and approachable. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 90:17-92:8 (A14).

**Plaintiff's Relationship With Co-Worker Shannon Logan**

17. During his employment at the Newark PDC, Plaintiff dated co-worker Shannon Logan for approximately one year. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 93:12-94:14 (A14-A15).

18. Plaintiff and Ms. Logan both worked on the night shift. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 94:9-14 (A15).

19.    Plaintiff received discipline for taking excessive breaks with Ms. Logan. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 102:18-21 (A16).

**Plaintiff's Poor Record of Performance for DaimlerChrysler**

20.    In order to maintain a safe, well-run organization, DaimlerChrysler has established necessary policies and practices that must be followed. Those policies and practices are collectively referred to as the "Standards of Conduct." *See* DaimlerChrysler Corporation's Standards of Conduct (A96-A97).

21.    During his employment, Plaintiff received a copy of DaimlerChrysler's Standards of Conduct and was aware of those standards. *See* Newark PDC Employee Indoctrination Orientation, Guidelines Manual Signoff (A98). *See also* Plaintiff's Deposition dated August 8-9, 2005, at p. 119:12-21 (A20).

22.    According to DaimlerChrysler's Standards of Conduct, if one of the Standards is violated, DaimlerChrysler will take disciplinary action, up to and including discharge. *See* DaimlerChrysler Corporation's Standards of Conduct (A96-A97).

23.    Among the thirty-one Standards of Conduct for DaimlerChrysler, Plaintiff violated the following Standards during his employment (many were violated on more than one occasion):

    a.    No. 4: Leaving your work station, office or plant during working hours without permission, or failing to return to work after lunch or relief without permission.

    b.    No. 5: Failure to exert normal work effort on the job, wasting time, loitering, loafing or sleeping on the job.

    c.    No. 6: Failure or refusal to follow the instructions of supervision.

    d.    No. 10: Negligent or deliberate damage or destruction of property owned or held by the Corporation or any employee, or the abuse or misuse or unauthorized use of any such property.

6

e.    No. 14: Threatening, intimidating, coercing, harassing, retaliating or using abusive language to others.

f.    No. 15: Fighting, "horseplay" or other disorderly, disruptive or unruly conduct.

g.    No. 29: Failure to follow safety procedures or to wear or use as instructed required safety or health protective equipment.

*See* Documentation of Plaintiff's Disciplinary Record (A99-A119).

24.    Plaintiff received the following specific discipline during his employment at the Newark PDC:

a.    On April 14, 1999, Plaintiff was given a Supervisor's Report by supervisor Stephen Gwin for his violation of Standards of Conduct 5 and 6 in connection with his failure to follow his supervisor's instructions and to return promptly to work.

b.    On April 30, 1999, Plaintiff was given a Notice of Disciplinary Layoff by supervisor Stephen Gwin. He was given a five-day disciplinary layoff in connection with his violation of Standards of Conduct 6, 10, 14, 15, and 29. The specific incident involved Plaintiff behaving in an irrational and abusive manner and not performing his job.

c.    On May 31, 2000, Plaintiff was given a Supervisor's Report by supervisor William Matthews for his violation of Standards of Conduct 4, 5, and 6. Specifically, Plaintiff did not answer a page by his supervisor for a work assignment.

d.    On June 27, 2000, Plaintiff was given a Supervisor's Report and a ten-day disciplinary layoff in connection with two separate incidents involving Plaintiff's violation of Standards of Conduct 4, 5, 6, and 14. The first incident involved Plaintiff's reaction to being told he could not go home early, and the second involved Plaintiff being found outside the building during working time without permission.

e.    On March 7, 2001, Plaintiff was given a Supervisor's Report and ten-day disciplinary layoff in connection with Plaintiff's violation of Standards of Conduct 4 and 5. The incident involved Plaintiff's failure to properly perform his job and being out of his work area during working time.

f.    On June 14, 2001, Plaintiff was given a 30-day disciplinary layoff in connection with his violation of Standards of Conduct 4 and 5.

g.    On September 19, 2001, Plaintiff was suspended in connection with violations of Standards of Conduct 21 and 23. This suspension was in connection with an incident of theft.

h.    On January 9, 2002, Plaintiff was given an indefinite suspension in connection with his violation of Standard of Conduct 5 and his past disciplinary record. Specifically, the suspension was in connection with incidents of Plaintiff not performing his job as required.

i.    On January 16, 2002, Plaintiff was notified that his indefinite suspension was modified to a discharge, effective January 11, 2002.

*See* Documentation of Plaintiff's Disciplinary Record (A99-A119).

**Plaintiff's Record of Tardiness and Absenteeism While Employed By DaimlerChrysler**

25.    During his employment, Plaintiff received numerous warnings and discipline related to unexcused tardiness and absences. *See* Documentation of Incidents of Plaintiff's Tardiness and Absences (A120-A151).

26.    Specifically, Plaintiff was given the following discipline in connection with his tardiness and excessive absenteeism:

a.    a 5-day disciplinary layoff on April 19, 1999;

b.    a 10-day disciplinary layoff on September 22, 1999;

c.    a 30-day disciplinary layoff on January 4, 2000; and

d.    a 10-day disciplinary layoff on August 1, 2001.

*See* Documentation of Incidents of Plaintiff's Tardiness and Absences (A120-A151).

**Individuals Plaintiff Claims Were Treated More Favorably Regarding Discipline**

27.    When asked to identify individuals that Plaintiff believes were treated more favorably than him, Plaintiff identified 11 individuals. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 131:3-138:16 (A21-A23).

