# EXHIBIT C

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1

Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

Only the Westlaw citation is currently available

United States District Court,
D. Delaware.
Reginald K. SEABROOK, Plaintiff,
v.
Diane GADOW, and State of Delaware/Dyrs,
Defendants.
**No. Civ.A. 01-802-SLR.**

June 10, 2003

Reginald K. Seabrook, Bear, Delaware, Plaintiff, pro se.

Michael F. Foster, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware, for Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiff Reginald K. Seabrook filed this action on December 4, 2001 against defendants Diane Gadow, Superintendent of Ferris School, and the State of Delaware/Department of Youth Rehabilitation Services (DYRS). (D.I.1) Plaintiff alleges discrimination based on his race and gender under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, ("Title VII"). The court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331. Currently before the court is defendants' motion for summary judgment. (D.I.14) For the following reasons, defendants' motion is granted.

II. Background

Plaintiff, an African American male, began employment with DYRS on December 15, 1997. (D.I. 16 at A4) Plaintiff was hired as a Youth Rehabilitation Treatment Supervisor at the Ferris School in Wilmington, Delaware. (*Id.*) At the time plaintiff was hired by DYRS there were eight Rehabilitation Treatment Supervisors: two Caucasian males, one Caucasian female and five African American males, including plaintiff. (D.I. 17 at 321) Plaintiff's direct supervisor was Program Manager, Llionel Henderson ("Henderson"), an African American male, who was supervised by the Superintendent of Ferris School, Dianne Gadow ("Gadow"), a Caucasian female. (*Id.*)

A. First Request for Plaintiff's Termination

On November 2, 1998, during plaintiff's probationary employment period, Henderson requested termination of plaintiff's employment with DYRS for failure to follow directives, insubordination, and tampering with or attempting to influence the findings of investigations into allegations of abuse. (D.I. 16 at A11) The request for termination was submitted by Henderson, but on May 1, 1999 Henderson drafted and signed a letter to Charles T. Watkins, Personnel Administrator, stating that on October 27, 1998 Gadow directed him to submit the request for plaintiff's termination. (D.I. 17 at 281) Although Henderson claims he was directed to submit the request for termination by Gadow, in the course of the Department of Services for Children, Youth and Their Families investigation into plaintiff's Affirmative Action complaint, Henderson stated he was not coerced into making the November 2, 1998 request for termination by anyone, including Gadow. (D.I. 17 at 208) Plaintiff was informed of the request for termination on November 2, 1998 by internal memorandum from Henderson. (D.I. 16 at A11) Henderson's request for termination of plaintiff was the result of allegations of violations of DYRS protocol [FN1] on October 13, 1998 and October 23, 1998. (*Id.*) On October 13, 1998, plaintiff was alleged to have violated bedtime and activity

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                 Page 2
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

protocol by keeping residents of Ferris School in the school gymnasium after program hours. (*Id.*) In addition, the request for termination alleged plaintiff compelled residents to engage in structured exercise activities on October 23, 1998 in violation of the program model, which forbids the use of exercise as discipline. [FN2] (*Id.*) Henderson's request for termination also stated plaintiff was directed to abstain from contact with residents while an investigation into the October 23, 1998 activities was conducted, but plaintiff violated the direct instruction by initiating contact with residents with the purpose of hindering the investigation. (*Id.*) As a result of the questions surrounding plaintiff's actions, on December 11, 1998 plaintiff's probationary period with DYRS was extended for an additional six months. (D.I. 16 at A16)

> FN1. On September 14, 1998, plaintiff signed an internal memorandum acknowledging receipt of a Ferris School Standard Operating Procedure Manual and accepting responsibility for becoming familiar with the manual. (D.I. 17 at 218)

> FN2. The allegations of abuse stemming from the October 23, 1998 incident were subsequently determined to be unsubstantiated. (D.I. 16 at A12)

\*2 Gadow reviewed the recommendation for termination and forwarded the recommendation to Deputy Director, Michael Alfree ("Alfree"). [FN3] Alfree denied the request for termination, instead suspending plaintiff for thirty days. (D.I. 17 at 121) Plaintiff received written notice of the suspension from Gadow on December 24, 1998. (D.I. 16 at A12-A13) Plaintiff was given the opportunity to appeal the suspension within fifteen days of receiving the disciplinary letter. (*Id.*)

> FN3. Under standard agency procedure, the direct supervisor of the employee in question initiates a recommendation for termination, which is then reviewed by the Superintendent and forwarded to the Division Director. (D.I. 17 at 121)

Henderson claims prior to leaving his position at the Ferris School, he prepared a year-end employee review for plaintiff for 1998. [FN4] (D.I. 17 at 281) According to a letter signed by Henderson on May 1, 1999, plaintiff was rated as "Exceeding Expectations," despite the previous request for termination. (*Id.*) Plaintiff claims Gadow withheld Henderson's review and directed acting Program Manager, Christopher Stetzer, to evaluate plaintiff's job performance although Stetzer had never supervised plaintiff. (D.I. 19 at 4-5)

> FN4. There is no copy of the review in the record.

