# A86 – A120

DAIMLERCHRYSLER
NEWARK PARTS DISTRIBUTION CENTER
FIRE EMERGENCY RESPONSE ORGANIZATION
DISASTER (EPISODE)
SPECIFIC RESPONSIBILITIES

## DEFINITIONS

### Initial Response Team

Incident Commander/Emergency Coordinator - Oversee entire episode (fire control, evacuation and loss prevention). Establish command center and start disaster protocol initiative. Notify corporate hierarchy including fire/security, safety, environmental, facilities and operational personnel. Advise Newark Assembly Fire/Security and our electronic fire protection vendor (ADT) of our emergency condition. Assure all state and local authorities have been appraised of the episode condition. Keep close verbal contact with PDC Fire Chief and/or Fire Coordinators. Review PDC Disaster Emergency Matrix for compliance accuracy.

Alternate Emergency Coordinator - Perform Emergency Coordinator's function as backup and/or assist Coordinator as required.

Fire Chief - Determine if fire is incipient in nature and can be controlled by F.E.R.O. initiative or if fire department support is essential. Call Emergency "911" to alert Fire Department of situation. Keep close verbal contact with Fire Department via appropriate communication line. Advise guard house of approaching fire support and give direction as they arrive. Oversee incipient fire fighting procedures assuring appropriate loss prevention action has been determined and implemented. Keep Emergency Coordinator abreast of episode status ongoing via "Walkie Talkie" (two-way radio)

Fire Coordinator - Oversee actual fire initiative assuring that response and supplemental response team's are properly employed. Verify all responsibilities are covered including crowd control, 1½" hose and extinguisher deployment, utility, fire pump and sprinkler coverage is adequate.

Crowd Control Leader - Assure all non essential PDC, Contract and possible visitor personnel are expediously exited from the facility.

Incipient Fire Fighter(s) (1½ Hose/Fire Extinguisher) - Initiate essential fire fighting technique using 1½" hose or appropriate fire extinguisher(s) which ever deemed necessary until the PDC Fire Chief, Fire Coordinators and Emergency Coordinators concur the fire is terminated.

First Aid Attendants - Administer basic First Aid initiative for any FERO or non fire essential personnel injured as a direct or indirect result of the episode. Notify major medical personnel if deemed warranted.

Security Prevention Services (Burns Plant Protection) - Security Prevention Services personnel are responsible for providing and maintaining emergency communications (including notifications). They must provide exterior traffic (vehicle, personnel) control whenever possible and perform related job assignments as identified by the Incident Commander.

### Supplemental Response Team

Evacuation/Shelter Assembly Accountability Personnel - Account for all hourly, salary, management, security guards, contract vendor and visitor personnel using hourly time cards and guard service pedestrian summary sheets. Unaccounted for personnel must be brought to the Emergency Coordinator and the Fire Chiefs attention A.S.A.P.

Fire Protection Equipment Requirement (First Responder Operation Personal-Maintenance) - Assure that all fire protection equipment is functioning properly including utilities, fire pump and sprinkler capability. Make necessary correction as deemed necessary.

Public Relations Liaison - Inform and keep communication channel clear, controlled and accurate between the Emergency Coordinator, Corporate Personnel and the local mass media. Quickly dispel any false allegations or hearsay that has been portrayed.

### Outside Response Organizations

Outside Fire Response Agencies - The outside fire response agencies are responsible for providing fire fighting, emergency rescue assistance and limited assistance involving chemicals as directed by the Incident Commander.

Outside Medical Response Agencies - The outside medical response agencies are responsible for providing additional medical assistance to the Incident Commander. They are also responsible for major clean up of any medical equipment, bandaging, fluids, etc. and disposal of medical waste created by the emergency. All waste material disposals must be coordinated through the Emergency Coordinator (Warehouse Manager).

Outside Spill Response Agencies - Outside Spill Response Agencies are responsible for performing spill clean-up and containment. They will provide for the transportation and disposal of the waste material (other than medical waste). Note: All waste material disposal must be coordinated through the Environmental Coordinator (Warehouse Manager). They shall provide assistance for post-incident clean-up required by the Incident Commander and First Responder Operational personnel.

D 000479

NEWARK PARTS DISTRIBUTION CENTER
DISASTER PREPAREDNESS PLAN
GUIDELINES FOR EVACUATION/SHELTER AREAS

Notification of PDC Personnel in case of an incident that requires evacuation or shelter will be as to follows:
WARNING SIGNALS(via the Public Address-Intercom)
**CONTINUOUS BLAST** - Fire/Bomb Threat or Hazardous Spill (Exit Building via the nearest emergency door).
**SHORT BLASTS** - Take Cover (Proceed to assigned shelter).
**NOTE:** If PA System does not work notification will be by employee runners using a "BULL HORN".

**HAZARDOUS SPILL, FIRE OR BOMB THREAT**
In case of Fire, Bomb Treat or Hazardous Sill and an evacuation is signaled. All employees are to Exit via the nearest emergency designated Exit. Once exited the building all employees (evacuees) are to gather in the vehicular parking lot along the East fenceline across from the picnic area next to Mopar Drive. All personnel will be accounted for in this area.

**TORNADO/HURRICANE** -        In case of tornado/hurricane proceed to assigned shelter area as follows:

| PEOPLE SUPERVISED BY | SHELTER # |
|---|---|
| Gary Simpers- 1st Shift | |
| David Petrous- 2nd Shift | #1 (2-Bathrooms next to |
| Robert Pisani, 2nd Shift | DDS Pack Area) |
| Dave Hart, John Bryant- 3rd Shift | |
| Michelle Crockett-1st Shift,Core Warranty, Returns (Front) | |
| Bill Ivers – Ryder – 1st Shift | |
| Betsy Hay - Ryder- 2nd Shift | |
| Gary Cooper – Ryder – 3rd Shift | |
| | |
| Audra Jarman- Frt End Stk. only | #2 (1-Bathroom N.E. |
| Michelle Crockett – Rewarehousing | corner, next to |
| | PR Rack across |
| | from Carousel) |
| | |
| Nate Huggins – Back End Receiving Only | #3(I-Bathroom N.W. |
| Michelle Crockett – Reg.Maint/Janitorial/ Returns (Back-End) | corner, next to |
| | Chry.Maint.Dept) |

**GENERAL RULES TO FOLLOW:**

**1. REMAIN CALM - WALK, DO NOT PUSH OR CAUSE CONFUSION.**

**2. DO NOT GATHER IN LARGE GROUPS OR WAIT FOR A FRIEND THEY MAY ALREADY BE GONE.**

**3. TO ELIMINATE DELAYS IN COMMUNICATION, DO NOT USE THE TELEPHONES.**

**4. FOR EVERYONE'S SAFETY, KEEP CLEAR OF DAMAGED AREAS.**

**5. DO NOT RIDE POWER EQUIPMENT TO EXITS/SHELTERS OR LEAVE PIV IN THE MIDDLE OF AISLES.**

**6. IN CASE OF EVACUATION USE CLOSEST EXIT. IN CASE OF TORNADO EVEN THOUGH YOU HAVE AN ASSIGNED SHELTER IF YOU ARE NEXT TO A DIFFERENT SHELTER USE IT.**

**7. DO NOT TALK OR CARRY ON DURING ROLE CALL CHECK OFF VERIFICATION.  WE DON'T WANT TO MISS ANYONE.**

**8. NO SMOKING!**

**9. REMAIN IN DESIGNATED AREA/SHELTER UNTIL RELEASED BY DISASTER COORDINATOR OR REPRESENTATIVE.**



D 000481

A88

DAIMLERCHRYSLER

## NEWARK PDC

## HEALTHYLIFE

The purpose of the Healthylife Program is to provide DaimlerChrysler employees with a comprehensive worksite Wellness program that all employees will enjoy and incorporate into their lifestyle.

The Healthylife Employee Program can provide the employee health-related information, in order to make choices for building a healthier and wealthier lifestyle! Guidance on nutrition, fitness, weight control, stress management, smoking cessation, safety, and health care can be obtained. Health screenings, health risk assessment, lifestyle's education programs and seminars, activities, games, incentive campaigns, highrisk focus follow-up video library, and brochures are all available through the Staywell Department.

