IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DINO G. PETROCELLI | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) ) Case No. 04-943-KAJ |
| CHRYSLER CORPORATION | ) ) |
| Defendant. | ) ) ) |

**PROPOSED FINAL PRETRIAL ORDER**

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16, Federal Rules of Civil Procedure.

**Plaintiff(s) Counsel:** Plaintiff proceeds pro se in this matter.

**Defendant(s) Counsel:**

POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: 302-984-6000
Fax: 302-658-1192

SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Tel: 816-474-6550
Fax: 816-421-5547

Jennifer Gimler Brady (Bar I.D. #2874)
Sarah E. DiLuzio (Bar I.D. #4085)

William C. Martucci, Mo. #28237
Kristen Aggeler Page, Mo. #50852

I. **NATURE OF THE CASE**

This is an employment discrimination case brought by *pro se* Plaintiff Dino G. Petrocelli against his former employer, DaimlerChrysler Corporation. Plaintiff filed his Complaint against DaimlerChrysler on August 16, 2004, claiming that he was discriminated against in violation of Title VII and the Delaware Discrimination in Employment Act based on his national origin (Hispanic). He claims that he suffered discrimination when he was subjected to discipline, when his employment was

terminated, and when he was subjected to working in a hostile environment. Plaintiff also asserts claims for retaliation and defamation.

DaimlerChrysler alleges that Plaintiff was a substandard employee who demonstrated numerous discipline and absenteeism problems during his employment with DaimlerChrysler, all of which culminated in his ultimate dismissal in January 2002. DaimlerChrysler denies that Plaintiff has been discriminated against in violation of Title VII or the Delaware Discrimination in Employment Act because: (1) Plaintiff cannot establish the elements of a discrimination claim; (2) DaimlerChrysler acted with legitimate, non-discriminatory reasons when disciplining and terminating Plaintiff's employment; and (3) there is no evidence of pretext. DaimlerChrysler denies that Plaintiff was subjected to a hostile work environment because Plaintiff was not subjected to "regular and pervasive" harassment. DaimlerChrysler denies that Plaintiff was subjected to unlawful retaliation because there is no causal link between any adverse employment action and the protected activity Plaintiff alleges. Finally, DaimlerChrysler denies that Plaintiff can succeed on a claim of defamation because Plaintiff cannot prove the necessary elements of a defamation claim and DaimlerChrysler's alleged defamatory statements are protected by the employer-employee privilege.

## II. JURISDICTION

A. Plaintiff is seeking injunctive relief and monetary damages if reinstatement with corporate seniority at DaimlerChrysler is unsuccessful.

B. The jurisdiction of the Court is not disputed.

1. Jurisdiction exists by virtue of 42 U.S.C § 2000e-5(f)(3) and 28 U.S.C. § 1331. Supplemental jurisdiction over Plaintiff's non-federal claims exists by virtue of 28 U.S.C. § 1367.

## III. UNCONTROVERTED FACTS

The following facts are not disputed or have been agreed to or stipulated to by the parties:

1. Plaintiff Dino G. Petrocelli applied for employment with DaimlerChrysler Corporation on March 15, 1997.

2. Plaintiff was referred to DaimlerChrysler for employment through the Latin American Community Center.

3. Plaintiff was eventually hired and began working at DaimlerChrysler's Parts Distribution Center located in Newark, Delaware ("Newark PDC") in May of 1997.

4. The primary business function of the Newark PDC is to consistently provide, on a timely basis, quality and defect-free parts deliveries to DaimlerChrysler Corporation dealers servicing customer's automobiles. The Newark PDC

services the following geographical areas: Delaware, Maryland, Southeastern Pennsylvania, South New Jersey, Virginia, West Virginia, and Eastern North Carolina.

5. Plaintiff initially began working on the dock at the Newark PDC and eventually moved to working in the warehouse as a picker/packer. During his entire employment at the Newark PDC, Plaintiff worked on the night shift.

6. For most of his employment, Plaintiff worked as a picker/packer, which means that he picked automotive parts from various shelving locations so that those parts could be packaged and transported to the various locations where they were needed.

7. During his entire employment, Plaintiff was a member of the United Auto Workers union, Local 404.

8. DaimlerChrysler's policy is to provide equal employment opportunity without regard to race, color, gender, sexual orientation, age, veteran status, marital status, religion, national origin, and disability unrelated to the ability to perform a job.