8

28.    Plaintiff asserted vague statements about the actions these individuals engaged in and the discipline they received:

| Name | Alleged Wrongful Action | Alleged Discipline |
|------|------------------------|--------------------|
| Sean Ruohonen | Doing the drug Ecstacy. | Assumes he received some discipline, but not according to what his violations were. |
| Larry Cerra | Slept on his equipment. | None. |
| Al McGeough | Doing crossword puzzles and reading newspapers. | None. |
| Liz Brinkley | Sleeping and playing board games. | Maybe one or two day suspension. |
| Mark Stollings | Sleeping and playing board games. | Some discipline, but not enough. |
| Doug Feldman | Sleeping, breaking out, smoking weed in the back of the warehouse. | Some discipline, but not enough. |
| Clarence Johnson | Loafing | Some discipline, but not enough. |
| Larry Robinson | Sleeping | Some discipline, but not enough. |
| "Sarge" | Being "slow." | Some discipline, but not enough. |
| Dan Zeno | Being "slow," "on drugs," and "a just really odd person." | Some discipline, but not enough. |

*See* Plaintiff's Deposition dated August 8-9, 2005 at pp. 131:3-138:16 (A21-A23).

**Plaintiff's Substance Abuse Problem, Conviction, and Sentence**

29.    During his employment with DaimlerChrysler, Plaintiff used the illegal substance cocaine. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 43:13-15; 44:8-11 (A7).

30.    While Plaintiff was a DaimlerChrysler employee, Plaintiff was arrested for possession of cocaine. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 33:2-5 (A4).

31.    At the time of his arrest, Plaintiff was a passenger in a car driven by then-girlfriend Ms. Logan. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 33:6-22 (A4).

32.    Plaintiff was eventually convicted of possession of a controlled substance and a probation violation. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 35:16-36:15 (A5).

33.    As a result of his convictions, Plaintiff was incarcerated for approximately eight months, beginning in March of 2002. *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 38:19-23 (A6).

### Plaintiff's Statements About His Working Environment

#### The Application Process

34.    Plaintiff was referred to DaimlerChrysler for employment through the Latin American Community Center. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 66:21-67:14 (A8).

35.    Plaintiff testified that one of the individuals who interviewed him for the job at the Newark PDC, Carl Rouhonen, asked him if he was Hispanic and asked him to say a few things in Spanish. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 73:24-74:8 (A9-A10).

36.    Plaintiff testified that he did not take the comment too offensively and that he thought Mr. Ruohonen and the other interviewer, Mike Fisher were "pretty good people." *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 74:12-19 (A74).

37.    Plaintiff indicated on his application for employment, when asked to list other training, qualifications and skills, that he spoke Spanish. *See* Plaintiff's Deposition

dated August 8-9, 2005, pp. 76:2-77:11 (A10).    *See also* Plaintiff's Application for Employment (A1-A2).

Alleged Incidents of Harassment

38.    Plaintiff testified that he saw a depiction of himself in the bathroom at the Newark PDC in late October 2001.  He said it was a depiction of a snake with a sombrero on its head, bars of a jail cell around it, references to Plaintiff not speaking English, with Plaintiff's name written underneath it.  *See* Plaintiff's Deposition dated August 8-9, 2005, at p. 169:15-24 (A25).

39.    Plaintiff testified that he was called "spic" at the Newark PDC "a few times" in December 2001 by a co-worker.  He further testified that he did not complain about the incident to management, but that one of his supervisors was standing nearby when it allegedly happened.  *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 186:12-21; 187:4-12 (A26).

40.    Plaintiff testified that his co-workers made "references" to him going out with Ms. Logan.  Specifically, he testified that he heard the comment "Are you down with the brown tour?"  He further testified that he saw depictions of he and Ms. Logan having sex on work property and heard comments to that effect.  *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 187:24-189:6 (A26-A27).

41.    Plaintiff testified that he complained about the "down with the brown tour" comment to his union committee person, who then spoke with the person who made the comment.  Plaintiff testified that the person who made the comment apologized to he and Ms. Logan.  Plaintiff testified that he was satisfied with that result.  *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 189:7-190:18 (A27).

11

42. Plaintiff testified that he complained about the sexual depictions to his union president, and that they were taken down right away. He further testified that he was satisfied with that result and that he felt it was prompt and quick action. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 191:13-24; 192:18-193:6 (A27-A28).

43. Plaintiff testified that he complained to his union committee person about the comments that were made regarding he and Ms. Logan having sex on work property. He further testified that the committee person spoke with the individuals who allegedly made the comments and that he was satisfied with that result. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 194:8-195:5 (A28).

44. Plaintiff testified that he believes DaimlerChrysler accusing him of stealing company property in September 2001 constituted harassment. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 198:4-199:24 (A29).

45. Plaintiff testified that he reported to two of his union committee persons that he felt the accusation of stealing and subsequent suspension constituted harassment. He further testified that they both followed up on it and that he was eventually brought back to work. Plaintiff testified that he was satisfied with that result. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 201:8-203:5 (A30).

46. Plaintiff testified that management required him to sign off on work assignments when he was not done with the assignments. He further testified that they did this to "everybody" and that he did not report it. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 203:16-205:11 (A30-A31).

47. Plaintiff testified that one of his supervisors made disparaging comments about his religion, stating "Well, I thought you people practiced 'Santaria' or

Voodoo or something like that." Plaintiff did not complain about this. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 206:9-207:1; 207:2-9 (A31).

      48.    Plaintiff testified that DaimlerChrysler did not appropriately work through the disciplinary steps with regard to the incident that occurred near his discharge. He further testified that he complained to his union representatives about it and they helped him get his job back. He testified that he was satisfied with that result. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 208:11-211:21 (A31-A32).

      49.    Plaintiff testified that, sometime in 1999, a supervisor disciplined him for being violent in the workplace. Plaintiff testified that he felt harassed by this incident because it painted him as violent and a drinker to everyone at the Newark PDC. He complained about it to the union and a grievance was brought. As a result of the grievance, Plaintiff was brought back to work. Plaintiff testified that he was pleased to get his job back. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 216:10-218:14 (A33-A34).