B. Corrective Action Plan

On January 26, 1999, plaintiff's new program manager, Annette Coston ("Coston"), an African American female, sent plaintiff a Corrective Action Plan outlining additional responsibilities as a result of plaintiff's questionable actions. (D.I. 16 at A15) The plan moved plaintiff from the "B" shift (2:00 p.m. to 10:00 p.m.) to the "A" shift (11:00 a.m. to 7:00 p.m.) so he would be directly supervised by Coston while working. The plan also required weekly meetings between plaintiff and Coston to discuss plaintiff's supervision of students, documentation of any physical contact between plaintiff and students, and consent from Coston and the Treatment Team for any treatment strategies regarding students at Ferris School. (*Id.*) Plaintiff agreed to the Corrective Action Plan by signing and dating the document on January 26, 1999. (*Id.*)

C. Pre-decision Hearing Regarding Thirty Day Suspension

On February 3, 1999, a pre-decision meeting was held to hear evidence regarding plaintiff's pending suspension. (D.I. 16 at A14) Plaintiff, plaintiff's union representative Joe Conaway, Gadow and Coston were present at the meeting. (*Id.*) During the meeting, plaintiff argued the thirty day suspension was unwarranted because he was sufficiently disciplined by a written reprimand for the October 23, 1998 incident. (*Id.*) Following the pre-decision meeting, Gadow concluded that the reprimand

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

plaintiff referenced was directed to plaintiff's failure to follow directives, not the October 23, 1998 incident, which subsequently was determined to be unsubstantiated. (*Id.*) As a result, Gadow determined that the thirty day suspension was warranted to supplement the letter of reprimand because of plaintiff's violations of DYRS protocol and failure to follow directives. (*Id.*) Plaintiff's suspension began on February 24, 1999 and ended on March 25, 1999. (D.I. 17 at 42)

D. Second Request for Plaintiff's Termination

*3 On March 8, 1999, a second request for plaintiff's termination from Ferris School was submitted by Gadow to Sherese Brewington-Carr ("Brewington-Carr"), Division Director. (D.I. 16 at A16) Gadow's response to plaintiff's Equal Employment Opportunity Commission (EEOC) complaint states Coston initially submitted a request for termination to Gadow on March 5, 1999. [FN5] (D.I. 17 at 119) The request for termination cited three violations of plaintiff's Corrective Action Plan as grounds for termination: [FN6] (1) on February 20, 1999 plaintiff entered the Ferris School on his day off; (2) on February 22, 1999 plaintiff held a parent meeting without prior approval by Coston and the Treatment Team, and without the Treatment Specialist assigned to the case; [FN7] and (3) on February 24, 1999 plaintiff escorted a student out of the cluster without informing other staff, keeping the student out past bedtime and two hours past the end of plaintiff's shift (D.I. 16 at A16-A17) The request for termination also stated plaintiff's behavior while with the Ferris School resident on February 24, 1999 was unprofessional, although not in direct violation of the Corrective Action Plan, because plaintiff told the resident he was upset about the thirty day suspension. (*Id.* at A17) Plaintiff was informed of the request for termination on March 31, 1999 and also notified of his right to address the charges at a pre-decision meeting. (*Id.* at A18)

> FN5. There is no copy of Coston's request for termination in the record.
>
> FN6. Plaintiff claims he was originally informed by Coston that the request for termination was submitted because plaintiff brought contraband (a toothbrush and Vaseline) into Ferris School. (D.I. 19 at 5) Plaintiff further claims the reasoning for the request for termination was later changed when it was found the allegations regarding the contraband were false. (*Id.*)
>
> FN7. Plaintiff claims the chairperson for the meeting and the case supervisor were present at the parent meeting. (D.I. 19 at 5) In addition, plaintiff notified Coston through email of the meeting and also claims Coston walked past the meeting, seeing the parties present. (D.I. 17 at 327; D.I. 19 at 5)

While the request for termination was pending, Coston completed a State of Delaware Employee Performance Review to evaluate plaintiff's job performance as Treatment Specialist Supervisor from January 1, 1999 through April 30, 1999. (D.I. 17 at 94) Plaintiff's overall performance was listed as "Needs Improvement." (*Id.*) Plaintiff claims the evaluation originally stated plaintiff "Meets Expectations," but Gadow told Coston to change the overall evaluation from "Meets Expectations" to "Needs Improvement." (D.I. 19 at 5) In the evaluation, under "Areas of specific performance deficiencies or unsatisfactory work," Coston cited an incident where students were allowed in plaintiff's office unsupervised in violation of Ferris School policies and procedures. (D.I. 17 at 94) Plaintiff signed the review, but commented that the designation of plaintiff's overall performance as "Needs Improvement" was unfair because it was based on problems raised under the Corrective Action Plan, and not his 1999 Performance Plan. [FN8] (*Id.* at 95) Also, on May 13, 1999, plaintiff's Corrective Action Plan was revised. (*Id.* at 282) The revised plan returned plaintiff to the "B" shift and ended the mandatory weekly meetings between plaintiff and Coston. (*Id.*)

> FN8. The 1999 Performance Plan outlines plaintiff's job responsibilities, separate from the additional responsibilities

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                     Page 4
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

outlined in the January 26, 1999 Corrective Action Plan. (D.I. 17 at 96)

E. Denial of Second Request for Termination

A pre-termination hearing was held on May 20, 1999. (D.I. 16 at A20) Plaintiff, Brewington-Carr, Gadow, Personnel Officer Karen Smith, and plaintiff's union representative Patricia Bailey, were present at the hearing. (*Id.*)

*4 A decision as to the request for termination was reached on June 18, 1999 by Brewington-Carr. (D.I. 15 at A20) The claim plaintiff violated the Corrective Action Plan on February 20, 1999 by entering Ferris School on his day off was removed from the charges because plaintiff's actions were not a violation of a directive under the Corrective Action Plan. (*Id.* at A22) The February 22 and 24, 1999 incidents were determined to be violations of the Corrective Action Plan and Ferris School policy and procedures. (*Id.*) Brewington-Carr determined plaintiff's actions were serious, but termination would be too severe, therefore, plaintiff was demoted to the position of Treatment Specialist, effective July 1, 1999. (*Id.* at A23)

On June 30, 1999, Coston completed another State of Delaware Employee Performance Review, evaluating plaintiff's job performance from May 1, 1999 through June 30, 1999. (D.I. 17 at 93) Plaintiff's overall performance was rated as "Meets Expectations" and no areas of specific performance deficiencies or unsatisfactory work were listed. (*Id.*)