Employee's Voluntary Participation in programs is encouraged. Most programs are available on-site and are free of charge. All individual medical information is kept completely confidential.

A89

D 000482

## WHAT'S IN IT FOR ME?

WHAT'S IN IT FOR ME (WIIFM)?  IT'S AN AGE-OLD QUESTION THAT MUST BE ADDRESSED IN THE PURSUIT OF QUALITY AND EXCELLENCE.  MOST PEOPLE DO A BETTER JOB WHEN THEY UNDERSTAND HOW DOING THE JOB BETTER AFFECTS THEIR WELL-BEING.  THERE'S A DIRECT CONNECTION BETWEEN JOB PERFORMANCE AND PERSONAL WELL-BEING.   DOING THE JOB WELL, IN A QUALITY WAY, INCREASES JOB SECURITY, MEANS FEWER HASSLES AND MORE JOB ENJOYMENT.  IT ALSO GENERATES PRIDE AND JOB SATISFACTION AND HELPS DEVELOP NEW CUSTOMERS.

JOHN TURNBULL
LOCAL 404 PRESIDENT

ROBERT P. MAILLOUX
PDC MANAGER
NEWARK PARTS DISTRIBUTION CENTER

**A90**

D 000483

# DAIMLERCHRYSLER

DaimlerChrysler
Motors Corporation
Newark Parts
Distribution Center 3130

January 16, 2002

Mr. Dino Petrucelli
23 Whiteheaven Dr.
New Castle, DE  19720

Dear Mr. Petrucelli:

This letter is to inform you that your indefinite suspension has been modified to a discharge, effective January 11, 2002, for your actions on November 23, 2001 and January 4, 2002, at which time you violated DaimlerChrysler Standards of Conduct, specifically Rule # 5 "Failure to exert normal effort on the job, wasting time, loitering, loafing or sleeping on the job" and your past poor work record.

Your notice of discharge is attached and you are hereby advised that you have the right to union representation.

Sincerely,

Dawn M. Reese
Personnel Dept.
Newark PDC

**A91**

**D 000065**

DaimlerChrysler Motors Corporation
1 Mopar Drive   CIMS 102-00-00
Newark DE USA  19713-1302
Phone 302 453 5425

# DaimlerChrysler Corporation Policy

**Policy Number:**  3- 6
**Subject / Title:**  Discrimination and Harassment Prevention

**Purpose:**
DaimlerChrysler is committed to providing a workplace that is free of discrimination and harassment. The company expects that all persons in the workplace will be treated with dignity, their rights respected and their privacy maintained.

**It is a Policy of DaimlerChrysler Corporation:**

FREEDOM FROM DISCRIMINATION - DaimlerChrysler's policy is to provide equal employment opportunity without regard to race, color, gender, sexual orientation, age, veteran status, marital status, religion, national origin, disability unrelated to the ability to perform a job, or any other basis protected by law. This applies to all aspects of employment, including hiring, job assignment, training, career development, promotion and compensation.

FREEDOM FROM HARASSMENT - DaimlerChrysler does not tolerate harassment of any kind in the workplace. "Workplace" includes any DaimlerChrysler facility as well as business settings such as Company travel, meetings with customers, suppliers, and members of the public and business-related social events.

Whether conduct constitutes harassment may depend on whether it is viewed as offensive by the individual who is the subject of the conduct. This means that an employee may violate this policy without intending to harass.

Examples of conduct that may constitute harassment include unwelcome physical conduct; threats or intimidation; displaying offensive items or pictures; interfering with or sabotaging someone's work or personal or assigned property; and making jokes or inappropriate comments about a person's age, race, gender, religion, ethnicity, sexual orientation, marital status or disability. One act or a series of acts may constitute harassment.

This policy specifically prohibits sexual harassment. "Sexual harassment" means unwelcome physical or verbal conduct that is either of a sexual nature, or directed to a person because of that person's gender, when:

- Submission to, or rejection of, such conduct is used as a factor in making decisions affecting
   hiring, evaluation, promotion, selection, or other aspects of employment; or

- Such conduct creates an intimidating, hostile or offensive work environment.

Examples include unwanted sexual advances; sexual or gender-based commentary about an individual's body; touching; obscene comments or gestures; display of sexually suggestive objects or pictures; and questions or statements about sexual conduct or sexual orientation or preferences.

A92

D 000001

REPORTING A COMPLAINT - Anyone who believes that he or she has been subjected to or witnessed activity or behavior in the workplace that violates this policy should make DaimlerChrysler aware of such conduct. Notification should be made to:

- DaimlerChrysler Corporation's Diversity and Work/Life Office (1-866-374-1208);

- The Local Human Resources Office; or

- Management.

Employees covered by a collective bargaining agreement are also encouraged to use mechanisms provided under the terms and conditions of the applicable agreement.

COMPLAINT INVESTIGATION - DaimlerChrysler's policy is to take discrimination and harassment complaints seriously. DaimlerChrysler will investigate all discrimination and harassment complaints in a timely and impartial manner. Moreover, DaimlerChrysler will use its best efforts to:

- Protect the privacy and reputation of all individuals concerned;

- Maintain confidentiality throughout the investigation process and share information only on a
     need-to-know basis; and

- Assure that persons against whom allegations are made are treated fairly.

RETALIATION - Retaliation against a person who in good faith reports, or participates in the investigation of, a discrimination or harassment allegation is strictly prohibited.

DISCIPLINE - Employees who violate this policy will be disciplined up to and including discharge.

**Definitions:**

**Scope:**

This policy applies regardless of whether local laws prohibit discrimination and harassment.

DaimlerChrysler reserves the right to modify, revoke, suspend, or terminate this policy at any time.

This policy is not intended to create a contract between DaimlerChrysler and any of its employees.

**Sponsored By:**          Diversity and Work/Life Department

**Related Policy**

A93

D 000002

**Statements:**

DaimlerChrysler
Corporation Integrity
Code

DaimlerChrysler
Corporation Standards
of Conduct

*DaimlerChrysler
Corporation*

📄 3-4
Employee
Discipline

This Policy supersedes
any other previously
published policy on this
specific subject
including, but not
limited to, the following:

DaimlerChrysler
Corporation Policy 3-6,
Sexual Harassment,

dated August
18, 1987

**Forms or
Attachments:
Delegation of
Responsibilities
:**

Diversity and Work/Life
is delegated
administrative
responsibility for
implementation of this
Policy.  Diversity and
Work/Life is thereby
authorized to
recommend
appropriate action.  As
such, Diversity and
Work/Life must be
apprised of all reported
occurrences of
discrimination or
harassment.

**Approval Date:**        08/18/87        **A94**

D 000003



A95

D 000004

# STANDARDS OF CONDUCT

TO ALL DAIMLERCHRYSLER EMPLOYEES:

WE SET THE HIGHEST BUSINESS AND ETHICAL STANDARDS FOR OURSELVES AND OUR OPERATIONS AT CHRYSLER. OUR CONDUCT MUST REFLECT OUR COMMITMENT AND RESPONSIBILITY TO OUR CUSTOMERS, OUR EMPLOYEES, OUR DEALERS, OUR SUPPLIERS, OUR SHAREHOLDERS, OUR GOVERNMENTS, AND THE COMMUNITIES IN WHICH WE OPERATE.

WE RELY ON EVERY EMPLOYEE TO MAINTAIN A COOPERATIVE RELATIONSHIP WITH HIS OR HER FELLOW WORKERS. THIS RELATIONSHIP REQUIRES RESPECT FOR EACH OTHER AND RECOGNITION THAT EVERY EMPLOYEE IS A VALUABLE CONTRIBUTOR TO THE OVERALL SUCCESS OF OUR ORGANIZATION.