9. It is DaimlerChrysler's policy that anyone who believes he or she has been subjected to or witnessed activity or behavior in the workplace that violates the Discrimination and Harassment Policy make DaimlerChrysler aware of the conduct. Employees are advised to notify either: (1) DaimlerChrysler's Diversity and Work/Life Office at 1-866-374-1208; (2) the local Human Resources office; or (3) management. Employees covered by a collective bargaining agreement are also encouraged to use mechanisms provided under the terms and conditions of the applicable agreement.

10. Plaintiff was aware of DaimlerChrysler's Discrimination and Harassment Prevention Policy.

11. Plaintiff acknowledges that he was instructed to bring concerns regarding harassment and discrimination to the attention of his supervisor or human resources.

12. Plaintiff also recalls that he knew if he had a concern about work, he should contact his union committee person.

13. Plaintiff testified that he found the various union committee persons on his shift easy to deal with and approachable.

14. During his employment at the Newark PDC, Plaintiff dated co-worker Shannon Logan for approximately one year.

15. Plaintiff and Ms. Logan both worked on the night shift.

16. In order to maintain a safe, well-run organization, DaimlerChrysler has established necessary policies and practices that must be followed. Those policies and practices are collectively referred to as the "Standards of Conduct."

17. During his employment, Plaintiff received a copy of DaimlerChrysler's Standards of Conduct and was aware of those standards.

18. According to DaimlerChrysler's Standards of Conduct, if one of the Standards is violated, DaimlerChrysler will take disciplinary action, up to and including discharge.

19. Among the thirty-one Standards of Conduct for DaimlerChrysler, Plaintiff violated the following Standards during his employment (many were violated on more than one occasion):

    a. No. 4: Leaving your work station, office or plant during working hours without permission, or failing to return to work after lunch or relief without permission.

    b. No. 5: Failure to exert normal work effort on the job, wasting time, loitering, loafing or sleeping on the job.

    c. No. 6: Failure to refusal to follow the instructions of supervision.

    d. No. 10: Negligent or deliberate damage or destruction of property owned or held by the Corporation or any employee, or the abuse or misuse or unauthorized use of any such property.

    e. No. 14: Threatening, intimidating, coercing, harassing, retaliating or using abusive language to others.

    f. No. 15: Fighting, "horseplay" or other disorderly, disruptive or unruly conduct.

    g. No. 29: Failure to follow safety procedures or to wear or use as instructed required safety or health protective equipment.

20. Plaintiff received the following specific discipline during his employment at the Newark PDC:

    a. On April 14, 1999, Plaintiff was given a Supervisor's Report by supervisor Stephen Gwin for his violation of Standards of Conduct 5 and 6 in connection with his failure to follow his supervisor's instructions and to return promptly to work.

    b. On April 30, 1999, Plaintiff was given a Notice of Disciplinary Layoff by supervisor Stephen Gwin. He was given a five-day disciplinary layoff in connection with his violation of Standards of

        Conduct 6, 10, 14, 15, and 29. The specific incident involved Plaintiff behaving in an irrational and abusive manner and not performing his job.

    c.    On May 31, 2000, Plaintiff was given a Supervisor's Report by supervisor William Matthews for his violation of Standards of Conduct 4, 5, and 6. Specifically, Plaintiff did not answer a page by his supervisor for a work assignment.

    d.    On June 27, 2000, Plaintiff was given a Supervisor's Report and a ten-day disciplinary layoff in connection with two separate incidents involving Plaintiff's violation of Standards of Conduct 4, 5, 6, and 14. The first incident involved Plaintiff's reaction to being told he could not go home early, and the second involved Plaintiff being found outside the building during working time without permission.

    e.    On March 7, 2001, Plaintiff was given a Supervisor's Report and ten-day disciplinary layoff in connection with Plaintiff's violation of Standards of Conduct 4 and 5. The incident involved Plaintiff's failure to properly perform his job and being out of his work area during working time.

    f.    On June 14, 2001, Plaintiff was given a 30-day disciplinary layoff in connection with his violation of Standards of Conduct 4 and 5.

    g.    On September 19, 2001, Plaintiff was suspended in connection with violations of Standards of Conduct 21 and 23. This suspension was in connection with an incident of theft.

    h.    On January 9, 2002, Plaintiff was given an indefinite suspension in connection with his violation of Standard of Conduct 5 and his past disciplinary record. Specifically, the suspension was in connection with incidents of Plaintiff not performing his job as required.

    i.    On January 16, 2002, Plaintiff was notified that his indefinite suspension was modified to a discharge, effective January 11, 2002.