      50.    Plaintiff testified that a co-worker called him a "lazy Latino" and told him that he "screwed it up for everybody in Latino to get a job there." Plaintiff testified that this occurred in November 2000. Plaintiff testified that he did not report it to anyone and that he just "blew it off." *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 218:18-220:13 (A34).

      51.    Plaintiff testified that, in 1998 or 1999, a co-worker made comments about Mexicans. Plaintiff testified that the co-worker made references to "mushroom picker" and "spic" and acted like he was going to run Plaintiff over with his forklift. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 220:16-223-12 (A34-A35).

52.    Plaintiff testified that supervisors referred to him as someone who did not work to his full potential and that he was useless as an employee.  *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 232:7-234:11 (A37-A38).

### Plaintiff's Beliefs About His Working Environment

53.    Plaintiff testified that he believed he was subjected to excessive discipline and singled out at the Newark PDC because of nepotism:

> Q:    Why do you think you were being harassed or on what basis?
>
> A:    I think, basically, they wanted to make an example out of me. I'm, you know—I don't have any cousins or uncles or neighbors or anybody else working there, and I think—I believe there is a lot of nepotism that goes on there, so.
>
> Q:    So you feel that you were harassed because you didn't have any other family or relatives or anything working there?
>
> A:    I think it was, basically, because of the nepotism, they wanted to secure their family and friends' jobs and get rid of the guys that don't have nobody there, you know, and make an example of them, you know, because they weren't doing what they should have been doing.

*See* Plaintiff's Deposition dated August 8-9, 2005, at p. 109:1-16 (A17).

### The End of Plaintiff's Employment With DaimlerChrysler

54.    Based on his repeated violations of DaimlerChrysler's Standards of Conduct and his poor record of performance, Plaintiff was discharged on January 11, 2002. *See* Letter from Dawn Reese to Plaintiff dated January 16, 2002 (A91).

55.    Following Plaintiff's discharge on January 11, 2002, Plaintiff filed a grievance appealing the discharge. *See* Plaintiff's Grievance Form (A152).

56.    In March of 2002, Plaintiff was incarcerated in connection with his convictions for possession of a controlled substance and violating probation. He was

incarcerated for approximately eight months, beginning in March 2002. *See* Plaintiff's Deposition dated August 8-9, 2005, at pp. 213:22-214:3 (A33).

57.     On April 11, 2002, the Appeal Board of the UAW directed that Plaintiff be offered reinstatement and that his discharge be reduced to a disciplinary layoff without back pay or benefits for the period of time he was not working. *See* Disposition from Appeal Board of the UAW (A154-A155).

58.     The conditional reinstatement from the Appeal Board further stated: "Your reinstatement provides you with a final opportunity to become an acceptable employee. It is understood and agreed you will abide by the DaimlerChrysler Standards of Conduct (copy attached). Any violations of these rules will result in disciplinary action up to and including discharge." *See* Disposition from Appeal Board of the UAW (A154-A155).

59.     The conditional reinstatement from the Appeal Board further stated: "Your reinstatement will be in accordance with your seniority provided you can meet normal requirements." *See* Disposition from Appeal Board of the UAW (A154-A155).

60.     On May 22, 2002, Dawn Reese, who is the Office Administrator for the Newark PDC, sent a letter to Plaintiff informing him that he was to report to the Personnel Office at the Newark PDC on May 28, 2002 for reinstatement. *See* Letter from Dawn Reese to Plaintiff dated May 22, 2002 (A156).

61.     On May 26, 2002, Plaintiff wrote and sent a letter from the place of his incarceration to Ms. Reese. In the letter, Plaintiff informed Ms. Reese that he was unable to return to work due to his incarceration (in connection with his convictions for possession of a controlled substance and violating probation). *See* Letter from Plaintiff to Dawn Reese dated May 26, 2002 (A157).

15

62.     As a result of his incarceration, Plaintiff did not report to work for reinstatement on May 28, 2002. On May 30, 2002, Ms. Reese sent Plaintiff another letter informing him that he failed to report to work on May 28, 2002 for reasons that were not established nor justified. In the letter, she directed Plaintiff to report to the Plant Personnel Office on or before June 6, 2002, or send satisfactory evidence as to the reason for his absence before that date. *See* Letter from Dawn Reese to Plaintiff dated May 30, 2002 (A158).

63.     On June 7, 2002, Ms. Reese sent Plaintiff a letter informing him that DaimlerChrysler had not received satisfactory evidence as to the reason for his absence from work and informing him that his seniority was terminated as of June 7, 2002. *See* Letter from Dawn Reese to Plaintiff dated June 7, 2002 (A159).

### Plaintiff's First Charge of Discrimination

64.     On January 22, 2002, Plaintiff filed a Charge of Discrimination against DaimlerChrysler, alleging race discrimination and hostile work environment during the period January 2000 to January 11, 2002, based on alleged derogatory remarks in the workplace. *See* Charge of Discrimination filed with the Delaware Department of Labor and the Equal Employment Opportunity Commission dated January 22, 2002 (A160).

65.     The EEOC issued a Notice of Right to Sue to Plaintiff on January 6, 2005. *See* Notice of Right To Sue dated January 6, 2005 (A161).

### Plaintiff's Second Charge of Discrimination

66.     On April 3, 2003, Plaintiff filed a second Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that he was retaliated against when DaimlerChrysler offered him reinstatement while he was incarcerated and unable to return to work. *See* Charge of Discrimination dated April 3, 2003 (A162).

67.    The EEOC mailed a Dismissal and Notice of Rights to Plaintiff on September 10, 2003. *See* Dismissal and Notice of Rights dated September 10, 2003 (A163).

### Plaintiff's Federal Lawsuit Against DaimlerChrysler

68.    On August 16, 2004, Plaintiff filed his Complaint with this Court, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination relating to his discharge and other alleged acts. He also alleged similar claims under the Delaware Discrimination in Employment Act. *See* Plaintiff's Complaint (A164-170).