F. Plaintiff's Request for Educational Leave

On August 9, 1999, plaintiff submitted a request for educational leave to pursue a Masters in Public Administration at Wilmington College. (D.I. 17 at 295-296) DYRS does allow for educational leave to "promote professional growth and development," but the policy allows Division Directors to use discretion when granting leave. (*Id.* at 189) Plaintiff requested to take off work every other Friday, Saturday and Sunday to attend classes, in addition to being off one weekend a month for military duty. (*Id* at 173) Plaintiff's request for educational leave was denied. DYRS maintains the request was denied because of operating requirements and the "adverse impact" granting the leave would have on Ferris School. (*Id.*) Plaintiff submitted a proposed schedule which would allow him the necessary time off to attend classes, but the proposal was denied because it did not provide for adequate staffing. (*Id.* at 312) After plaintiff was denied educational leave, he called DYRS to notify them he would be using three sick days on October 21, 22, and 23, 1999, which coincided with the educational leave request plaintiff submitted. (*Id.* at 319-320) Plaintiff received a written reprimand for using sick days to attend educational classes, a violation of Merit Rules. [FN9] (*Id.*)

> FN9. Plaintiff was also reprimanded for failure to submit the proper documentation to his supervisors prior to taking military leave on October 15, 16 and 17, 1999. (D.I. 17 at 319-320)

G. Affirmative Action Complaint

As a result of the disciplinary actions taken against plaintiff, he filed an affirmative action complaint with the Department of Services for Children, Youth and their Families. (D.I. 17 at 208) Plaintiff's complaint claimed he had been subjected to punitive racial harassment by Gadow. (*Id.*) Norwood J. Coleman ("Coleman") issued a report summary with respect to the charges on October 25, 1999. (*Id.*) By reviewing materials submitted by plaintiff and interviewing witnesses, Coleman concluded plaintiff had not produced any evidence to show the disciplinary actions taken against him were discriminatory, and no supporting evidence was uncovered in the course of the investigation. (*Id.*)

H. EEOC Complaint

*5 Plaintiff submitted a complaint to the Delaware Department of Labor on November 8, 1999, alleging he was discriminated against based on his race under Title VII of the Civil Rights Act of 1964 ("Title VII"). (D.I. 17 at 16) The Delaware Department of Labor lacked jurisdiction because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 5

Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)

**(Cite as: 2003 WL 21383719 (D.Del.))**

the state law statute of limitations had expired, but the case was forwarded to the Equal Employment Opportunity Commission in Philadelphia. (*Id.* at 27) The complaint alleged plaintiff's thirty day suspension, demotion to Treatment Specialist, and denial of educational leave were discriminatory. (*Id.* at 16) After conducting an investigation, on September 5, 2001 plaintiff was notified by the EEOC that its investigation concluded there was not sufficient evidence to support a violation of Title VII. (*Id.* at 13) Plaintiff was also informed of his right to file suit against defendants within ninety days of receipt of the EEOC notice. (*Id.*)

III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Revis v. Slocomb Indus.*, 814 F.Supp. 1209, 1215 (D.Del.1993) (quoting *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987)).

IV. DISCUSSION [FN10]

> FN10. Plaintiff filed a form complaint with the court, in which he alleged discrimination based on his race and sex by defendants' disciplinary actions. (D.I.1) In plaintiff's reply to defendants' motion for summary judgment, plaintiff makes additional allegations of disparate treatment and handling of military duty, unfair treatment in evaluations, hiring promotion, and grievances. (D.I.19) Where the plaintiff is a *pro se* litigant, the court has an obligation to construe the complaint liberally *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Moreover, the parameters of the resulting civil complaint that may follow a notice of a right to sue from the EEOC are "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d Cir.1978). To the extent that plaintiff's November 8, 1999 EEOC charge of discrimination encompasses plaintiff's later allegations, the court will consider them in addition to those in his complaint.

*6 In response to defendants' motion for summary judgment, plaintiff argues the motion is premature

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

because defendants filed the motion prior to receiving plaintiff's response to their interrogatories. (D.I. 20) Under Rule 56(b), a defending party may move for summary judgment at any time. Fed.R. Civ. P. 56(b). Under Rule 56, defendants do not have to wait for plaintiff's response to their interrogatories to file a motion for summary judgment, therefore, the motion is properly before the court.

As a preliminary matter, Congress did not intend to create a cause of action against individual employees under Title VII. *See Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir.1996). Thus, plaintiff's claims against the individual defendant, Diane Gadow, are dismissed.

In his claims against DYRS, plaintiff alleges that he was subject to discrimination in violation of Title VII of the Civil Rights Act of 1964. [FN11] Claims brought pursuant to Title VII are analyzed under a burden-shifting framework; if plaintiff makes a prima facie showing of discrimination, the burden shifts to defendants to establish a legitimate, nondiscriminatory reason for their actions. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If defendants carry this burden, the presumption of discrimination drops from the case, and plaintiff must "cast sufficient doubt" upon defendants' proffered reasons to permit a reasonable factfinder to conclude that the reasons are fabricated. *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996) (en banc).

> FN11. The anti-discrimination provision of Title VII provides:
> It shall be an unlawful employment practice for an employer--(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.
> 42 U.S.C. § 2000e-2(a).

A. Disparate Treatment Claim

Generally, to state a disparate treatment in employment claim under Title VII, a plaintiff must offer evidence "adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the act." *EEOC v. Metal Serv. Co.,* 892 F.2d 341, 348 (3d Cir.1990). First, plaintiff must state a prima facie case of race or gender discrimination. *See McDonnell Douglas,* 411 U.S. at 802. He can do so by showing by a preponderance of the evidence that: (1) he is a member of the protected class; (2) he suffered an adverse employment action; and (3) similarly situated members of the opposite sex and members of other races were treated more favorably. *See id.*

Plaintiff claims he was the victim of deliberate harassment and intimidation by Gadow because he is an African American male. (D.I. 17 at 332) According to plaintiff, the disciplinary actions against him and the denial of educational leave were not consistent with the treatment of other DYRS employees. Plaintiff claims racial discrimination caused him to be subjected to more severe disciplinary actions than white male Treatment Specialist Supervisors. *(Id.* at 16) Plaintiff further claims race and gender were the motivating factors in denying him educational leave, while a white female employee's request was granted. *(Id.)*