AT CHRYSLER. WE RESPECT AND ENCOURAGE CREATIVITY, INNOVATION, AND INDIVIDUALISM. BUT. IN ORDER TO MAINTAIN A SAFE, WELL RUN ORGANIZATION, CERTAIN BASIS POLICIES AND PRACTICES MUST BE ESTABLISHED, CLEARLY DEFINED AND FOLLOWED. THESE POLICIES AND PRACTICES ARE NECESSARY TO ENSURE THAT YOU HAVE A CLEAR UNDERSTANDING OF WHAT IS EXPECTED OF YOU AT CHRYSLER.

THE STANDARDS OF CONDUCT APPLY TO EVERYONE AT CHRYSLER. IF ANY STANDARDS IS VIOLATED, CHRYSLER WILL TAKE DISCIPLINARY ACTION-UP TO AND INCLUDING DISCHARGE.

ANY OF THE FOLLOWING ACTIONS DURING YOUR EMPLOYMENT WITH CHRYSLER WOULD VIOLATE THE STANDARDS OF CONDUCT.:

1. FALSIFICATION OF EMPLOYMENT APPLICATION OR OTHER CORPORATION RECORDS, OR THE CONSCIOUS USE OF FALSIFIED DOCUMENTS.

2. FAILURE TO RING IN YOUR OWN TIME CARD, RINGING ANOTHER EMPLOYEE'S TIME CARD, OR PERMITTING ANOTHER TO RING YOUR TIME CARE

3. UNEXCUSED ABSENCE OR TARDINESS FROM PLANT OR WORK STATION.

4. LEAVING YOUR WORK STATION, OFFICE OR PLANT DURING WORKING HOURS OR FAILING TO RETURN TO WORK AFTER LUNCH OR RELIEF WITHOUT PERMISSION.

5 FAILURE TO EXERT NORMAL EFFORT ON THE JOB, WASTING TIME, LOITERING, LOAFING, OR SLEEPING ON THE JOB.

6. FAILURE OR REFUSAL TO FOLLOW THE INSTRUCTIONS OF SUPERVISION.

7. LEADING, INSTIGATING, SUPPORTING OR TAKING PART IN ANY STRIKE, WORK STOPPAGE, OR PICKETING IN VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT, OR IN ANY SLOWDOWN OR OTHER IMPROPER INTERFERENCE WITH OR RESTRICTION OF OPERATIONS.

8. HARASSING ANY PERSON WHETHER OR NOT A CHRYSLER EMPLOYEE, BASED ON THAT PERSON'S SEX, RACE, RELIGION, AGE, HANDICAP, NATIONAL ORIGIN OR MEMBERSHIP IN ANOTHER PROTECTED CLASS

9. PRODUCTION OF EXCESSIVE SCRAP OR INFERIOR WORK.

10. NEGLIGENT OR DELIBERATE DAMAGE OR DESTRUCTION OF PROPERTY OWNED OR HELD BY THE CORPORATION OR ANY EMPLOYEE, OR THE ABUSE OR MISUSE OR UNAUTHORIZED USE OF ANY SUCH PROPERTY.

**A96**

11 IMMORAL OR INDECENT CONDUCT.

12. USE, POSSESSION, DISTRIBUTION, SALE OR OFFERING FOR SALE OR BEING UNDER THE INFLUENCE OF ALCOHOL OR DRUGS (OTHER THAN USE OR POSSESSION OF NARCOTICS IN MEDICINES PRESCRIBED BY THE EMPLOYEE'S PHYSICIAN), ON CORPORATION PROPERTY, OR WHILE OPERATING A CORPORATION OWNED MOTOR VEHICLE, OR WHILE ENGAGED IN CORPORATE BUSINESS.

13. UNACCEPTABLE CONDUCT DUE TO ALCOHOL OR DRUG ABUSE (OTHER THAN USE OF POSSESSION OF NARCOTICS IN MEDICINES PRESCRIBED BY THE EMPLOYEE'S PHYSICIAN), OR CONDUCT THAT INDICATES A POTENTIAL FOR IMPAIRED OR UNSAFE JOB PERFORMANCE DUE TO DRUG OR ALCOHOL ABUSE.

D 000444

14. THREATENING, INTIMIDATING, COERCING OR USING ABUSIVE LANGUAGE TO OTHERS.

15. FIGHTING, "HORSEPLAY" OR OTHER DISORDERLY, DISRUPTIVE OR UNRULY CONDUCT.

16. CREATING OR CONTRIBUTING TO UNSAFE OR UNSANITARY CONDITIONS.

17. SMOKING IN UNAUTHORIZED AREAS.

18. UNAUTHORIZED SOLICITATION, EXCEPT SUCH SOLICITATION DURING EMPLOYEES' NON-WORKING TIME AS IS PROTECTED BY THE NATIONAL LABOR RELATIONS ACT.

19. UNAUTHORIZED DISTRIBUTION OF LITERATURE EXCEPT SUCH DISTRIBUTION DURING NON-WORKING TIME IN NON-WORKING AREAS AS IS PROTECTED BY THE NATIONAL LABOR RELATIONS ACT

20. POSTING, REMOVING OR IN ANY MANNER DEFACING NOTICES OR OTHER SIGNS ON BULLETIN BOARDS WITHOUT SPECIFIC AUTHORIZATION OF MANAGEMENT.

21. UNAUTHORIZED USE, POSSESSION, REMOVAL OF OR ACCESS TO CORPORATION RECORDS OF ANY TYPE OR FORM.

22. ENGAGING IN, PARTICIPATING IN, AIDING OR APPROVING CONDUCT CONSTITUTING OR APPEARING TO CONSTITUTE WITH THE INTEREST OF THE CORPORATION.

23 ACTUAL OR ATTEMPTED THEFT, FRAUD, OR MISAPPROPRIATION OF PROPERTY, INCLUDING THE AIDING OR ABETTING OF THE SAME.

24. GAMBLING, CONDUCTING GAMES OF CHANCE, OR POSSESSING GAMBLING EQUIPMENT ON CORPORATION PREMISES.

25. POSSESSION OF WEAPONS FIREARMS, KNIVES OR OTHER WEAPONS WHILE ON COMPANY PROPERTY.

26. PERMITTING IMPROPER USE OF YOUR BADGE, IDENTIFICATION CARD, OR OTHER CORPORATION PASSES, PAPERS, OR PROPERTIES WHICH MAY BE ENTRUSTED TO YOU.

27. PERMITTING IMPROPER USE OF YOUR BADGE, IDENTIFICATION CARD, OR OTHER CORPORATION PASSES, PAPERS, OR PROPERTIES WHICH MAY BE ENTRUSTED TO YOU.

28. FAILURE OR REFUSAL TO PERMIT INSPECTION OF ITEMS SUCH AS LOCKERS, VEHICLES, PACKAGES, LUNCH BOXES OR HAND BAGS WHEN REQUESTED TO DO SO

29. FAILURE OR REFUSAL TO WORK OVERTIME AS INSTRUCTED BY SUPERVISION.

30. REMOVING, ALTERING OR MAKING INOPERATIVE ANY EQUIPMENT OR DEVICE DESIGNED TO PROTECT EMPLOYEES FROM INJURY AND/OR ILLNESS.

31. CONDUCTING A CHECK CASING SERVICE OR OTHER BUSINESS ENTERPRISE OR ENGAGING IN ANY ILLEGAL ACTS SUCH AS "LOAN SHARKING" WHILE ON CORPORATE PREMISES.

IMPORTANT NOTE: THE CORPORATION, THROUGH ITS HUMAN RESOURCES DEPARTMENT, RESERVES THE RIGHT TO MODIFY, REVOKE, SUSPEND OR TERMINATE THE STANDARDS OF CONDUCT, OR ANY PORTION THEREOF, AT ANY TIME, AT ITS SOLE DISCRETION. THESE STANDARDS OF CONDUCT SHALL NOT, UNDER ANY CIRCUMSTANCES BE DEEMED TO BE PART OF ANY EMPLOYMENT CONTRACT OR AGREEMENT WITH ANY EMPLOYEE.