21.    During his employment, Plaintiff received numerous warnings and discipline related to unexcused tardiness and absences.

22.    Specifically, Plaintiff was given the following discipline in connection with his tardiness and excessive absenteeism:

    a.    a 5-day disciplinary layoff on April 19, 1999;

    b.    a 10-day disciplinary layoff on September 22, 1999;

    c.    a 30-day disciplinary layoff on January 4, 2000; and

       d.      a 10-day disciplinary layoff on August 1, 2001.

23. During his employment with DaimlerChrysler, Plaintiff used the illegal substance cocaine.

24. While Plaintiff was a DaimlerChrysler employee, Plaintiff was arrested for possession of cocaine.

25. At the time of his arrest, Plaintiff was a passenger in a car driven by then-girlfriend Ms. Logan.

26. Plaintiff was eventually convicted of possession of a controlled substance and a probation violation.

27. As a result of his convictions, Plaintiff was incarcerated for approximately eight months, beginning in March of 2002.

28. Based on his repeated violations of DaimlerChrysler's Standards of Conduct and his poor record of performance, Plaintiff was discharged on January 11, 2002.

29. Following Plaintiff's discharge on January 11, 2002, Plaintiff filed a grievance appealing the discharge.

30. In March 2002, Plaintiff was incarcerated in connection with his convictions for possession of a controlled substance and violating probation. He was incarcerated for approximately eight months, beginning in March 2002.

31. On April 11, 2002, the Appeal Board of the UAW directed that Plaintiff be offered reinstatement and that his discharge be reduced to a disciplinary layoff without back pay or benefits for the period of time he was not working.

32. The conditional reinstatement from the Appeal Board further stated: "Your reinstatement provides you with a final opportunity to become an acceptable employee. It is understood and agreed you will abide by the DaimlerChrysler Standards of Conduct (copy attached). Any violations of these rules will result in disciplinary action up to and including discharge."

33. The conditional reinstatement from the Appeal Board further stated: "Your reinstatement will be in accordance with your seniority provided you can meet normal requirements."

34. On May 22, 2002, Dawn Reese, who is the Office Administrator for the Newark PDC, sent a letter to Plaintiff informing him that he was to report to the Personnel Office at the Newark PDC on May 28, 2002 for reinstatement.

35. On May 26, 2002, Plaintiff wrote and sent a letter from the place of his incarceration to Ms. Reese. In the letter, Plaintiff informed Ms. Reese that he

was unable to return to work due to his incarceration (in connection with his convictions for possession of a controlled substance and violating probation).

36. As a result of his incarceration, Plaintiff did not report to work for reinstatement on May 28, 2002. On May 30, 2002, Ms. Reese sent Plaintiff another letter informing him that he failed to report to work on May 28, 2002 for reasons that were not established nor justified. In the letter, she directed Plaintiff to report to the Plant Personnel Office on or before June 6, 2002, or send satisfactory evidence as to the reason for his absence before that date.

37. On June 7, 2002, Ms. Reese sent Plaintiff a letter informing him that DaimlerChrysler had not received satisfactory evidence as to the reason for his absence from work and informing him that his seniority was terminated as of June 7, 2002.

## IV. AGREED TO ISSUES OF LAW

1. **Discrimination Claims**:

   Whether Plaintiff can prove that (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently?

2. **Rationale For Discipline and Termination of Employment**:

   Whether DaimlerChrysler can prove that it acted in a legitimate, non-discriminatory manner when it disciplined Plaintiff and terminated his employment because he was a substandard employee who demonstrated numerous discipline and absenteeism problems during his employment?

3. **Pretext**:

   Whether Plaintiff can prove that either (1) DaimlerChrysler's reasons for disciplining and terminating Plaintiff's employment are not believable or (2) that an invidious discriminatory reason was more likely than not a motivating or determinative cause of DaimlerChrysler's actions?