69.    On September 28, 2005, the Court granted Plaintiff leave to file his Amended Complaint, which appears to assert additional claims for retaliation and defamation. *See* Plaintiff's Amended Complaint (A171-183).

**ARGUMENT**

I.    **SUMMARY JUDGMENT IS APPROPRIATE ON ALL OF PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CANNOT MAKE OUT THE ESSENTIAL ELEMENTS OF HIS CLAIMS AND THERE ARE NO GENUINE ISSUES OF MATERIAL FACT**

Summary judgment is appropriate "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The moving party bears the burden of proving that no material issue of fact is in dispute." *Kidd v. MBNA America Bank, N.A.*, 224 F.Supp.2d 807, 810 (D. Del. 2002). "Once the moving party has carried its initial burden, the nonmoving party 'must come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986)). "If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law." *Id.*

Summary judgment will be warranted only if the record contains insufficient evidence to allow a reasonable jury to find in favor of the non-moving party at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). All facts and reasonable inferences therefrom are viewed in the light most favorable to the nonmoving party. *Eddy v. V.I. Water & Power Authority*, 369 F.3d 227, 228 n.1 (3d Cir. 2004). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inference to be drawn therefrom in the light most favorable to plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocumb Indus.*, 814 F. Supp. 1209, 1215 (D. Del. 1993).

18

II.    **DAIMLERCHRYSLER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII AND STATE LAW DISCRIMINATION CLAIMS**

Plaintiff claims he was discriminated against on the basis of his national origin: (1) when he was subjected to disciplinary action as an employee of DaimlerChrysler; and (2) when he was discharged from employment with DaimlerChrysler. For both of these disparate treatment-type claims, the *McDonnell Douglas* framework is applicable, as Plaintiff's claims are based on indirect evidence of discrimination. *See McKay v. Delaware State University*, No. 99-219-SLR, 2000 WL 1481018, at *7 (D. Del. Sept. 29, 2000) (applying the *McDonnell Douglas* framework where there was no direct evidence of discrimination) (Exhibit A hereto).

Although not clearly stated in Plaintiff's initial and amended Complaints, it appears that his national origin discrimination claims are based on Title VII and the Delaware Discrimination in Employment Act. Delaware analyzes claims of employment discrimination under the same standards as Title VII claims, therefore, all of Plaintiff's national origin discrimination claims will be analyzed under the Title VII framework. *See Giles v. Family Court*, 411 A.2d 599, 601 (Del. 1980) (holding that violations of Delaware discrimination law are analyzed under the same test as Title VII claims); *Cannon v. State of Delaware*, 523 F. Supp. 341, 344 (D. Del. 1981) ("Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself").

In order to establish a claim of disparate treatment, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *EEOC v. Metal Service, Co.*, 892 F.2d 341, 348 (3d Cir. 1990). Disparate treatment claims brought under Title VII are analyzed using the burden shifting analysis established in *McDonnell Douglas Corp v. Green.* 411 U.S. 792 (1973). Under this analysis, Plaintiff must first establish a *prima facie* case of national origin

19

discrimination under Title VII. In order to state a case based on discrimination, Plaintiff must prove that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *Miller v. Town of Milton*, No. 03-876-SLR, 2005 WL 549531, at *6 (D. Del. Mar. 8, 2005) (Exhibit B hereto) (citing *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000) and *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999)). Once the plaintiff has established a *prima facie* case of discrimination, the burden then shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thereafter, the burden shifts back to the plaintiff who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination. *Id.* at 804.

Once the defendant has articulated a nondiscriminatory reason for the employee's rejection, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against." *Seabrook v. Gadow*, No. 01-802-SLR, 2003 WL 2138719 (D. Del. June 10, 2003) (Exhibit C hereto). "To avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the

20

employment action." *Id.* Thus, to make a sufficient showing of pretext, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's reason that "a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765. "[T]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Notwithstanding the shifting burdens under the *McDonnell Douglas* test, the ultimate burden of persuading the finder of fact that the employer intentionally discriminated remains at all times with the Plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

## A.    Plaintiff's National Origin Discrimination Claim Based on Discipline Fails As A Matter of Law

Plaintiff's claim that he was subjected to discipline because of his national origin fails as a matter of law because: (1) he cannot meet his *prima facie* burden; (2) DaimlerChrysler disciplined him for legitimate, non-discriminatory reasons; and (3) there is no evidence that its reasons are pretextual.

### 1.    Plaintiff Cannot Meet His Prima Facie Burden

With respect to the *prima facie* case, DaimlerChrysler does not dispute, for the purposes of this motion only, that Plaintiff can meet the first two elements. But, Plaintiff cannot show that the discipline occurred under circumstances that give rise to an inference of unlawful discrimination.

Each of the times DaimlerChrysler disciplined Plaintiff, it was documented by Plaintiff's supervisors. *See* Statements of Fact 23-26. The documentation from those instances of discipline establish that a process was followed each time and that Plaintiff was informed of the infraction, advised of his punishment, and armed with sufficient information

21

to challenge the discipline through the union grievance process if he so chose. *See* Statements of Fact 23-26. In fact, Plaintiff many times took advantage of the union grievance process to challenge instances of discipline imposed by his supervisors at the Newark PDC. *See* Statements of Fact 45, 48, 49, 55-57. In short, the disciplinary process at the Newark PDC is defined by process and fairness.

Plaintiff has not and cannot offer any admissible evidence that would establish or support an inference of unlawful discrimination in connection with his discipline. The only attempt Plaintiff has made to challenge the discipline he received at the Newark PDC is to deny that he committed the infractions that led to the instances of disciplines he received and to generally and vaguely point to individuals that he believes were treated more favorably. *See* Statements of Fact 27-28. This is insufficient to support an inference of discrimination for the purposes of establishing a *prima facie* case of disparate treatment discrimination.