*7 In the present action, plaintiff fails to establish a prima facie case of gender discrimination. Although plaintiff, a male, suffered an "adverse employment action," plaintiff has failed to show similarly situated members of the opposite sex were treated more favorably. Plaintiff does specify two employees who he believes received more favorable treatment despite having worse disciplinary records, but plaintiff has not introduced any evidence to support his claim. Even if plaintiff's claim that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 7
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

two employees received more favorable treatment were substantiated, both employees are also males, precluding any inference of discrimination based on gender. (D.I. 19 at 6)

Plaintiff has also failed to establish a prima facie case of race discrimination. Plaintiff has not introduced evidence that plaintiff's race was a factor in the claimed disparate treatment. First, six out of eight Treatment Specialist Supervisors at the Ferris School are African American males; therefore, it is a difficult burden to prove other employees were treated more favorably due to racial discrimination. Second, plaintiff's immediate supervisors, Henderson and Coston, are both African American, thus, there is little support that the requests for plaintiff's termination were motivated by racial discrimination. Even if plaintiff's claims that Gadow directed Henderson and Coston to request his termination were credited as true, plaintiff has failed to introduce any evidence that Gadow, a white female, was in any way motivated by plaintiff's race.

In the alternative, if the court found that plaintiff had established a prima facie case of race or gender discrimination, under the shifting burden standard, defendants have shown legitimate nondiscriminatory reasons for the disciplinary actions against plaintiff. *See McDonnell Douglas,* 411 U.S. at 802. Given plaintiff's numerous violations of DYRS protocol, his Corrective Action plan and directives from supervisors, defendants have demonstrated sufficient cause for plaintiff's thirty day suspension and demotion. With respect to the denial of plaintiff's request for educational leave, denying the leave to provide for adequate staffing on weekends is a legitimate reason, not based on discriminatory motives.

Furthermore, plaintiff has failed to introduce evidence to support any claim that defendants' motives are fabricated. "Speculation and belief are insufficient to create a fact issue as to pretext. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that [he] has been discriminated against." *Washington v. Occidental Chemical Corp.* 24 F.Supp.2d 713, 722 (S.D.Tex.1998). Plaintiff has failed to present any evidence that would support his claim that defendants' actions were motivated by racial or gender discrimination. Although during his employment plaintiff did receive some favorable employee evaluations, such evaluations do not necessarily lead to the inference that defendants' asserted reasons for the disciplinary actions are pretextual. Without evidence to support plaintiff's claim, his generalized belief that he has been subject to unlawful discrimination does not establish a case for discrimination under Title VII.

B. Hostile Work Environment Claim

*8 To state a Title VII claim premised on a hostile work environment, plaintiff must show: (1) that he suffered intentional discrimination because of race or sex; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected plaintiff; (4) that the discrimination would detrimentally affect a reasonable person of the same race or sex in that position; and (5) the existence of respondeat superior liability. *See Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996).

Plaintiff argues the consistent disparate treatment he has received has created a hostile work environment at Ferris School. (D.I. 17 at 332) In addition to his other claims, plaintiff argues he was denied a reasonable place to work while being investigated for abuse, as well as unfairly reprimanded for tardiness and taking military leave, although other employees were not reprimanded. (*Id.*) In response, defendants argue the evidence introduced into the record supports their contention that the disciplinary actions against plaintiff were always in response to his violations of DYRS policy. (D.I. 15 at 17) Defendants further argue that plaintiff's allegations are baseless because he concludes he was discriminated against simply because he was disciplined. (*Id.*)

By failing to establish that he suffered from intentional discrimination because of his race or gender, plaintiff has failed to prove a prima facie case for hostile work environment. Although plaintiff was disciplined by DYRS for his actions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 8
Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)
**(Cite as: 2003 WL 21383719 (D.Del.))**

and denied educational leave, defendants' actions were not discriminatory, but the result of plaintiff's violations of DYRS procedures and his supervisors' directives. Therefore, based on the record presented, the court concludes that plaintiff fails to carry his burden of proving a prima facie case on his hostile work environment claim.

V. CONCLUSION

For the reasons stated, defendants' motion for summary judgment is granted. An appropriate order shall issue.

Not Reported in F.Supp.2d, 2003 WL 21383719 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Slip Copy                                                                                                                Page 1

Slip Copy, 2005 WL 1528880 (D.N.J.)

**(Cite as: 2005 WL 1528880 (D.N.J.))**

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. New Jersey.
Joel H. GRICE, Plaintiff,
v.
UNITED STATES POSTAL SERVICE & National
Mail Handlers Union, Defendants.
**No. Civ.A. 05-2404(DRD).**

June 29, 2005.

Joel H. Grice, Irvington, NJ, Plaintiff pro se.

Christopher J. Christie, United States Attorney, by Rudolph A. Filko, Assistant United States Attorney, Newark, NJ, for defendant United States Postal Service.

OPINION

DEBEVOISE, Senior J.

*1 Presently before the court is the motion of defendant United States Postal Service ("USPS") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion for summary judgment will be granted.

*FACTS*

Plaintiff was employed by USPS as a mail handler at the Hackensack Processing and Distribution Center located in Hackensack, New Jersey He commenced his employment with USPS on or about May 13, 1995, and was terminated on or about May 21, 2003

After being suspended on two occasions for being AWOL and receiving three letters of warning for other infractions, on September 12, 2001, Plaintiff signed a Last Chance Agreement which required Plaintiff, *inter alia,* to maintain satisfactory attendance, which was defined as "no more than five(5) unscheduled absences during any six (6) month period of this agreement and no instances of AWOL." On March 14, 2002, USPS issued a Notice of Removal informing Plaintiff that he would be terminated because he violated the Last Chance Agreement by being absent on twenty (20) occasions for a total of 43.91 hours. Plaintiff's removal was effective on April 18, 2002.