A97

D 000445

NEWARK PDC
EMPLOYEE INDOCTRINATION ORIENTATION
GUIDELINES MANUAL SIGNOFF

(PLEASE INITIAL EACH ITEM THAT YOU RECEIVED TRAINING ON THE FOLLOWING)

**INTRODUCTION**
- Objective
- PDC Requirements
- PDC Facts
- Organization Charts
- Employee Listing
- Committee(s)

**IMPORTANT INFORMATION**
- Standards of Conduct
- Minimum Dress Code
- Attendance Policy
- EAP
- Absentee Emergency Call

**OPERATIONS REVIEW**
- Warehouse Layout
- Areas & Their Parts
- Glossary of Terms

**QUALITY**
- Quality Policy
- PQI Partnership
- Who is your Customer?
- ISO 9002

**SAFETY & HEALTH**
- Training
- Policy Statement
- Key S&H Elements
- S&H Committee
- Organization Chart(s)

**Safety & Health (Cont)**
- Guide to Safe Conduct
- PDC Cleanliness
- Safety Awareness
- Safety Induction Policy
- 5 Min Supv. Safety Talk
- Lockout
- Eye Protect Sfty Glasses
- Personal Protect Equip
- Powered Industrial Equip.
- Injury Accident Procedure
- Hazard Com. Prog.
- Housekeeping & Safety
- Sfty Aware/Recognition
- Disaster Prepare Plan
- Banding Equipment
- Use Of PIV & Bicyles
- Use of Wooden Ladders
- Cage Pulling
- PIV/Lights/Bells
- Confined Space Policy
- Asbestos Handling
- Maintenance Shop Rule
- Dock Plates
- Welding
- Jitney/Riderman
- Load/Unload Procedure
- Damaged Cages

**Safety & Health (Cont)**
- Smoking Policy
- Damaged Rack/Birs Ends
- Heat Stress Program
- First Resp. Awareness
- First Resp. Operational
- Personal Radio Usage
- Respiratory Protection Policy
- Access To Employee Exposure
- Microwave Oven Usage
- Carousel Class II Lasers
- Ergonomics
- Zero teams
- Specific Responsibilities
- Disaster Guidelines
- Disaster Map
- Healthy Life

**WHAT'S IN IT FOR ME**
- What's In It For Me

CIRCLE ONE:    NEW    TEMPORARY    TRANSFERRED    (REGULAR)

D 000425

EMPLOYEE

_Dino Petrocelli_
EMPLOYEE NAME (PRINT)

_(signature)_
EMPLOYEE SIGNATURE

_445956_
SOCIAL SECURITY NUMBER

TRAINER(S)

_Carl Buokonen_          _(signature)_          _12/13/01_
NAME (PRINT)          SIGNATURE          DATE

_____          _____          _____
NAME (PRINT)          SIGNATURE          DATE

_____          _____          _____
NAME (PRINT)          SIGNATURE          DATE

_____          _____          _____
NAME (PRINT)          SIGNATURE          DATE

A98

A:SIGNOFF

# EMPLOYEE DISCIPLINE ANALYSIS

**Employee:** Dino Petrucelli (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)

**Seniority:** May 19,1997

**Location:** 3130 (Newark PDC)

## Discipline History

| Date | Infraction | Penalty Served |
|---|---|---|
| Note: Employee Petrucelli was sent a letter on 5/22/02 asking him to report back to work on 5/28/02 for re-instatement. Petrucelli failed to report back to work and another letter was sent to him on 5/30/02 askig him to report by 6/6/02. He failed to report to work at that time, therefore, a letter of termination was sent to him on 7/7/02 based on failure to report back to work. | | |
| 1/4/02 | Rule #5 | Discharge |
| 11/23/01 | Rule #5 | Supervisor Warning |
| 8/17/01 | Rule #5 | Supervisor Warning |
| 5/30/01 | Rules #4 & 5 | 30 day DLO |
| 3/1/01 | Rules #4 & 5 | 10 day DLO |
| 6/8 & 6/9/00 | Rules # 4,5,6 & 14 | 10 day DLO |
| 5/26/00 | Rules # 4,5 & 6 | Supervisor Report |
| 4/30/99 | Rules # 6,10,14,15 & 29 | 5 day DLO |
| 4/7/9 | Rules #5 & 6 | Supervisor Report |

**A99**

D 000046

SUPERVISORS REPORT

DINO PETRECELLI                          SS # 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          NEWARK PDC

ON WEDNESDAY APRIL 7,1999 AT APPROXIMATELY 3:30 PM , DINO WENT TO PERSONNEL TO
REQUEST A PASS TO THE MEDICAL DEPARTMENT TO BE CHECKED FOR A PREVIOUS INJURY.
HE LEFT THE BUILDING AT 3:43 PM TO GO TO MEDICAL . HE DID NOT ARRIVE AT MEDICAL UNTIL
4:15 PM APPROXIMATELY 32 MINUTES LATER. THIS WAS CONFIRMED BY THE TIME ON HIS MEDICAL
PASS AND THE MEDICAL DEPARTMENT. HE WAS DISCHARGED FROM MEDICAL TO RETURN TO
WORK AT 4:30 PM.  AT APPROXIMATELY 4:35 PM DINO WAS SEEN LEAVING MALIN'S MARKET
BEFORE RETURNING TO WORK BY A MEMBER OF MANAGEMENT.

DINO FAILED TO FOLLOW THE DAIMLERCHRYSLER STANDARD OF CONDUCT # 5 WHICH
STATES FAILURE TO EXERT NORMAL EFFORT ON THE JOB, WASTING TIME, LOITERING, LOAFING
OR SLEEPING ON THE JOB. HE ALSO FAILED TO FOLLOW CODE # 6 WHICH STATES FAILURE TO
FOLLOW THE INSTRUCTIONS OF THE SUPERVISOR.

YOU ARE CAUTIONED THAT ANY SIMILAR OCCURANCE COULD LEAD TO PROGRESSIVE DISCIPLINE
UP TO AND INCLUDING TERMINATION.

_Refused to Sign_                                      _Gwin_ 4-14-99
DINO PETRECELLI                                      STEPHEN J. GWIN

**A100**

D 000047

**CHRYSLER CORPORATION**

### NOTICE OF SUSPENSION, DISCIPLINARY LAYOFF OR DISCHARGE

To Union Representative _Gary Meinholdt_          Date _4-30-99_

Employee _Dino Petrucelli_          Clock No _1527_

☐ Suspension
☐ Disciplinary Layoff      } From _4/30/99_   a.m.  p.m. on _____ 19___
☐ Discharge                  To _5/5/99_   a.m.  p.m. on _____ 19___

REASON: _Standards of conduct # 6 # 10_
_#14  #15  #29_

*You are advised that you have the right to request union representation.*

Signed _____        Signed _Stephen Owen_
EMPLOYEE (INDICATES RECEIPT ONLY)                MANAGEMENT REPRESENTATIVE

84-753-9804 (Rev. 6/91)        1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

A101

D 000048

SUPERVISOR'S REPORT

EMPLOYEE:    DINO PETRUCELLI
BADGE NO.:    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                               APRIL 30, 1999

SUPERVISOR: TAMMY BOORY

AT APPROXIMATELY 5:00 P.M., I WAS STANDING AT THE COMPUTER IN FRONT OF THE CONTROL CENTER. I HEARD EMPLOYEE DINO PETRUCELLI IN THE A-ROUTE USING LOUD ABUSIVE LANGUAGE. SHORTLY AFTERWARDS, I WATCHED HIM DELIBERATELY DRIVE HIS PIV INTO A CAGE. THIS ACTION CAUSED SEVERAL CAGES TO BE MOVED FROM THEIR LOCATION.