4. **Hostile Work Environment**:

   Whether Plaintiff can prove (1) that he suffered intentional discrimination because he was Hispanic; (2) that the discrimination was "pervasive and regular;" (3) that he was adversely affected by the discrimination; (4) that the discrimination would adversely affect a reasonable person who was Hispanic; and (5) that DaimlerChrysler knew or should have known of the harassment and failed to take prompt remedial action?

5. **Retaliation**:

Whether <u>Plaintiff</u> can prove (1) that he engaged in a protected employment activity; (2) that DaimlerChrysler took an adverse employment action after or contemporaneous with the protected activity, and (3) a causal link exists between the protected activity and the adverse action?

6. **Defamation (Privilege):**

Whether the statements alleged by Plaintiff to constitute defamation are protected by the employer-employee privilege?

7. **Defamation**:

Whether <u>Plaintiff</u> can prove that a communication was made (1) that was of a defamatory character; (2) that was published to a third party; (3) that referred to the Plaintiff; (4) that the third party understood the defamatory character of the communication; and (5) that Plaintiff suffered injury as a result of the defamatory communication?

V. **WITNESSES (NOTING WHO WILL TESTIFY BY DEPOSITION)**

A. List of witnesses the <u>Plaintiff</u> expects to call, including experts:

1. Plaintiff does not plan on calling any expert witnesses at this juncture.

    2. Plaintiff may call any of the following non-expert witnesses, who may testify by deposition.

        a. Witnesses listed by Defendant.
        b. Witnesses necessary to authenticate or otherwise establish foundation for Plaintiff's exhibits.
        c. Witnesses discovered or disclosed in the Plaintiff's continuing investigation or discovery
        d. Witnesses necessary for impeachment or rebuttal
        e. Individuals listed in Plaintiff's Rule 26 disclosures.
        f. Any other witnesses who may be subpoenaed by the Court that may give written or spoken testimony on behalf of a fair trial.
        g. Guille Opdenaker
        h. Theresa Sanchez
        i. Carlo Petrocelli
        j. Marie Petrocelli

B. List of witnesses the <u>Defendant</u> expects to call, including experts:

1. Defendant does not plan on calling any expert witnesses.

2. Defendant may call any of the following non-expert witnesses, who may testify by deposition:

    a. Plaintiff
    b. Witnesses listed by Plaintiff.
    c. Individuals identified by Plaintiff in his Rule 26 Disclosures.
    d. Robert W. Altieri
    e. Dawn M. Reese
    f. Robert P. Mailloux
    g. Audra M. Jarman
    h. Gary Simpers
    i. Stephen J. Gwin
    j. William G. Matthews
    k. David S. Petrous II
    l. Robert Pisani
    m. Gary Meinhaldt
    n. Gary Stollings, Sr.
    o. Tom Tulley
    p. George Wingo
    q. Kevin Jones
    r. Patrick Palmer
    s. Marcal Christmas
    t. Witnesses necessary for impeachment or rebuttal.
    u. Witnesses necessary to authenticate or otherwise establish foundation for Defendant's exhibits.
    v. Witnesses discovered or disclosed in Defendant's continuing investigation or in discovery.

C. **Rebuttal Witnesses.** Each of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

VI. EXHIBITS

As set forth in Local Rule 16.4(d)(6), the parties have provided "a list of pre-marked exhibits, including designations of interrogatories and answers thereto, request for admissions and responses, which each party intends to offer at the trial with a specification of those which will be admitted in evidence without objection, those that will be objected to and the Federal Rule of Evidence in support of said objection and the Federal Rule of Evidence relied upon by the proponent of the exhibit."

A. **Plaintiff's List of Exhibits**

Plaintiff reserves the right to use any exhibits listed by defendants.