Importantly, Plaintiff himself is not even convinced that he suffered discipline due to his national origin. *See* Statement of Fact 53. When asked why he felt he had been harassed with excessive discipline, he prominently said he felt it was due to nepotism at the Newark PDC:

> Q:  Why do you think you were being harassed or on what basis?
>
> A:  I think, basically, they wanted to make an example out of me. I'm, you know—I don't have any cousins or uncles or neighbors or anybody else working there, and I think—I believe there is a lot of nepotism that goes on there, so.
>
> Q:  So you feel that you were harassed because you didn't have any other family or relatives or anything working there?
>
> A:  I think it was, basically, because of the nepotism, they wanted to secure their family and friends' jobs and get

> rid of the guys that don't have nobody there, you
> know, and make an example of them, you know,
> because they weren't doing what they should have
> been doing.

In sum, Plaintiff has not and cannot present admissible evidence that the discipline imposed by DaimlerChrysler occurred under circumstances that give rise to an inference of unlawful discrimination.

### 2. DaimlerChrysler Acted With Legitimate and Non-Discriminatory Reasons

Even if Plaintiff were able to make out his *prima facie* case of disparate treatment, DaimlerChrysler acted with legitimate and non-discriminatory reasons. As explained in detail in the Statement of Facts, DaimlerChrysler disciplined Plaintiff for his multiple violations of the company's Standards of Conduct and for his excessive tardiness and absenteeism. *See generally* Statements of Fact 20-26. Each instance of discipline was well-documented by Plaintiff's various supervisors.

### 3. Plaintiff Cannot Establish that DaimlerChrysler's Reasons are Pretextual

To show that DaimlerChrysler's proferred reasons for the discipline he received are a pretext, Plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in those reasons that a reasonable fact finder could rationally find them unworthy of credence. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

It is fatal to Plaintiff's disparate treatment claim that he has no admissible evidence to call DaimlerChrysler's reasons for disciplining him into question. Plaintiff clearly believes that he was targeted for excessive discipline. But, his belief is not enough. At most, and viewing the evidence in the light most favorable to Plaintiff, the only offering Plaintiff can make to call the legitimacy of the discipline into question is to deny that he

committed the infractions that led to the discipline and to suggest that others who committed similar infractions were not punished similarly. The problem with Plaintiff's offering is that it is wholly conclusory.

Plaintiff offers no specifics in terms of those to whom he would like to compare himself. Instead, he just identifies them by name, states the alleged infractions they committed, and states that he does not believe they were disciplined according to the severity of their infractions. He provides no more details than that—no dates of the infractions, no details on the alleged infractions, no concrete information on the discipline received. This is simply insufficient. The burden of persuading the finder of fact that the employer intentionally discriminated remains at all times with the Plaintiff. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993). Plaintiff cannot meet his burden by mentioning a bunch of names, describing generally the flaws of each such individual, and stating, in conclusory fashion, that they were not disciplined. "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that [he] has been discriminated against." *Seabrook,* 2003 WL 21383719, at *7 (Exhibit C hereto).

The facts of this case are quite similar to those in *Seabrook*, a case in which the district court granted summary judgment to the employer. *Id.* The plaintiff in *Seabrook* claimed that "the disciplinary actions against him and the denial of [leave] were not consistent with the treatment of other [employees]," and that "racial discrimination caused him to be subjected to more severe disciplinary actions than white male [employees]." *Id.* at *6. The court dismissed this claim because the plaintiff failed to present evidence that other employees were treated in a more favorable manner. *Id.* at *6-7. In the alternative, the court dismissed the claim because "given plaintiff's numerous violations of . . . protocol . . . and

24

directives from his supervisors, defendants have demonstrated sufficient cause for plaintiff's [adverse employment action]." *Id.* at *7.

As in *Seabrook*, this case also warrants entry of summary judgment against the employee. Because Plaintiff has not established his *prima facie* case, nor has he put forth sufficient admissible evidence of pretext, Plaintiff's disparate treatment claim must fail.

**B.    Plaintiff's National Origin Discrimination Claim Based on His Discharge Fails As A Matter of Law**

Plaintiff's claim that he was discharged because of his national origin also fails as a matter of law because: (1) he cannot meet his *prima facie* burden; (2) DaimlerChrysler discharged him for legitimate, non-discriminatory reasons; and (3) there is no evidence that its reasons are pretextual.

**1.    Plaintiff Cannot Meet His Prima Facie Burden**

With respect to the *prima facie* case, DaimlerChrysler does not dispute, for the purposes of this motion only, that Plaintiff can meet the first two elements. But, Plaintiff cannot show that his discharge occurred under circumstances that give rise to an inference of unlawful discrimination. Plaintiff was ultimately discharged due to his poor record of performance and numerous violations of DiamlerChrysler's Standards of Conduct. *See* Statements of Fact 20-26, 52. As discussed in the previous section, Plaintiff repeatedly violated the important Standards of Conduct that DaimlerChrysler uses to maintain an efficient, orderly, and productive workplace. Plaintiff's violations of the Standards were well-documented and supported by supervisor comments. There is simply no admissible evidence that would give rise to an inference that Plaintiff was discharged based on his national origin.

2.      **DaimlerChrysler Acted With Legitimate and Non-Discriminatory Reasons**

As set forth above, DaimlerChrysler ended Plaintiff's employment due to his poor record of job performance and his numerous violations of DaimlerChrysler's Standards of Conduct. *See* Statements of Fact 20-26, 52. These are legitimate and non-discriminatory reasons, backed up with documentation and other support. *See* Statements of Fact 20-26, 52.