Plaintiff filed a grievance challenging the Notice of Removal and his alleged violation of the Last Chance Agreement. A hearing before an arbitrator was held on December 20, 2002, and on May 21, 2003, the arbitrator issued an award in favor of USPS, finding that USPS properly issued Plaintiff a Notice of Removal because Plaintiff had violated the Last Chance Agreement.

Plaintiff initiated EEO counseling on April 6, 2004 and filed an administrative EEO complaint of discrimination on or about May 13, 2004. The EEO complaint alleged that Plaintiff was the victim of retaliation in July 2003 when he was notified of a transfer to a postal facility in Teterboro, New Jersey but was not permitted to work. On May 21, 2004, the EEO complaint was dismissed for three reasons: (1) although Plaintiff had alleged retaliation, he did not have any prior protected EEO involvement upon which a retaliation claim can be based; (2) Plaintiff failed to contact an EEO counselor within 45 days of the alleged discrimination; and (3) Plaintiff's EEO complaint was an impermissible collateral attack on the arbitration decision, which was a grievance decision in a collective bargaining agreement.

Plaintiff appealed the dismissal of his EEO complaint On October 27, 2004, the EEOC issued a decision (the "EEOC decision") which affirmed the dismissal on the grounds that Plaintiff's record lacked the requisite prior EEO involvement

© 2005 Thomson/West. No Claim to Orig. U S. Govt. Works.

Slip Copy                                                                                                          Page 2

Slip Copy, 2005 WL 1528880 (D.N.J.)

(Cite as: 2005 WL 1528880 (D.N.J.))

necessary for stating a retaliation claim. The EEOC decision notified Plaintiff of his right to file a civil action in federal court within ninety (90) days of receipt of the EEOC decision.

On February 14, 2005, Plaintiff filled out a form Complaint in the Superior Court of New Jersey, Law Division, Bergen County. In the section asking for a summary of "what happened that resulted in [Plaintiff's] claim against the defendant", Plaintiff wrote that he "was caused pain and suffering due to discriminatory practices." Plaintiff left blank another section asking for a list or description of the harm that occurred as a result of defendant's acts. The Complaint does not provide any further allegations

*2 The Complaint was removed to this court on May 6, 2005 by defendant National Postal Mail Handlers Union. On or about May 19, 2005, USPS filed a motion to dismiss or, in the alternative, for summary judgment. Although Plaintiff did not file written opposition prior to oral argument, Plaintiff presented his arguments orally before the court on June 13, 2005, and on June 20, 2005, Plaintiff personally delivered a handwritten letter to the court. In the June 20, 2005 letter, Plaintiff asks for
  some answers to some very serious questions: such as,
  1) Why did my union fail to abide by the rules of the national agreement?
  2) Why is the U.S.P.S. trying to maintain a zero tolerance to lateness, when in fact the daily operating is not perfect?
The June 20, 2005 letter also lists the names and positions of ten potential witnesses and attaches copies of pages purportedly from the "National Agreement" between the National Postal Mail Handler's Union and the USPS.

## STANDARD OF REVIEW

USPS has moved to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). A motion to dismiss should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980); *Craftmatic Sec. Litig. v. Kraftsow,* 890 F.2d 628, 634 (3d Cir.1989). Allegations contained in the Complaint will be accepted as true, *Cruz v. Beto,* 405 U.S. 319, 322 (1972), and Plaintiff shall be "given the benefit of every favorable inference that can be drawn from those allegations." *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991). A *pro se* complaint should be held to less stringent standards and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (citation omitted). "Legal conclusions made in the guise of factual allegations, however, are given no presumption of truthfulness." *In re MobileMedia Secs. Litig.,* 28 F.Supp.2d 901, 922 (D.N.J.1998) (citations omitted).

In the alternative and to the extent that documents outside of the Complaint are considered, USPS requests summary judgment in its favor. Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) imposes a burden on the moving party simply to point out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

Once the moving party has met this burden, the burden then shifts to the non-moving party. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, she may not simply "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888 (1990) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Rather, she must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                                                Page 3
Slip Copy, 2005 WL 1528880 (D.N.J.)
**(Cite as: 2005 WL 1528880 (D.N.J.))**

*3 At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* at 247. In determining whether there exists a material issue of disputed fact, however, the facts and the inferences to be drawn from the facts are to be viewed in the light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

Because the dearth of factual allegations in the Complaint compels consideration of documents submitted by USPS [FN1] which are not contained in the Complaint, USPS's motion will be treated as one for summary judgment.

> FN1. The documents annexed to the Declaration of Rudolph A. Filko-- *i.e.,* Equal Employment Opportunity Commission file related to Plaintiff (Ex. A) and Arbitration award dated May 21, 2003 related to Plaintiff (Ex. B)--will be considered for purposes of deciding this motion.

*DISCUSSION*
USPS has advanced several reasons to dismiss Plaintiff's Complaint. First, USPS argues that Plaintiff has failed to meet Rule 8's rudimentary pleading requirements by failing to state the basis for his discrimination claims or showing that Plaintiff is entitled to relief. Second, USPS argues that Plaintiff failed to exhaust his administrative remedies as required by Title VII and was grossly out of time in bringing his discrimination claims before the EEOC and should be barred from raising them now. Third, USPS argues that even if Plaintiff had timely contacted an EEO counselor, his Complaint should be dismissed as untimely because he failed to file the Complaint in district court within the requisite ninety days after receiving his right-to-sue notice. Fourth, USPS argues that Plaintiff failed to name the proper party defendant,

*i.e.,* the Postmaster General. Fifth, USPS argues that Plaintiff cannot establish a *prima facie* case of discriminatory treatment in his removal from postal employment. Because the Complaint will be dismissed on grounds two through four, USPS's other arguments need not be reached. Unfortunately for Plaintiff, the merits of his grievances will not be reached because dismissal is warranted on procedural grounds.