EMPLOYEE DINO PETRUCELLI CONTINUED USING LOUD ABUSIVE LANGUAGE. I OBSERVED HIM THROWING PARTS INTO THE TOTES. SHORTLY AFTERWARDS, SUPERVISOR STEPHEN GWIN APPROACHED EMPLOYEE PETRUCELLI IN THE ROUTE. THE EMPLOYEE CONTINUED SCREAMING AND BEHAVED IN AN IRRATIONAL MANNER. SUPERVISOR GWIN RESPONDED TO THE SITUATION IN A CALM DEMEANOR AND RETURNED TO THE CONTROL CENTER TO CALL FOR THE COMMITTEEMAN. EMPLOYEE PETRUCELLI THEN PROCEEDED TOWARDS THE CONTROL CENTER. DURING THIS TIME, HE STOPPED TO TALK TO ANOTHER EMPLOYEE AND BEHAVED AS THOUGH THE ENTIRE SITUATION DID NOT OCCUR.

 I FOUND IT NECESSARY TO INSTRUCT THE EMPLOYEE WHO WAS CONSOLIDATING THE A-ROUTE (ROB GILL) TO PROCEED WITH ME TO THE ROUTE IN ORDER TO PERFORM A QUALITY CHECK OF THE TOTES. SEVERAL CAGES WERE SCATTERED ABOUT AND THERE WERE BOXES THROWN IN THE MIDDLE OF THE AISLE. EMPLOYEE ROB GILL EXPRESSED HIS CONCERN FOR THE SITUATION AND THE IRRATIONAL BEHAVIOR EXHIBITED BY EMPLOYEE DINO PETRUCELLI.

D 000049

SUPERVISORS REPORT

DINO PETRUCELLI # 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                                    APRIL 30, 1999

SUPERVISOR: STEPHEN GWIN

    AT APPROXIMATELY 5:00 PM I WAS STANDING NEAR THE TOP OF THE "A" ROUTE
CONSOLIDATION AREA WHEN I HEARD SOMEONE USING LOUD ABUSIVE LANGUAGE. I
LOOKED DOWN THE "A" ROUTE AND SAW DINO PETRUCELLI ON HIS PIV. DINO STRUCK A CAGE
WITH HIS PIV WHICH CAUSED A CHAIN REACTION UNTIL THE LAST CAGE HIT A SHEETMETAL
FLAT FORWARD ALMOST INTO ME. THIS DEMONSTRATES THE FORCE IN WHICH DINO STRUCK
THE CAGES. AFTER DINO CAME OFF HIS PIV HE WAS STILL USING ABUSIVE LANGUAGE AND
BEGAN THROWING PARTS INTO TOTES WITH CONSIDERABLE FORCE. TWO (2) OF THE PARTS
WERE METAL AND OF SUBSTANCIAL SIZE, THE OTHER PART WAS PLASTIC AND TOTALLY
MISSED THE TOTE. AT THIS POINT HE THROW TWO (2) ONE HUNDRED BOXES OFF HIS BUG AND
ONTO THE FLOOR. WHEN HE LOOKED UP, HE SAW ME STANDING THERE AND CONTINUED TO
BEHAVE IN AN IRRATIONAL MANNER. TO ME THIS CONDUCT INDICATES A POTENTIAL
FOR IMPAIRED OR UNSAFE JOB PERFORMANCE. I INSTRUCTED DINO TO FOLLOW ME OFF THE
WAREHOUSE FLOOR INTO THE OFFICES AND HE REFUSED. WHILE STILL USING ABUSIVE
LANGUAGE HE INSISTED ON SEEING HIS COMMITTEEMAN. I TOLD DINO I WOULD CALL FOR
HIM WHILE WE WENT INTO THE OFFICES. AT THIS TIME I INSTRUCTED HIM TO FOLLOW MY
INSTRUCTIONS AND COME INTO THE OFFICE AND HE REFUSED AGAIN. I WENT TO THE
CONTROL CENTER AND CALLED HIS COMMITTEEMAN. AT THIS TIME, SUPERVISOR
TAMMY BOORY STATED SHE HAD WITNESSED THE ENTIRE SITUATION. THERE WERE ALSO
SEVERAL EMPLOYEES WHO WERE IN THE AREA AT THIS TIME.

    I TALKED WITH DINO AND GARY IN MY OFFICE AND DINO WAS STILL UPSET AND USING
ABUSIVE LANGUAGE. AT THIS TIME I INSTRUCTED GARY THAT I WAS SUSPENDING DINO
UPON FURTHER INVESTIGATION.

    DINO FAILED TO FOLLOW SEVERAL STANDARDS OF CONDUCT.

# 6  FAILURE TO FOLLOW THE INSTRUCTIONS OF SUPERVISON
# 10 NEGLIGENT OR DELIBERATE DAMAGE OR DESTRUCTION OF PROPERTY OWNED OR HELD
    BY THE CORPORATION OR ANY EMPLOYEE, OR THE ABUSE OR MISUSE OR THE UNAUTHORIZED
    USE OF ANY SUCH PROPERTY.
# 14 THREATING, IMTIMIDATING, COERCING OR USING ABUSIVE LANGUAGE TO OTHERS.
# 15 FIGHTING, "HORSEPLAY" OR OTHER DISORDERLY, DISRUPTIVE OR UNRULY CONDUCT.
# 29 FAILURE TO FOLLOW SAFETY PROCEDURES, OR TO WEAR OR USE AS INSTRUCTED REQUIRED
    SAFETY OR HEALTH PROTECTIVE EQUIPMENT.

    ALSO HE FAILED TO FOLLOW THE PDC SAFETY RULES FOR POWER INDUSTRIAL VECHICLES.
# 9  RACING, HORSEPLAY, OR RECKLESS DRIVING WILL NOT BE TOLERATED.
# 22 BE EXCEPTIONALLY CAUTIOUS AROUND EMPLOYEES WORKING ON MACHINERY AND
    IN CROWDED AREAS.

**A103**

D 000050

SUPERVISORS REPORT

May 31, 2000

Employee : Dino Petrucelli    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


On May 26, 2000 at 12:05 A.M., Petrucelli did not answer a page by myself for an assignment of work. After a tour of the facility on the supervisor PIV by Glenn Matthews and me, neither of us could locate Mr. Petrucelli. At 12:50 A.M. Petrucelli was located by myself at the time clock prepared to clock out. Mr. Petrucelli failure to answer my page and failure to perform normal effort on the job are violations of the following Standards of Conduct:

# 4 – Leaving your work station , office or plant during working hours or failing to return to work after lunch or relief without permission .

# 5 – Failure to exert normal effort on the job, wasting time, loitering, loafing, or sleeping on the job.

# 6 – Failure or refusal to follow instructions of supervisor.

You are being given a Supervisors Report based on these violations of the company Standard of Conduct. You are being notified that future infractions of this nature will result in further disciplinary action up to and including discharge.

The employee was shown this report.


Employee: *Refused To Sign*

Supervisor: *W M Matth*    *6-1-00*

Committeeperson: *[signature]* *6/1/00*


**A104**

D 000051

# Supervisors Report
## 10 Day DLO
### 6-27-2000

Employee: Dino Petrucelli                    Badge #: 1527

This Supervisors report is for two separate incidents that occurred on 6-8 and 6-9-2000. On 6-8 you were put on notice by Supervisor G. Matthews for your behavior stemming from an incident in which you were asking to go home early and were denied. Your behavior was also witnessed by Supervisors R. Pisani and D. Petrous. This behavior constitutes violations of the Standards of Conduct #6 (Failure or refusal to follow the instructions of supervision) and #14 (Threatening, intimidation, coercing, harassing, retaliating, or using abusive language to others).

On 6-9-2000 you were observed by Supervisor G. Matthews outside the building without permission. This constitutes a violation of the Standards of Conduct #4 (Leaving your workstation, office or plant during working hours without permission or failing to return to work after lunch or relief without permission) and #5 (Failure to exert normal effort on the job, wasting time, loitering, loafing, or sleeping on the job).

Management will not tolerate this type of behavior. For your violations of these standards you are being issued a 10 day DLO. You are also being notified that any future violations of these standards will result in discharge.