B.  **Defendants List of Exhibits**

| Exhibit | Title of Document | Objections Under Federal Rules or "No Objection" |
|---|---|---|
| A | Plaintiff's Application of Employment dated March 15, 1997 | No Objection |
| B | Plaintiff's Deposition Taken August 8-9, 2005 | No Objection |
| C | DaimlerChrysler Parts Distribution Center Guidelines Manual | No Objection |
| D | Letter from Dawn Reese to Plaintiff Dated January 16, 2002 | No Objection |
| E | DaimlerChrysler's Discrimination and Harassment Prevention Policy | No Objection |
| F | DaimlerChrysler Corporation's Standards of Conduct | No Objection |
| G | Newark PDC Employee Indoctrination Orientation, Guidelines Manual Signoff | No Objection |
| H | Employee Discipline Analysis Dated May 18, 1997 | No Objection |
| I | Supervisor's Report Dated April 14, 1999 | No Objection |
| J | Notice of Suspension, Disciplinary Layoff Or Discharge Dated April 30, 1999 | No Objection |
| K | Supervisor's Report From Tammy Boory Dated April 30, 1999 | No Objection |
| L | Supervisor's Report From Stephen Gwin Dated April 30, 1999 | No Objection |
| M | Supervisor's Report Dated May 31, 2000 | No Objection |
| N | Supervisor's Report Dated June 27, 2000 | No Objection |
| O | Notice of Suspension, Disciplinary Layoff Or Discharge Dated June 27, 2000 | No Objection |
| P | Supervisor's Report Dated March 7, 2000 | No Objection |
| Q | Notice Of Suspension, Disciplinary Layoff Or Discharge Dated March 7, 2000 | No Objection |
| R | Letter To Dino Petrocelli From Dawn Reese Dated June 14, 2001 | No Objection |
| S | Notice of Suspension, Disciplinary Layoff or Discharge Dated June 8, 2001 | No Objection |
| T | Notice of Suspension, Disciplinary Layoff or Discharge Dated May 31, 2001 | No Objection |
| U | Letter to Dino Petrocelli from Dawn Reese Dated September 24, 2001 | No Objection |
| V | Notice of Suspension, Disciplinary Layoff or Discharge Dated September 9, 2001 | No Objection |
| W | Notice of Suspension, Disciplinary Layoff or Discharge Dated September 24, 2001 | No Objection |
| X | Statement of Fact by Carl Ruohen Dated September 19, | No Objection |

|    |                                                                                                    |              |
|----|----------------------------------------------------------------------------------------------------|--------------|
|    | 2001                                                                                               |              |
| Y  | Supervisor's Report Dated January 9, 2002                                                          | No Objection |
| Z  | Notice of Suspension, Disciplinary Layoff or Discharge Dated January 11, 2002                      | No Objection |
| AA | Notice of Suspension, Disciplinary Layoff or Discharge Dated January 16, 2002                      | No Objection |
| BB | Letter to Dino Petrocelli from Dawn Reese Dated January 16, 2002                                   | No Objection |
| CC | Letter to Dino Petrocelli from Dawn Reese Dated June 7, 2002                                       | No Objection |
| DD | Hourly Human Resources System Employee Attendance Inquiry Dated January 9, 2002                    | No Objection |
| EE | Uniform Tardiness Procedure For Tardiness April 9, 1998                                            | No Objection |
| FF | Uniform Tardiness Procedure For Tardiness November 30, 1998                                        | No Objection |
| GG | Uniform Tardiness Procedure For Tardiness December 16, 1998                                        | No Objection |
| HH | Uniform Tardiness Procedure For Tardiness April 13, 1999                                           | No Objection |
| II | DaimlerChrysler Absenteeism Procedure Report Dated July 12, 1999                                   | No Objection |
| JJ | DaimlerChrysler Absenteeism Procedure Report Dated September 20, 1999                              | No Objection |
| KK | DaimlerChrysler Absenteeism Procedure Report Dated July 12, 1999                                   | No Objection |
| LL | DaimlerChrysler Absenteeism Procedure Report Dated August 25, 1999                                 | No Objection |
| MM | DaimlerChrysler Absenteeism Procedure Report Dated August 30, 1999                                 | No Objection |
| NN | DaimlerChrysler Absenteeism Procedure Report Dated January 4, 2000                                 | No Objection |
| OO | Notice of Suspension, Disciplinary Layoff Or Discharge Dated January 4, 2000                       | No Objection |
| PP | DaimlerChrysler Absenteeism Procedure Report Dated July 30, 2001                                   | No Objection |
| QQ | DaimlerChrysler Absenteeism Procedure Report Dated August 1, 2001                                  | No Objection |
| RR | Newark PDC Grievance Form Signed and Dated January 16, 2002 and January 21, 2002                   | No Objection |
| SS | Disposition From Appeal Board of the UAW Dated April 11, 2002                                      | No Objection |
| TT | Letter to Dino Petrocelli from Dawn Reese Dated May 22, 2002                                       | No Objection |
| UU | Letter to Dawn Reese from Dino Petrocelli Dated May 26, 2002                                       | No Objection |