DaimlerChrysler discharged Plaintiff from his employment on January 11, 2002. *See* Statement of Fact 52. Plaintiff subsequently filed a grievance with the UAW to challenge the discharge. *See* Statement of Fact 53. The UAW Appeal Board considered the grievance and, on April 11, 2002, directed DaimlerChrysler to reinstate Plaintiff's employment, *without* back pay and benefits for the time period when Plaintiff was not working. *See* Statement of Fact 55. In compliance with the direction of the UAW, DaimlerChrysler offered to reinstate Plaintiff's employment and directed that he report for work on May 28, 2002. *See* Statement of Fact 58. Plaintiff did not, however, report for work on May 28, 2002, due to his incarceration in connection with convictions for possession of a controlled substance and violating probation. *See* Statements of Fact 59-60. DaimlerChrysler gave Plaintiff one more chance, directing that he report for work on June 6, 2002, or else his seniority would be terminated. *See* Statement of Fact 60. Plaintiff again did not report for work as instructed, so he was discharged and his seniority terminated. *See* Statement of Fact 61. Failing to report for work at DaimlerChrysler due to incarceration is not an acceptable reasons for absence.

For these legitimate and non-discriminatory reasons, DaimlerChrysler discharged Plaintiff from employment.

26

3.     **Plaintiff Cannot Establish that DaimlerChrysler's Reasons are Pretextual**

Similar to the discipline claim discussed above, Plaintiff does not offer any admissible evidence to establish that DaimlerChrysler's reasons for discharging him are pretextual. He again claims, in conclusory fashion, that he should not have been discharged and that it was not fair because he did not commit the underlying infractions. He also again fails to show that other individuals outside of his protected class were treated more favorably.

Thus, Plaintiff's disparate treatment claim based on his discharge fails as a matter of law. DaimlerChrysler is entitled to summary judgment on this claim.

III.     **DAIMLERCHRYSLER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S TITLE VII HOSTILE WORK ENVIRONMENT CLAIM**

To establish a claim of hostile work environment under Title VII, Plaintiff must show: (1) he suffered intentional discrimination because of his national origin; (2) the discrimination was "pervasive and regular;" (3) he was adversely affected by the discrimination; (4) the discrimination would adversely affect a reasonable person of the same national origin; and (5) that respondeat superior applies. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990). In the case of alleged harassment by a co-worker, an employer will be liable under Title VII "if the employer knew or should have known of the harassment and failed to take prompt remedial action." *Hare v. H & R Industries, Inc.*, 67 Fed. Appx. 114 (3d Cir. 2003) (Exhibit D hereto).

In evaluating whether discrimination is pervasive and regular, important and pertinent considerations are: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996). The Supreme Court has noted

that Title VII's purpose is not to punish "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

**A.    DaimlerChrysler Is Entitled to Judgment As a Matter of Law on Plaintiff's Hostile Work Environment Claim Because the Alleged Incidents Supporting the Claim Do Not Demonstrate "Regular and Pervasive" Discrimination**

For the purposes of this motion only, DaimlerChrysler does not dispute that Plaintiff can meet all the elements of his *prima facie* hostile work environment claim, except the "pervasive and regular" element. Assuming all of Plaintiff's alleged incidents in support of his hostile work environment claim are true and viewing them in the light most favorable to Plaintiff, Plaintiff's claim still fails as a matter of law because the alleged discrimination was not "pervasive and regular."

Plaintiff generally claims that he was subjected to name calling, unfair discipline, graffiti, and other unfair treatment in the Newark PDC environment, all due to his national origin (Hispanic). *See generally* Statements of Fact 34-52. For most of the incidents detailed in Statements of Fact 34-52, they were isolated occurrences and most of them were reported to the union and/or management, resulting in prompt, remedial action. The incidents are discussed in greater detail below.

**1.    Alleged Name-Calling**

Plaintiff claims that he was subjected to name-calling based on his national origin while an employee of DaimlerChrysler at the Newark PDC. A significant part of the alleged name-calling apparently had to do with him dating one of his co-workers, Shannon Logan. *See* Statements of Fact 40-43. He claims that his co-workers made "references" to him dating Ms. Logan and to them having sex on company property. *See* Statement of Fact 40. He also claims that he heard the comment, "Are you down with the brown tour?" Such

28

references may demonstrate childish behavior, but they do not have any connection to Plaintiff's national origin and do not support his hostile work environment claim. Moreover, Plaintiff testified that he reported such comments and references to his union committee person, who then spoke to the individuals who allegedly made the comments. *See* Statement of Fact 41 and 43. One of the individuals who made the comments apologized to Plaintiff and Ms. Logan. *See* Statement of Fact 41. Plaintiff testified that he was satisfied with that result. *See* Statement of Fact 43.

Plaintiff also claims that he was called "spic" a "few times" in December 2001 by a co-worker, that a supervisor once made the comment: "I thought you people practiced 'Santaria' or Voodoo or something like that," and that a co-worker once called him a "lazy Latino" and told him that he "screwed it up for everybody in Latino to get a job there." Finally, in 1998 or 1999, Plaintiff claims a co-worker made references to "mushroom picker" and "spic."

Assuming these comments were made and that Plaintiff heard them, their frequency was sporadic, according to Plaintiff's own testimony. Moreover, the comments were mere offensive utterances and not physically threatening to Plaintiff. They are insufficient to establish "regular and pervasive" discriminatory conduct sufficient to support a hostile work environment claim. *See Faragher*, 524 U.S. 775; *Aman,* 85 F.3d 1074.

### 2.    Alleged Unfair Discipline

Plaintiff also claims that he was subjected to unfair discipline and that such discipline supports his hostile work environment claim. As discussed in detail in the previous section regarding Plaintiff's disparate treatment claim, Plaintiff has done little more to show that the discipline was unfair than deny that he engaged in the conduct that led to the discipline. This is insufficient to establish that the discipline contributed to a hostile work environment. Even assuming that Plaintiff was subjected to unfair discipline, has offered no

admissible evidence that would allow the trier of fact to infer that it was due to his national origin.