1. Exhaustion of administrative remedies

The Complaint should also be dismissed because there is no question that Plaintiff failed to exhaust his administrative remedies. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.,* establishes the exclusive remedy for federal employees who allege discrimination in the workplace. *Robinson v. Dalton,* 107 F.3d 1018, 1020-1021 (3d Cir.1997). Federal regulations provide in pertinent part:
  (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap *must* consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
  (1) An aggrieved person must initiate contact with a Counselor *within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.*
*4 (2) The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.
29 C.F.R. § 1614.105 (emphases added). Plaintiff initiated EEO counseling on April 6, 2004, which was a leap year. Therefore, the latest date on which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                       Page 4
Slip Copy, 2005 WL 1528880 (D.N.J.)
**(Cite as: 2005 WL 1528880 (D.N.J.))**

the allegedly discriminatory action could have occurred is February 21, 2004. Although the Complaint is ambiguous with respect to the specifics of the allegedly discriminatory action(s), including the date(s), the documents submitted by USPS indicate that there are only three possible dates on which the allegedly discriminatory action(s) could have occurred--on or about April 18, 2002 (the effective date of removal), on or about May 21, 2003 (the date Plaintiff was terminated), and July 2003 (when Plaintiff allegedly was involuntarily transferred to another facility but not permitted to work). All claims based on these allegedly discriminatory actions will be dismissed because they all occurred prior to February 21, 2004.

Plaintiff has not submitted any argument that he should be exempted from the requirement of exhausting administrative remedies. Therefore, the Complaint should be dismissed.

2. Filing in district court within ninety days after receipt of EEOC notice of right to sue

A third reason for dismissing the Complaint is Plaintiff's failure to file the Complaint in the district court within ninety days after receiving the right-to-sue notice from the EEOC. The Complaint is time-barred under 42 U.S.C. § 2000e-5(f)(1) because it was not filed within ninety days of receipt of the EEOC's right-to-sue notice. The October 27, 2004 EEOC decision, which affirmed the agency decision, expressly informed Plaintiff: "You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." The EEOC decision further advises that, "[f]or timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed." Plaintiff filed the Complaint in state court on February 14, 2005, and the Complaint was removed to this court on may 6, 2005. Either of these dates falls outside the ninety day limit.

The ninety-day time limit in which Plaintiff must file a Title VII action is akin to a statute of limitations rather than a jurisdictional bar. Therefore, it is subject to equitable tolling *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239-40 (3d Cir.1999) (citations omitted). "Under equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Id.* at 240. In this case, Plaintiff has not shown any inequitable circumstances that would justify tolling the statute of limitations. Accordingly, the Complaint should be dismissed on this basis.

3. Naming the proper defendant

*5 The Complaint should also be dismissed because Plaintiff has not named the proper defendant. Plaintiff names the USPS, but not the Postmaster General, as a defendant. In this case, however, the Postmaster General is the proper defendant, not USPS. 42 U.S.C. § 2000e-16 (c). The EEOC decision dated October 27, 2004 expressly advised Plaintiff: "If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court." USPS will be dismissed because it is not a proper defendant in this action. *See Swingle v. Henderson*, 142 F.Supp.2d 625, 631 (D.N.J.2001) (dismissing USPS and noting that "any wrongful and actionable acts of the Postmaster General are chargeable as acts of the Postal Service") (citing *Loeffler v. Frank*, 486 U.S. 549, 562 n. 8 (1988)).

*CONCLUSION*
USPS's motion for summary judgment will be granted, and the Complaint will be dismissed with prejudice for the reasons stated above. An appropriate order will be issued.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

**Westlaw.**

Not Reported in F.Supp.                                                                                                    Page 1
Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)
**(Cite as: 1998 WL 314668 (E.D.Pa.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Robert E. JONES
v.
Marsha S. BOYD; Sandra J. Squire, Administrative Law Judge; U.S. Merit Systems Protection Board; Bruce Babbit, Secretary of the Interior; Roger Kennedy, Director National Park Service; and Martha Ansty, Esquire, Counsel, Department of the Interior
**No. CIV. A. 97-3363.**

June 11, 1998.

*ORDER AND MEMORANDUM*

DUBOIS.

*1 AND NOW, to wit, this 10th day of June, 1998, upon consideration of defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 10, filed Sep. 4, 1997), plaintiff's "Motion for Dismissal of the Defendants Motion for Dismiss" (Doc. No. 12, filed Sep. 24, 1997), defendants' Reply in Support of the Motion to Dismiss the Complaint (Doc. No. 13, filed Oct. 6 1997), and plaintiff's "Motion for Dismissal of the Defendants Motion for Dismiss" (Doc. No. 14, filed Oct. 14, 1997) (raising the identical claims and defenses raised in Document No. 12), for the reasons set forth in the accompanying Memorandum, IT IS ORDERED as follows Defendants' Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. No. 10, filed Sep. 4, 1997), treated by the Court in part as a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and in part as a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), is GRANTED and plaintiff's Complaint is DISMISSED.
Plaintiff's "Motion for Dismissal of the Defendants Motion for Dismiss" (Doc. No. 12, filed Sep. 24, 1997) is DENIED.
Plaintiff's "Motion for Dismissal of the Defendants Motion for Dismiss" (Doc. No. 14, filed Oct. 14, 1997) is DENIED.

*MEMORANDUM*

Background: On August 4, 1992, plaintiff, Robert E. Jones, was terminated from his job as a park ranger with the United States Department of the Interior. On July 29, 1992--prior to his termination--plaintiff filed a complaint with the Interior Department alleging that he had been discriminated against on account of his race (Celt), color (white), age (40), mental or physical handicap (bad back and learning disability), and in reprisal for complaining to an Equal Employment Opportunity ("EEO") counselor. Following his termination, plaintiff filed another complaint--on November 17, 1992--with the Interior Department, raising similar claims.