Employee _____    Supervisor _____

Committeeman _____

**A105**

D 000052

## DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _GARY MEINHART_     Date _6-22-2001_

Employee _DINA PERUCELLI_     Clock No. _1527_

☐ Suspension
☒ Disciplinary Layoff
☐ Discharge

From _12:00_   a.m./p.m. on _6-13_ _2001_
To _3:30_   a.m./p.m. on _6-27_ _2001_

REASON: _10 DAY D.L.O. VIOLATIONS OF STANDARDS OF CONDUCT_
_#6 AND #14 (C-8-00) AND STANDARDS OF CONDUCT #4 AND #5_
_(C-9-00). THIS D.L.O. CONTAINS 2 SEPARATE INCIDENTS._

Received _____ a.m./p.m. _____ DATE

Signed _____ EMPLOYEE (INDICATES RECEIPT ONLY)    Signed _____ UNION REPRESENTATIVE / MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)    1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

---

## DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _Gary Meinhart_     Date _6-12-00_

Employee _Dina Perucelli_     Clock No. _21401_

☒ Suspension
☐ Disciplinary Layoff
☐ Discharge

From _1:30_   a.m./p.m. on _6-12-00_ 19___
To _____ a.m./p.m. on _____ 19___

REASON: _Violation of Standards of Conduct_
_#14_

Received _____ a.m./p.m. _____ DATE

Signed _Kolundto Olan_ EMPLOYEE (INDICATES RECEIPT ONLY)    Signed _____ UNION REPRESENTATIVE / MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)    1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

A106

D 000053

# Supervisors Report
## 10 Day DLO
### 03-07-2000

Employee: Dino Petrucelli                    Badge #: 1527

On March 1, 2001 at approximately 11:35pm you were put on notice by supervisor D. Petrous for not sorting in the Z route properly and dumping the parts all over the floor. On March 2, 2001 you were again put on notice by supervisor G. Simpers for being out of your work area at approximately 9:40pm.

These incidents constitute violations of the Standards of Conduct #4 (Leaving your workstation, office or plant during working hours without permission or failing to return to work after lunch or relief without permission) and #5 (Failure to exert normal effort on the job, wasting time, loitering, loafing, or sleeping on the job).

Management will not tolerate this type of behavior. For your violations of these standards you are being issued a 10 day DLO. You are also being notified that any future violations of these standards will result in discharge.


Employee _____        Supervisor _____

Committeeman _____

**A107**

D 000054

# DAIMLERCHRYSLER

## Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative GARY MEINHAUDT                    Date 3-7-2001

Employee DINO PETRUCELLI                    Clock No. 1527

☐ Suspension
☒ Disciplinary Layoff
☐ Discharge

From 3:30 a.m. / p.m. on 3-7 2001
To 3:30 a.m. / p.m. on 3-21 2001

REASON: 10 DAY DLO FOR VIOLATIONS OF STANDARDS
OF CONDUCT #4 AND #5

Received ____ a.m.
         ____ p.m.       DATE ____

Signed _Received In Sec_                Signed _A.M Moses_
EMPLOYEE (INDICATES RECEIPT ONLY)           MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)      1. White-Employee  2. Canary-Union Rep.  3. Pink-Labor Relations  4. Goldenrod-Department

A108

D 000055

# DAIMLERCHRYSLER

DaimlerChrysler
Motors Corporation
Newark Parts Distribution
Center 3130

June 14, 2001

Mr. Dino Petrucelli
23 Whiteheaven Drive
New Castle, DE  19720

Dear Mr. Petrucelli,

As a result of your violations of Standards of Conduct #4 and #5, and violation of Local
PDC Break Policy, you have been issued a 30 Day DLO, effective 5/31/01.  Please report
to work on 7/11/01 at 3:30pm to be re-instated.

Dawn M. Reese
Office Administrator
DaimlerChrysler
Newark PDC

**A109**

D 000056

DaimlerChrysler Motors Corporation
1 Mopar Drive  CIMS 102-00-00
Newark DE USA  19713-1302
Phone 302 453 5635

A Company of the DaimlerChrysler Group

## DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _JOHN THORNHILL_    Date _6-8-04_

Employee _Dila PERUCELLI_    Clock No. _____

☐ Suspension
☒ Disciplinary Layoff   From _3:30_   a.m./p.m. on _5/31_ _19_24
☐ Discharge   To _3:30_   a.m./p.m. on _7/11_ _20_04

REASON: _Indefinite Suspension changed to_
_A 30 day DLO._

Received _____ a.m./p.m. _____ DATE _____

Signed _____   Signed _____
EMPLOYEE (INDICATES RECEIPT ONLY)    UNION REPRESENTATIVE
   MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)    1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

---

## DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _PAT PALMER_    Date _5-31-2004_

Employee _Dila PERUCELLI_    Clock No. _1527_

☒ Suspension
☐ Disciplinary Layoff   From _3:30_   a.m./p.m. on _5/31_ _19_2001
☐ Discharge   To _____   a.m./p.m. on _____ _19_____

REASON: _Indefinite Suspension for violations of_
_Standards of Conduct #4 and #5, and_
_violation local DLO Break Policy._

Received _____ a.m./p.m. _____ DATE _____

Signed _____   Signed _____
EMPLOYEE (INDICATES RECEIPT ONLY)    UNION REPRESENTATIVE
   MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)    1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

A110

D 000057

# DAIMLERCHRYSLER

DaimlerChrysler
Motors Corporation
Newark Parts
Distribution Center 3130

September 24, 2001

Mr. Dino Petrucelli
23 Whiteheaven Dr.
New Castle, DE  19720

Dear Mr. Petrucelli:

On September 19, 2001, you were suspended for violation of Standard of Conduct #23 – attempted theft and #21 - unauthorized possession of company property. This is to notify you that your suspension has been converted to a discharge effective September 24, 2001, based on your Standard of Conduct violations and your total past disciplinary record. Your notice of discharge is attached and you are hereby advised that you have the right to union representation.

Sincerely,

*Dawn M. Reese*

Dawn M. Reese
Personnel Dept.
Newark PDC

**A111**

D 000058

DaimlerChrysler Motors Corporation
1 Mopar Drive   CIMS 102-00-00
Newark DE USA  19713-1302
Phone 302.453.5635

DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative ___Kevin Holawiak___ Date __9/19/01__

Employee ___Dino Petrucelli___ Clock No. __5956__

☒ Suspension
☐ Disciplinary Layoff    From __3:15__ a.m. / (p.m) on __9/19__ __2001__
☐ Discharge              To ___ a.m. / p.m. on ___ __2001__

REASON: ___Violation of Standard of Conduct #23 -___
___"attempted theft, possesision of company___
___property unauthorized"___

Received ___ a.m. / p.m.

Signed __Employee refused to sign__

Signed ___(signature)___ UNION REPRESENTATIVE

__Offered to Employee__ MANAGEMENT REPRESENTATIVE
__-K.H.R.1TD-__

EMPLOYEE (INDICATES RECEIPT ONLY)

84-753-9804 (REV. 12/98)    1. White-Employee    2. Canary-Union Rep.    3. Pink-Labor Relations    4. Goldenrod-Department

---

DAIMLERCHRYSLER

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative ___Patrick Palmer___ Date __9/24/01__

Employee ___Dino Petrucelli___ Clock No. __5956__

☐ Suspension
☐ Disciplinary Layoff    From __3:15pm__ a.m. / (p.m) on __9/24__ __2001__
☒ Discharge              To ___ a.m. / p.m. on ___ 19 ___

REASON: ___Violation of Standard of Conduct #23 -___
___"attempted theft" + #21 - unauthorized possession___
___of company property" plus past poor record___

*You are advised that you have the right to request union representation.*

Signed __Patrick Palmer__ __EMPLOYEE SUSPENDED.__

Signed ___(signature)___ MANAGEMENT REPRESENTATIVE

EMPLOYEE (INDICATES RECEIPT ONLY)

84-753-9804 (REV. 12/98)    1. White-Employee    2. Canary-Union Rep.    3. Pink-Labor Relations    4. Goldenrod-Department

A112

D 000059

# Statement Of Fact

On Wednesday September 19th, 2001 at approximately 1:00PM I Carl Ruohonen Operations support Manager responsible for security at the DCX Newark PDC was approached by contract security guard Wackenhut site supervisor Chris Ferraro and asked to physically observe a canvas duffel bag on the exterior of our building. The bag was concealed on the ground behind a 55 gallon trash container next to our pedestrian emergency/handicap exterior door. Upon investigation of the contents of this dark blue shoulder bag we uncovered "8" DaimlerChrysler individually wrapped "polishing cloths" (part number #04318012) concealed in this enclosed and zipped bag indicating a possible theft. Searching further as to the contents several documents such as payroll stubs and PPA forms were present indicating the bag most likely belonged to hourly employee Dino Petrucelli. Said bag was secured in the PDC Manager's conference room. I immediately verified that the part number was physically stocked at the Newark PDC which it was. The part had a list price of $3.20 and a net price of $1.90 and we had 186 pieces in our ROH. I than physically counted the part and found 175 pieces in our inventory @ approximately 2:10PM.