| VV | Letter to Dino Petrocelli from Dawn Reese Dated May 30, 2002 | No Objection |
|---|---|---|
| WW | Letter to Dino Petrocelli from Dawn Reese Dated June 7, 2002 | No Objection |
| WW | Letter to Dino Petrocelli from Dawn Reese Dated June 7, 2002 | No Objection |
| XX | Demonstrative Exhibit Illustrating Timeline Of Events | No Objection |
| YY | The Collective Bargaining Agreement Applicable To Plaintiff | No Objection |
| -- | All Documents Produced By Plaintiff | No Objection |
| -- | All Documents Produced By Defendant | No Objection |
| -- | All Deposition Exhibits | No Objection |
| -- | Selected Pleadings | No Objection |
| -- | All Exhibits Submitted With Pleadings, Motions, And Memoranda In This Case. | No Objection |
| -- | Rebuttal And Impeachment Exhibits | No Objection |
| -- | Demonstrative/Illustrative Exhibits | No Objection |
| -- | Demonstrative Enlargements, Transparencies, Digital/Computerized Projections Of Exhibits Or Charts. | No Objection |
| -- | Documents Relating To Plaintiff From Health Care Providers, Employers, And Educational Institutions. | No Objection |

## VII. DAMAGES

### A. Plaintiff's Damages

Plaintiff is seeking reinstatement with DaimlerChrysler or injunctive relief and monetary damages at reinstatement failure.

### B. Defendant's Damages

Defendant is not pursuing any claims for damages against Plaintiff.

## VIII. BIFURCATED TRIAL

The parties do not desire a bi-furcated trial.

## IX. TRIAL BRIEFS

A. Plaintiff does not intend to present any Motions In Limine at this time.

B. DaimlerChrysler presents the following Motions In Limine:

1. <u>To Exclude Evidence of Agency Findings</u>:

DaimlerChrysler expects that Plaintiff will introduce evidence of a Reasonable Cause Finding issued by the Delaware Department of Labor and adopted by the Equal Employment Opportunity Commission. Evidence involving agency findings should be excluded because it is highly prejudicial and invades the province of the jury. *See, e.g., Whitfield v. Pathmark Stores, Inc.*, 1999 WL 222459, No. Civ.A. 96-246-MMS, (D.Del. March 30, 1999); *Brom v. Bozell, Jacobs, Kenyon & Eckhardt*, 867 F.Supp. 686, 692 (N.D.Ill. 1994)("presenting the administrative findings with respect to Plaintiff's charge of discrimination is 'tantamount to saying this has already been decided and here is the decision.'")(quoting *Tulloss v. Near North Montessori School, Inc.*, 776 F.2d 150, 154 (7th Cir.1985)).

Agency findings should be excluded because their low probative value is substantially outweighed by the negative factors involved in the Rule 403 balancing test. *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3rd Cir. 2002)(upholding District Court determination to exclude EEOC Letter of Determination because low probative value of EEOC determination was substantially outweighed by risk of undue delay and waste of time). Because agency findings are highly prejudicial, invade the province of the jury, will result in confusion, and will cause undue delay and waste of time, agency findings should be excluded from evidence in the present case.

2. <u>To Exclude Evidence Of Alleged "stray remarks"</u>:

DaimlerChrysler anticipates that Plaintiff may offer testimony or other evidence of "stray remarks" made by co-workers, by decision-makers unrelated in time to Plaintiff's claims, or that concern employees other than Plaintiff. These "stray remarks" should not be admitted because they do not tend to support Plaintiff's claims and merely serve to confuse and prejudice the jury against DaimlerChrysler. *See e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J. concurring) ("stray remarks in the work place . . . unrelated to the decisional process itself [cannot] suffice to satisfy plaintiff's burden . . ."); *Glanzman v. Metro. Management Co.*, 391 F.3d 506, 513 (3d Cir. 2004)("statements made by non-decision makers or by a decision maker unrelated to the decisional process itself are *not* direct evidence."); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992)("Stray Remarks by non-decision-makers or by decision-makers unrelated to the decision process are rarely given great weight . . ."). Because such "stray remarks" tend to confuse the issues and prolong the trial of this case with evidence on unrelated matters, such evidence should be excluded as irrelevant and prejudicial under Federal Rules of Evidence 402 and 403.