### 3.    Alleged Graffiti

Additionally, Plaintiff claims he was subjected to derogatory graffiti in the workplace. As with the alleged name-calling, most of the alleged graffiti had to do with Plaintiff dating co-worker, Ms. Logan. He claims that he saw depictions of he and Ms. Logan having sex on work property. *See* Statement of Fact 40. This alleged graffiti had nothing to do with Plaintiff's national origin and does not support his hostile work environment claim. Also, and importantly, he testified that he complained about the alleged sexual depictions to his union president, and that they were taken down "right away." *See* Statement of Fact 42. Plaintiff testified that he was satisfied with that result and felt it was prompt and quick action. *See* Statement of Fact 42.

Plaintiff also claims that he saw a depiction of himself in the bathroom at the Newark PDC in late October 2001 that portrayed him as a snake with a sombrero on its head, with bars of a jail cell around it, with references to Plaintiff not speaking English, and with Plaintiff's name written underneath it. *See* Statement of Fact 38. Again, this single item of graffiti is not does not constitute "regular and pervasive" discrimination.

### 4.    Alleged Unfair Treatment

Finally, Plaintiff complains that he was subjected to several other instances of unfair treatment, which he attributes to his national origin. As demonstrated below, these incidents have no connection to Plaintiff's national origin, outside of Plaintiff's belief that they do. Plaintiff's belief is insufficient to convert these isolated incidents into specific incidents of harassment.

First, Plaintiff claims that he was wrongly required to say a few things in Spanish during his initial job interview. *See* Statement of Fact 34. This incident does not

evidence discrimination or harassment because Plaintiff indicated on his application for employment that he spoke Spanish. *See* Statement of Fact 37. Questioning a job applicant about his listed abilities cannot constitute discrimination.

Second, Plaintiff claims that he was required by management to sign off on work assignments when he was not yet done with the assignments. *See* Statement of Fact 46. Not only does this incident have nothing to do with Plaintiff's national origin, Plaintiff further testified that management did this "to everybody." It is plainly obvious that conduct to which "everybody" was subjected cannot be a basis for discrimination.

Third, Plaintiff claims that his supervisors referred to him as someone who did not work to his full potential and that he was useless as an employee. *See* Statement of Fact 52. Such statements do not evidence "regular and pervasive" discrimination, as they are simply management communications about employee performance. There is no indication that they are based on Plaintiff's national origin.

In sum, the incidents that Plaintiff sets forth in support of his claim do not demonstrate "regular and pervasive" discrimination. In fact, most do not relate to his national origin at all. For those incidents that do appear to relate to Plaintiff's national origin, they were infrequent or one-time occurrences that were, in most instances, corrected promptly by management or the union.

The Supreme Court and the Third Circuit have repeatedly held that that a few potentially discriminatory incidents do not constitute "pervasive and regular" discrimination. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998); *Page v. City of Pittsburgh*, 114 Fed. Appx. 52 (3d Cir. 2004); *Sherrod v. Philadephia Gas Works*, 57 Fed.Appx. 68 (3d Cir. 2003) (two incidents not "pervasive and regular").

In *Ocasio v. Lehigh Valley Family Health Center*, 92 Fed.Appx. 876 (3d Cir. 2004), the court found that a few isolated incidents did not amount to racial discrimination

31

that was pervasive and regular. *Id.* at 880. Ocasio alleged that (1) she was told not to speak Spanish with a coworker, (2) Hispanic workers were referred to as "Spanish people," (3) a co-worker told a joke about the work ethic of Puerto Ricans, and (4) a white co-worker remarked to her that they lived in America and should speak English. *Id.* Ultimately, the court held that "there is insufficient evidence that these few alleged incidents created a hostile work environment during the three years of Ocasio's employment." *Id.*

Likewise, in *Verdin v. Weeks Marine, Inc.*, plaintiff failed to satisfy the "pervasive and regular" prong of a § 1981 Hostile Environment Claim (analyzed the same as a Title VII claim). 124 Fed. Appx. 92 (3d Cir. 2005). In that case, the Native American plaintiff alleged that: (1) he was repeatedly referred to as a "n-----;" (2) he was told to drink alcohol based on a stereotypical belief that alcohol subdues Native Americans; and (3) stories were told at the workplace that implied that Native Americans were unreasonably violent. *Id.* at 94. The court found that "many of these incidents were 'mere offensive utterances' that [plaintiff] overheard." *Id.* at 96 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The court concluded that "the comments and events that [plaintiff] relies on to meet the pervasive and regular requirement do not demonstrate the ongoing pattern of racially offensive conduct that is required to show a prima facie case." *Id.*

As demonstrated throughout this brief, Plaintiff's working environment at DaimlerChrysler was not hostile, according to the applicable standard. Plaintiff's apparent difficulties in the workplace related to his poor job performance and his relationship with co-worker Shannon Logan. The admissible evidence simply does not support a hostile work environment claim.

32

## IV.    DAIMLERCHRYSLER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

To establish a prima facie case of retaliation, a plaintiff must demonstrate that: (1) he engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 286 (3d Cir. 2001). "[T]emporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000).

### A.    Plaintiff's Retaliation Claim Fails Because It Was Not Timely Filed

Plaintiff's retaliation claim fails because he did not file his lawsuit with this Court until more than 90 days had passed from the date he received his "Dismissal and Notice of Rights" from the EEOC. Title VII requires that claims be filed within 90 days after a plaintiff receives the "Notice of Suit Rights" from the EEOC. *See* 42 U.S.C. § 2000e-16(c). Courts routinely enforce this requirement. *See Grice v. U.S. Postal Svc.*, No. 05-2404(DRD), 2005 WL 1528880, at *4 (D.N.J. June 29, 2005) (Exhibit D hereto); *Jones v. Boyd*, No. 97-3363, 1998 WL 314668, at *4 (E.D. Pa. June 11, 1998) (Exhibit E hereto).

In this case, Plaintiff filed his Charge of Discrimination relating to the alleged retaliation on April 3, 2003. *See* Statement of Fact 66. The EEOC issued Plaintiff a Dismissal and Notice of Rights on September 10, 2003. *See* Statement of Fact 67. Plaintiff did not file his lawsuit alleging the retaliation claim until August 16, 2004. *See* Statement of Fact 68. This is clearly more than 90 days after he received the Notice from the EEOC. In fact, the lawsuit was filed 341 days later.