The Interior Department issued a decision on December 17, 1993, finding that there had been no discrimination. Plaintiff appealed this decision to the Equal Employment Opportunity Commission ("EEOC"). He presented the EEOC with claims of discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq.*, the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et. seq.*, and the Rehabilitation Act, 29 U.S.C. § 791, *et. seq.* In a decision dated November 1, 1994, the EEOC affirmed a finding of no discrimination. Plaintiff requested reconsideration of that decision on December 2, 1994, which request was denied by the EEOC on June 7, 1996.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                              Page 2

Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)

**(Cite as: 1998 WL 314668 (E.D.Pa.))**

At the same time plaintiff was pursuing his claims of discrimination before the EEOC, he sought review by the Merit Systems Protection Board ("MSPB") of the Interior Department's decision to terminate him. After a threshold jurisdictional question was raised and answered in a series of opinions, plaintiff was ordered reinstated by Administrative Judge Sandra J. Squire on April 21, 1994. The basis of the order of reinstatement was that the agency had failed to provide plaintiff with adequate procedural protections before terminating him. There was another series of appeals before the MSPB, first by the agency and later by the plaintiff who alleged that the department had failed to abide by the MSPB's reinstatement order. On October 31, 1996, plaintiff was terminated for the second time. He no longer works for the Department of the Interior.

*2 Plaintiff filed a Complaint in the District of Maryland which was transferred to this Court by order dated May 5, 1997 of Senior Judge Young. Plaintiff's Complaint consists of a form provided by the District of Maryland entitled "Complaint for Employment Discrimination" and an appended document entitled "Statement of Federal Jurisdiction" which sets forth the facts and arguments relied on by plaintiff. Plaintiff also attached various documents to his Complaint. The Complaint, and plaintiff's response to defendants' Motion to Dismiss, set forth numerous grounds for relief, most of which concern either the regulatory requirements for terminating a federal employee--those issues addressed by the MSPB--or the appropriate standard of review of an MSPB decision. In addition, plaintiff asserts that he does not wish to abandon his discrimination claims and--in the body of the document entitled "Statement of Federal Jurisdiction"--contends that he was discriminated against on the basis of his "learning disabilities" and bad back. On the form entitled "Complaint for Employment Discrimination," plaintiff placed a check in the space next to a line for a cause of action under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.. Because plaintiff is a federal employee, this claim should more appropriately have been raised pursuant to the Rehabilitation Act, 29 U.S.C. § 791, et seq.. See 42 U.S.C. § 12111(5)(B); see also *Spench v. Straw,* 54 F.3d 196, 202 (3d Cir.1995). On the same "Complaint for Employment Discrimination" form, plaintiff placed a check next to the line for a cause of action under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and, although he did not check the equivalent line next to the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., he indicated his intention to challenge his termination on the basis of age discrimination elsewhere on the "Complaint for Employment Discrimination" form, a challenge properly brought pursuant to the ADEA. The facts and theories underlying these latter claims--under Title VII and the ADEA--are not set forth either in plaintiff's "Statement of Federal Jurisdiction" or in the "Complaint for Employment Discrimination" form.

Defendants base their motion to dismiss on two grounds. First, defendants contend that this is not a "mixed case"--one in which the MSPB heard claims of both discrimination and procedural deficiencies--and this Court therefore lacks jurisdiction pursuant to 5 U.S.C. § 7703(b). Second, defendants argue that plaintiff's discrimination claims are not timely because he filed this case more than ninety (90) days after the final decision of the EEOC. See 42 U.S.C. § 2000e-16(c).

2. Legal Standard: Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6). To the extent defendants challenge plaintiff's discrimination claims as untimely, the Motion was properly filed under Rule 12(b)(6). When considering a Motion under Rule 12(b)(6), "the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure,* Civil 2d § 1357 (1990); see also *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd Cir.1990). Generally, the court must accept as true the facts alleged in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. See, e.g.,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)  
**(Cite as: 1998 WL 314668 (E.D.Pa.))**

Page 3

*Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir.1990).

*3 In this case, defendant contends that some of plaintiff's claims are untimely. Normally, "a 12(b)(6) motion should not be granted on limitations grounds unless the complaint facially shows noncompliance with the limitations period." *Clark v. Sears Roebuck & Co.*, 816 F.Supp. 1064, 1067 (E.D.Pa.1993) (citing *Morgan v. Kobrin Securities, Inc.*, 649 F.Supp. 1023, 1027-1028 (N.D.Ill.1986)). As stated, however, on a Rule 12(b)(6) motion-- even one based on a statute of limitations--a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, Civil 2d § 1357 (1990)); *accord Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994).

In addition, defendants have challenged this Court's subject matter jurisdiction with respect to plaintiff's appeal from the MSPB decision. This challenge should more properly have been filed pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Court will treat the challenge to its jurisdiction as having been filed under that Rule. When considering a motion pursuant to Rule 12(b)(1), "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Federal Savings and Loan, Assn.*, 549 F.2d 884, 891 (3d Cir.1977).  
Analysis: Plaintiff is seeking, in part, judicial review of the decision of the MSPB. Defendants are correct when they assert that this Court has jurisdiction over appeals from decisions by the MSPB only if the MSPB decided a "mixed" case, that is, a case involving both claims of discrimination and claims of procedural deficiencies. *See* 7 U.S.C. § 7703(b)(1)-(2); *see also Cohen v. Austin*, 833 F.Supp. 512, 515 (E.D.Pa.1993); *Gollis v. Garrett*, 819 F.Supp. 446, 449 (E.D.Pa.1993). Exclusive jurisdiction is vested in the Federal Circuit for those appeals from an MSPB decision which are not "mixed." *See id.*

In this case, plaintiff may have raised discrimination claims before the MSPB. There is a passing reference to discrimination in the Appeal Form filed with the MSPB. *See* Defendants' Ex. 4, attached to Defendants' Motion to Dismiss. Plaintiff also contends that he "did have the EEO claims enter [sic] into the MSPB appeal." Plaintiff's "Motion for the Dismissal of the Defendants Motion for Dismiss" at 3. Moreover, plaintiff claims that this is a "mixbag case" and that he does not wish to abandon his discrimination claims. Regardless of whether discrimination claims were presented to the MSPB, however, it is apparent that they were never adjudicated by that body and "the Federal Circuit retains exclusive jurisdiction to review Board decisions on procedural or threshold matters in mixed case appeals *until the Board reaches the merits of the discrimination claim*." *M.C. Cherry v. Dep't of Energy*, 1994 WL 745462, * 2 (Fed.Cir. Feb.17, 1994) (emphasis added). The Court therefore agrees with defendants that this is not a "mixed case" and the Court concludes that it lacks jurisdiction to entertain plaintiff's appeal from the MSPB decision.