At approximately 2:25PM employee Dino Petrucelli entered my office which seemed highly unusual since he didn't start work until 3:30PM and normally arrived just minutes before the starting bell. Dino exclaimed, "he was looking for a bag". He immediately asked where lost items were returned to? I told him they usually were turned into Dawn Reese's office (the PDC Administrator). Before I had a chance to discuss the issue further he darted, in a hurry, off to Dawn's office. I later found out that he had apparently quizzed the PDC Manager Robert Mailloux and our contract security guard Wackenhut site supervisor Chris Ferraro on the same subject.

At approximately 2:55PM I summons Security Supervisor Ferraro, alternate committeeperson Keith Hoviak and employee Petrucelli to the PDC Manager's conference room. Upon entering the room employee Petrucelli immediately observed the blue duffel bag we had placed on the interior conference table. He exclaimed, "there is my bag" and proceeded to pick the bag up when I asked him to verify the contents. He opened the bag pulled a plastic butter container and before he had a chance to remove what we knew to be the "polishing cloths" he shouted, "this is bullshit'! "I don't even have a car". This immediate reaction seemed strange since he hadn't removed any of the cloths yet to ascertain and to verify exactly what the items even were before shouting again, "I don't even own a car". We questioned him as to the last time he saw the bag? He said, around lunch time. I asked Dino how the polishing cloths may have gotten into his bag and he said, "he didn't know". He stated, "he wouldn't steel from here, that he has never stolen anything from here". I told Dino that we found the bag in a concealed area outside by the emplyee door. He again said, "this is bullshit". I told Dino that it

didn't look good and the fact the DailerChrysler property was in his bag it appeared that he was attempting to steel the parts.

At that moment I temporarily left the room to discuss the incident with Mr. Mailloux the PDC Manager and Dawn Reese the PDC Administrator in charge of personnel. After careful review the collective decision was made to indefinitely suspend employee Petrucelli for violation of company "Standards of Conduct # 23 – Actual or attempted theft, fraud or misappropriation of property, including the aiding or abeting of the same". The disciplinary notice was read and given by myself (Carl Ruohonen) to Mr. Petrucelli in the presence of the acting committeeperson Keith Hoviak and Security Supervisor Chris Ferraro. An additional, approximately 35 to 45 minutes of union representation time was given to Mr. Petrucelli, Keith Hoviak and second shift committeeperson Pat Palmer to discuss the incident and subsequent disciplinary action. After the completion of the 3:30PM (second shift) startup meeting Mr. Petrucelli was escorted to and through the hourly employee turnstile. Note: Mr. Petrucelli refused to sign said disciplinary notice. Union representative Hoviak signed on his behalf. Dino did relinquish his DaimlerChrysler Badge and turnstile swipe card.

Post Script: Upon reviewing our electronic security access system generated report of all employee ingress/egress we have found several unusual and unauthorized exit and entrance violations. According to the programmatic print out Mr. Petrucelli exited and entered the building three separate times unauthorized between 1:04AM and 1:41AM.

Upon pontification of said data this writer offers the following scenario. Mr. Petrucelli picks and places the "8" polishing cloths in his duffel bag sometime during the evening. Petrucelli admits to Ferraro and Hoviak that he co-worker (girlfriend) Shannon Logan have a falling out during the work night. Logan leaves @ 12:34AM. Shannon remains in the parking lot since she drives Dino to work. Dino procedes to go in and out of the building over the next 11/2 hours. During this time he brings the duffel bag out and goes to Shannon's vehicle. Shannon and Dino continue to fight and she kicks him out of the car. Dino is upset but knows he has the stolen merchandise so he hides the bag behind the trash can. Dino and Shannon continue to argue. Dino finally leaves the building @ 2:00AM, however, forgets the bag because he is distracted by his personal relationship and doesn't remember about his bag until he awakes the next day at which time he hurries to the PDC to find his bag. When arrives he is alarmed to find the bag missing so he approaches management immediately. I appreciate this conjecture, however, this individual has a past record that lends itself readily to this possible scenario.

Carl Ruohonen
Operations Support Manager
Newark PDC 3130 CAR1
Date – September 21, 2001

stateoffactlogan.com

**A114**

D 000061

# Supervisors Report
## Indefinite Suspension
### 01-09-2002

Employee:  Dino Petrucelli                    Badge #:  1527

On 12/18/2001 and 1/4/2002 you were put on notice by supervisors G. Simpers and A. Jarman respectively for not performing your job as required.

These incidents constitute a violation of the DaimlerChrysler Standards of Conduct #5 which states "failure to exert normal effort on the job, wasting time, loitering, loafing, or sleeping on the job."

Management will not tolerate this type of behavior.  For violating this standard of conduct you are being issued an "indefinite suspension" pending further review of the incidents and your past disciplinary history.  You are also being notified that this or any future violations of the standards of conduct may result in further disciplinary action up to and including discharge.

Employee _Refuse to sign_

Committeeman _Justin Mclaughlin_

Supervisor _Gary R. Simpers_

**A115**

D 000062

DAIMLERCHRYSLER

Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _____          Date _1-11-02_

Employee _DINO PETRUCELLI_                               Clock No. _1537_

☒ Suspension        } { From _3:30_  a.m.  on _1-11_   19 _2002_
☐ Disciplinary Layoff }   {            p.m.
☐ Discharge          } { To _INDEFINITE_  a.m.  on ____   19 ____
                                       p.m.

REASON: _VIOLATION OF STANDARD OF CONDUCT #5_
_SEE ATTACHED SUPERVISORS REPORT._
_____

Received _____  a.m.
                          p.m.          DATE

Signed _____    Signed _____
        EMPLOYEE (INDICATES RECEIPT ONLY)        UNION REPRESENTATIVE
                                                 MANAGEMENT REPRESENTATIVE

84-753-9804 (REV. 12/98)    1. White-Employee  2. Canary-Union Rep.  3. Pink-Labor Relations  4. Goldenrod-Department

**A116**

D 000063

# DaimlerChrysler

### Notice of Suspension, Disciplinary Layoff or Discharge

To Union Representative _GARY STALLINGS_    Date _1-16-02_

Employee _DINO PETRUCELLI_    Clock No. _5956_

☐ Suspension    } From _12:00_   a.m.(p.m.) on _1-12_ 19 _2602_

☐ Disciplinary Layoff

☒ Discharge    To _____ a.m. p.m. on _____ 19 ___

REASON _VIOLATIONS OF STANDARDS OF CONDUCT #5 AND_
_____ _FALSE TIME CLOCK RECORDS_ _____

Received _____ a.m. p.m. _____ DATE _____

Signed _____ UNION REPRESENTATIVE _____

Signed _____ MANAGEMENT REPRESENTATIVE _____

EMPLOYEE INDICATES RECEIPT ONLY

84-753-9804 (REV. 12/98)    1. White-Employee   2. Canary-Union Rep.   3. Pink-Labor Relations   4. Goldenrod-Department

A117

D 000064

# DAIMLERCHRYSLER

DaimlerChrysler
Motors Corporation
Newark Parts
Distribution Center 3130

January 16, 2002

Mr. Dino Petrucelli
23 Whiteheaven Dr.
New Castle, DE  19720

Dear Mr. Petrucelli:

This letter is to inform you that your indefinite suspension has been modified to a discharge, effective January 11, 2002, for your actions on November 23, 2001 and January 4, 2002, at which time you violated DaimlerChrysler Standards of Conduct, specifically Rule # 5 "Failure to exert normal effort on the job, wasting time, loitering, loafing or sleeping on the job" and your past poor work record.