3. <u>To Exclude Evidence Of Alleged Discriminatory Comments, Conduct, And Events About Which Plaintiff Lacks Personal Knowledge:</u>

DaimlerChrylser anticipates that Plaintiff may offer evidence of alleged discriminatory comments, conduct, and events about which he lacks personal knowledge. Proof of harassment or national-origin discrimination, however, requires proof of Plaintiff's subjective offense. Thus, other witnesses' experience or knowledge of comments or conduct about which Plaintiff was unaware are not probative to the analysis of whether *Plaintiff* was the subject of discrimination or harassment. Given the highly prejudicial nature of such second-hand evidence and its lack of probative value, the Court should exclude all incidents of which Plaintiff lacks personal knowledge under Federal Rules of Evidence 402 and 403. This evidence should also be excluded as inadmissible hearsay under Rules 801 and 802.

4. <u>To Exclude The Testimony Of "Me, Too" Witnesses:</u>

DaimlerChrysler anticipates that Plaintiff may offer "me too" testimony or other evidence from DaimlerChrysler's current or former employees about their experiences as employees at DaimlerChrysler and their views that they were treated unfairly in their personal situations. Such "me too" evidence does not involve Plaintiff in the least and therefore has no probative value in proving that Plaintiff suffered from national origin discrimination or harassment, especially where one element of Plaintiff's proof is his own subjective offense to the conduct at issue. Any such testimony would be cumulative and redundant and would unreasonably distract and confuse the jury. The Court should exclude such "me too" evidence under Federal Rules of Evidence 402 and 403 because it is more prejudicial than probative and because it invades the province of the jury. *Moorehouse v. Boeing Co.,* 501 F. Supp. 390, 393 n.4 (E.D. Pa. 1980) ("the strongest jury instructions could not have dulled the impact of the parade of witnesses, each recounting his contention that defendant [had discriminated against him]"), *aff'd* 639 F.2d 774 (3rd Cir. 1980).

X. **LIMITATIONS, RESERVATIONS AND OTHER MATTERS**

A. **Length of Trial.** The probable length of trial is 2-3 days. The case will be listed on the trial calendar to be tried when reached.

Mark appropriate box:   Jury ___X___

Non-jury_____

B. **Number of Jurors.** There shall be six jurors and three alternate jurors.

14

    C.    **Jury Voir Dire.** The court will conduct voir dire. Defendant proposed voir dire questions accompany this Order.

IT IS ORDERED that this Final Pretrial Order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice or for good cause shown. Such modification may be made either on application of counsel for the parties or on motion of the Court.

Dated:

                                                               _____
UNITED STATES DISTRICT JUDGE

APPROVED AS TO FORM AND SUBSTANCE:

/s/ Dino G. Petrocelli
Dino G. Petrocelli, pro se
129 Emery Court
Newark, DE 19711


/s/ Sarah E. DiLuzio
Attorney for Defendant's
POTTER ANDERSON & CORROON
Jennifer Gimler Brady (Bar I.D. #2874)
Sarah E. DiLuzio (Bar I.D. #4085)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
Tel: 302-984-6000
Fax: 302-658-1192

SHOOK HARDY & BACON LLP
William C. Martucci, Mo. #28237
Kristen Aggeler Page, Mo. #50852
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
816.474.6550
FAX: 816.421.5547

Dated: March 6, 2006

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify this 6th day of March 2006, that the foregoing **PROPOSED FINAL PRETRIAL ORDER** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) and one (1) true and correct copy was mailed via **FIRST CLASS U.S. MAIL, POSTAGE PREPAID** on the following:

Dino G. Petrocelli, *pro se*
129 Emery Court
Newark, DE 19711

/s/ Sarah E. DiLuzio
Jennifer Gimler Brady (Bar I.D. #2874)
Sarah E. DiLuzio (Bar I.D. #4085)
Hercules Plaza – Sixth Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000 (Telephone)
(302) 658-1192 (Facsimile)
sdiluzio@potteranderson.com (Email)