33

For this reason, DaimlerChrysler is entitled to judgment as a matter of law on Plaintiff's retaliation claim.

**B.    Moreover, There is No Causal Link Between the Purported Protected Activity and the Purported Adverse Action**

Plaintiff claims that he was retaliated against by DaimlerChrysler after he filed a Charge of Discrimination with the EEOC and the Delaware Department of Labor. He claims that, following the filing of his Charge, he was not allowed to return to work upon the direction of his union. At the time that he was to be reinstated with DaimlerChrysler per the direction of his union, Plaintiff was incarcerated for an eight-month period in connection with his convictions for possession of a controlled substance and violating his probation. The state of being incarcerated is not a sufficient reason to fail to report to work, therefore, DaimlerChrysler terminated Plaintiff's seniority after he failed to show up for reinstatement. DaimlerChrysler's actions were not retaliatory.

In summary, Plaintiff's retaliation claim is based on the following timeline of events:

- On January 11, 2002, Plaintiff was discharged from his employment. *See* Statement of Fact 54.

- On January 22, 2002, Plaintiff filed a Charge of Discrimination with the EEOC and the Delaware Department of Labor. *See* Statement of Fact 64.

- On April 11, 2002, the UAW ordered DaimlerChrysler to reinstate Plaintiff's employment. *See* Statement of Fact 57.

- On May 22, 2002, DaimlerChrysler complied with the order of the UAW and offered Plaintiff reinstatement, effective May 28, 2002. *See* Statement of Fact 60.

- Due to his incarceration, Plaintiff was unable to report for reinstatement on May 28, 2002. *See* Statements of Fact 61 and 62.

- DaimlerChrysler gave Plaintiff one more chance to report for reinstatement on June 6, 2002. *See* Statement of Fact 62.

34

- Plaintiff again failed to report for reinstatement due to his incarceration. *See* Statement of Fact 63.

- On June 7, 2002, DaimlerChrysler terminated Plaintiff's employment. *See* Statement of Fact 63.

DaimlerChrysler is entitled to summary judgment on Plaintiff's retaliation claim because there is no causal link between the filing of Plaintiff's Charge of Discrimination and the termination of his seniority. Any causal connection based on temporal proximity is destroyed by Plaintiff's eight month incarceration beginning in March 2002. The union only directed that Plaintiff be reinstated. The union did not direct that DaimlerChrysler wait nearly six months before Plaintiff was discharged from prison before reinstating his employment. Although Plaintiff suggested during his deposition that DaimlerChrysler did not act in good faith in offering him reinstatement because they did so while he was incarcerated, DaimlerChrysler had no duty to hold Plaintiff's offer of reinstatement until he was released from prison.

In short, DaimlerChrysler did not cause Plaintiff to be convicted and sent to prison, and it did not orchestrate a plot to retaliate against him by offering him reinstatement while he was incarcerated. Plaintiff's retaliation claim fails as a matter of law because it is time-barred and because there is no causal connection between the filing of his Charge of Discrimination and the termination of his seniority.

## V.    DAIMLERCHRYSLER IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DEFAMATION CLAIM

Under Delaware law, the tort of defamation has five elements: "(1) the statement must be of a defamatory character; (2) publication to a third party; (3) the communication must refer to the plaintiff; (4) the third party's understanding of the communications defamatory character; and (5) injury." *Gill v. Delaware Park, LLC*, 294 F.Supp.2d 638, 646 (D. Del. 2003).

Regardless of whether Plaintiff can make out the elements of a defamation claim, it must fail in any event because all of the alleged statements that purportedly support the claim are privileged communications. Delaware maintains an employer-employee "common interest" privilege. "[T]he common interest of management and labor in operating a successful business clearly qualifies communications in furtherance of that goal as being privileged." *Gonzalez v. Avon Products, Inc.*, 609 F. Supp. 1555, 1559 (D. Del. 1985). "This qualified privilege is particularly germane to the employer-employee relationship and has been recognized as such by the Delaware Supreme Court." *Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1981).

Plaintiff vaguely claims that he was defamed by statements of supervisors that he was "useless" and "did not work to his full potential." *See* Statement of Fact 52. He further claims that the instances of discipline that he suffered were defamatory because they painted him as lazy, violent, and a drinker. *See* Statements of Fact 44, 49, and 52.

All of the incidents that Plaintiff proposes in support of his defamation claim relate to the employer-employee relationship between Plaintiff and DaimlerChrysler. The alleged statements set forth by Plaintiff are protected by the "common interest" privilege. Such communications must be privileged because they preserve management's and labor's interest in operating a successful business. DaimlerChrysler, and other companies like it, would screech to a halt if not allowed to communicate and act candidly with its employees in terms of employee performance, conduct, and discipline. Such alleged comments are privileged and do not support Plaintiff's defamation claim.

Therefore, DaimlerChrysler is entitled to summary judgment on Plaintiff's defamation claim.

## CONCLUSION

Wherefore, for the foregoing reasons, DaimlerChrysler Corporation respectfully requests that this Court grant its Motion for Summary Judgment, and dismiss all of Plaintiff's claims with prejudice.

POTTER ANDERSON & CORROON LLP

By _____
Jennifer Gimler Brady (Del. 2874)
Sarah E. DiLuzio (Del. 4085)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000 – Telephone
jbrady@potteranderson.com – Email
sdiluzio@potteranderson.com - Email

*Attorneys for DaimlerChrysler Corporation*

OF COUNSEL:

William C. Martucci (Mo. 28237*)
Kristen Aggeler Page (Mo. 50852*)
SHOOK, HARDY & BACON, LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
(816) 474-6550 – Telephone
(816) 421-5547 – Facsimile

* Admitted *Pro Hac Vice*

Dated: November 1, 2005
PA&C-705703v1