*4 However, plaintiff has also alleged that his termination was the result of discrimination on account of his "learning disabilities" and bad back--a claim properly brought under the Rehabilitation Act. In addition, plaintiff appears to assert claims under Title VII and the ADEA, although he sets forth no facts to support those claims in his Complaint. Defendants argue that all such claims are timed barred because plaintiff was required to file them within ninety (90) days of the EEOC's final decision. In support, defendants cite 42 U.S.C. § 2000e-16(c). This provision expressly governs Title VII claims; Rehabilitation Act claims also use Title VII's procedural scheme. *See* 29 U.S.C. § 794a(a)(1) (1994) ("The remedies, procedures and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16), including the application of sections 706(f) and 706(k) (42 U.S.C. § 2000e-5(f) though (k)), shall be available" to claims brought under the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 4
Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)
**(Cite as: 1998 WL 314668 (E.D.Pa.))**

Rehabilitation Act). Plaintiff's claims pursuant to Title VII and the Rehabilitation Act are therefore clearly governed by a ninety (90) day limit.

The ADEA, on the other hand, contains no statute of limitations for federal employees who choose to pursue their claims with the EEOC before filing in federal court. *See* 29 U.S.C. § 633a. The Third Circuit has not addressed the question of what limitations period to apply, so the Court must adopt one from an analogous federal or state provision. *See Stevens v. Department of Treasury,* 500 U.S. 1, 7-8, 111 S.Ct. 1562, 114 L.Ed.2d 1 (1991).

> Most of the circuits that have addressed the issue have elected to apply the limitations period of Title VII, 42 U.S.C.A. § 2000e-16(c) ..., requiring the litigant to file a civil action within [ninety] days of receipt of notice of final agency action. *Jones v. Runyon,* 32 F.3d 1454, 1456 (10th Cir.1994); *Long v. Frank,* 22 F.3d 54, 56-59 (2d Cir.1994), cert. denied, 513 U.S. 1128, 115 S.Ct. 938, 130 L.Ed.2d 883, 63 U.S.L.W. 3563 (U.S. Jan. 23, 1995) (No. 94-6226); *Lavery v. Marsh,* 918 F.2d 1022, 1024-27 (1st Cir.1990); *see Edwards v. Shalala,* 64 F.3d 601, 603-06 (11th Cir.1995) (holding that Title VII is most analogous to the ADEA, and provides the most appropriate statute of limitations to borrow).

*Rawlett v. Runyon,* 104 F.3d 359 (Table), 1996 WL 733153, *1 (4th Cir.1996) (adopting ninety (90) day period); *but see Lubniewski v. Lehman,* 891 F.2d 216, 220-21 (9th Cir.1989) (adopting the six-year general statute of limitations for non-tort civil claims against the government). The Court concludes that the ADEA is most analogous to Title VII and adopts a ninety (90) day limitations period for plaintiff's ADEA claim.

*5 On June 7, 1996 the EEOC denied plaintiff's "Request for Reconsideration." This was a final decision and plaintiff was clearly informed in the denial letter that he had ninety (90) days in which to file a civil action in district court. As the instant case was not filed until March 25, 1997 (in the District of Maryland), well more than ninety (90) days passed between the time the EEOC issued its final decision and the time plaintiff filed his Complaint.

This is not the end of the matter, however, for the ninety (90) day time limit is not jurisdictional in nature and is therefore subject to equitable tolling. *See Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95-96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Equitable tolling is granted only in limited circumstances. *See id.* at 96. Some of the circumstances in which equitable tolling of the ninety day period might be justified are: (1) where notice from the EEOC does not adequately inform plaintiff of the requirement that suit be commenced within the statutory period; (2) where the court itself has led plaintiff to believe that he has satisfied all statutory prerequisites to suit; and (3) where the defendants have, through affirmative misconduct, lulled the plaintiff into inaction. *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). None of those circumstances exist in this case.

Plaintiff's claim that he suffers from a learning disability does raise the question of whether such a disability can serve as a basis for equitable tolling. However, the Court need not answer this question because plaintiff has filed voluminous papers with the Court and, for a *pro se* litigant, conducted himself adequately. There is simply no evidence that any learning disability has "rendered [him] incapable of ... pursuing [his] claim." *Nunnally v. MacCausland,* 996 F.2d 1, 6 (1st Cir.1993); *see also Arizmendi v. Lawson,* 914 F.Supp. 1157, 1162 (E.D.Pa.1996) (noting that "[s]ome courts have recognized mental illness as a ground for equitable tolling, although only in rather extreme circumstances" and collecting cases). Because there is no evidence that plaintiff's learning disability prevented him from pursuing his claims in a timely manner, the Court concludes that plaintiff's claims are not subject to equitable tolling. His discrimination claims are, therefore, untimely.

For the reasons set forth above, the Court has dismissed plaintiff's Complaint and denied plaintiff's two Motions "for Dismissal of Defendants Motion for Dismiss."

Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 5
Not Reported in F.Supp., 1998 WL 314668 (E.D.Pa.)
**(Cite as: 1998 WL 314668 (E.D.Pa.))**

**Motions, Pleadings and Filings (Back to top)**

- 2:97cv03363  (Docket)
(May. 12, 1997)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.