Your notice of discharge is attached and you are hereby advised that you have the right to union representation.

Sincerely,

Dawn M. Reese
Personnel Dept.
Newark PDC

A118

D 000065

A Company of the DaimlerChrysler Group

DaimlerChrysler Motors Corporation
1 Mopar Drive   CIMS 102-00-00
Newark DE USA  19713-1302
Phone 302.453.5635

DAIMLERCHRYSLER

JUNE 07, 2002

DINO G PETRUCELLI
23 WHITEHEAVEN DR
NEW CASTLE, DE 19720

Dear DINO G PETRUCELLI,

DCID/MSTR 445956

In our letter to you dated 05/30/2002, you were instructed to report to the plant Employment Office on or before 06/06/2002, unless on or before that date the Plant Employment Office received satisfactory evidence as to the reason for your absence from work.

Satisfactory evidence as to the reason was not received. As a result of your failure to return to work when called, as instructed in our previous letter, your seniority is terminated as of 06/07/2002.

Very truly yours,

DMReese

HR Programs Administrator
NEWARK PARTS DEPOT

A119

D 000066

DaimlerChrysler

HOURLY HUMAN RESOURCES SYSTEM

page 1

EMPLOYEE ATTENDANCE INQUIRY - INQACS

1/9/02

3130 - NEWARK PARTS DEPOT

t7232dr            FROM   01/01/1900       THRU     01/09/2002

DCID/MSTR:    445956 PETRUCELLI, DINO G

VAC/PAA    START:   05/07/2001    END:   05/05/2002   AVALBL: VAC:   0       PAA:   24.00   3C TKN:    0

| A/T DATE | TYP | LOCN | DEPT | SF | SUPV NBR | DOW | REAS | PRE EXC | *** DISCIPLINE *** SUGG | GVN | DATE GVN | ** LOST ** LOST | PAA |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/06/1997 | T | 3130 | 6703 | 3 | 6918 | SUN | PERU | | | | | 0.1 | 0.0 |
| 07/07/1997 | T | 3130 | 6703 | 3 | 6918 | MON | PERU | | | | | 0.1 | 0.0 |
| 07/08/1997 | T | 3130 | 6703 | 3 | 6918 | TUE | PERE | | | | | 1.4 | 0.0 |
| 08/27/1997 | A | 3130 | 6703 | 3 | 3986 | WED | PERU | | B1 | B1 | | 8.0 | 0.0 |
| 09/26/1997 | T | 3130 | 6703 | 3 | 3986 | FRI | PERU | | | | | 0.1 | 0.0 |
| 10/20/1997 | A | 3130 | 6703 | 3 | 3986 | MON | PERE | | B2 | B2 | | 8.0 | 0.0 |
| 11/07/1997 | T | 3130 | 6703 | 3 | 3986 | FRI | PERU | | | | | 0.1 | 0.0 |
| 01/12/1998 | T | 3130 | 6703 | 3 | 3986 | MON | PERU | | | | | 0.1 | 0.0 |
| 01/15/1998 | T | 3130 | 6703 | 3 | 3986 | THU | PERU | | | | | 0.2 | 0.0 |
| 01/27/1998 | H | 3130 | 6703 | 3 | 3986 | TUE | HOMR | Y | | | | 7.5 | 0.0 |
| 02/13/1998 | T | 3130 | 6703 | 3 | 3986 | FRI | PERU | | | | | 2.2 | 0.0 |
| 02/19/1998 | H | 3130 | 6703 | 3 | 3986 | THU | HOMR | Y | | | | 6.5 | 0.0 |
| 02/23/1998 | T | 3130 | 6703 | 3 | 3986 | MON | PERU | | | | | 0.1 | 0.0 |
| 02/27/1998 | H | 3130 | 6703 | 3 | 3986 | FRI | HOMC | Y | | | | 0.4 | 0.0 |
| 02/27/1998 | T | 3130 | 6703 | 3 | 3986 | FRI | PERU | | | | | 0.1 | 0.0 |
| 03/06/1998 | T | 3130 | 6703 | 3 | 3986 | FRI | MISE | | | | | 0.1 | 0.0 |
| 03/25/1998 | T | 3130 | 6703 | 3 | 6918 | WED | MISU | | | | | 0.1 | 0.0 |
| 03/27/1998 | T | 3130 | 6703 | 3 | 6918 | FRI | MISU | | | | | 2.0 | 0.0 |
| 03/30/1998 | T | 3130 | 6703 | 3 | 6918 | MON | MISE | Y | | | | 2.4 | 0.0 |
| 04/09/1998 | T | 3130 | 6703 | 3 | 6918 | THU | PERU | | 01 | 01 | 04/28/1998 | 1.1 | 0.0 |
| 04/28/1998 | H | 3130 | 6703 | 3 | 6918 | TUE | HOMR | | | | | 3.0 | 0.0 |
| 05/13/1998 | H | 3130 | 6703 | 2 | 9600 | WED | HOMC | | | | | 0.9 | 0.0 |
| 05/14/1998 | H | 3130 | 6703 | 2 | 9600 | THU | HOMC | | | | | 0.7 | 0.0 |
| 05/15/1998 | H | 3130 | 6703 | 2 | 9600 | FRI | HOMC | | | | | 0.8 | 0.0 |
| 05/20/1998 | H | 3130 | 6703 | 2 | 9600 | WED | HOMC | | | | | 0.2 | 0.0 |
| 05/28/1998 | H | 3130 | 6703 | 2 | 9600 | THU | HOMC | | | | | 0.7 | 0.0 |
| 05/29/1998 | H | 3130 | 6703 | 2 | 9600 | FRI | HOMC | | | | | 0.7 | 0.0 |
| 06/04/1998 | H | 3130 | 6703 | 2 | 9600 | THU | HOMC | | | | | 0.4 | 0.0 |
| 06/08/1998 | A | 3130 | 6703 | 2 | 9600 | MON | VACF | Y | | | | 8.0 | 0.0 |
| 06/09/1998 | A | 3130 | 6703 | 2 | 9600 | TUE | VACF | Y | | | | 8.0 | 0.0 |
| 06/10/1998 | A | 3130 | 6703 | 2 | 9600 | WED | VACF | Y | | | | 8.0 | 0.0 |
| 06/11/1998 | A | 3130 | 6703 | 2 | 9600 | THU | VACF | Y | | | | 8.0 | 0.0 |
| 06/12/1998 | A | 3130 | 6703 | 2 | 9600 | FRI | VACF | Y | | | | 8.0 | 0.0 |
| 06/15/1998 | A | 3130 | 6703 | 2 | 9600 | MON | PERE | | B1 | B1 | | 8.0 | 0.0 |
| 06/16/1998 | A | 3130 | 6703 | 2 | 9600 | TUE | PERE | | B2 | B2 | | 8.0 | 0.0 |
| 07/10/1998 | H | 3130 | 6703 | 2 | 9600 | FRI | HOMC | | | | | 1.6 | 0.0 |
| 07/10/1998 | T | 3130 | 6703 | 2 | 9600 | FRI | MISU | | | | | 0.1 | 0.0 |
| 07/30/1998 | H | 3130 | 6703 | 2 | 9600 | THU | HOMR | Y | | | | 1.5 | 0.0 |
| 08/07/1998 | T | 3130 | 6703 | 2 | 9600 | FRI | MISU | | | | | 0.3 | 0.0 |
| 08/18/1998 | T | 3130 | 6703 | 2 | 9600 | TUE | PERU | | | | | 0.3 | 0.0 |
| 08/21/1998 | T | 3130 | 6703 | 2 | 9600 | FRI | MISE | | | | | 0.1 | 0.0 |

A120

D 000014