IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DINO G. PETROCELLI, )
)
      Plaintiff, )
)
v. ) Civil Action No. 04-943-KAJ
)
DAIMLERCHRYSLER CORPORATION, )
)
      Defendant. )
)

**MEMORANDUM OPINION**

Dino G. Petrocelli, Pro se Plaintiff.

Jennifer Gimler Brady, Esq., Sarah E. DiLuzio, Esq., Potter Anderson & Corroon LLP, Hercules Plaza, Sixth Floor, 1313 North Market Street, Wilmington, Delaware 19801; Counsel for Defendant.
    Of Counsel: William C. Martucci, Esq., Kristen Aggeler Page, Esq., Shook Hardy
    & Bacon LLP, 2555 Grand Boulevard, Kansas City, Missouri 64108.

March 22, 2006
Wilmington, Delaware



JORDAN, District Judge

I.  **INTRODUCTION**

This is an employment discrimination case brought by Dino G. Petrocelli ("Petrocelli"), who is proceeding pro se, against his former employer, DaimlerChrysler Corporation ("DaimlerChrysler" or the "Company"). Petrocelli, a Hispanic American, claims that while he was working for DaimlerChrysler he was the target of discrimination based on his national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq., and of the Delaware Discrimination in Employment Act (the "Delaware Act"), 19 *Del. Code* § 711. He also alleges that, in violation of Title VII, DaimlerChrysler retaliated against him for filing the first of two charges of discrimination and that the Company defamed him by accusing him of theft and by making derogatory statements about his work habits. Before me now is DaimlerChrysler's Motion for Summary Judgment. (Docket Item ["D.I."] 56; the "Motion".) This court has subject matter jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. For the reasons that follow, the Motion will be granted in part and denied in part.

II. **BACKGROUND**[1]

A. *Perceived Harassment During Petrocelli's Employment at DaimlerChrysler*

Petrocelli applied for employment with DaimlerChrysler on March 15, 1997 (D.I. 58 at A1-2), after being referred to the Company through the Latin American Community Center (*id.* at A8, 66:21-67:14). On his application, Petrocelli listed "Spanish" as one of his skills (*id.* at A1), and during his interview with DaimlerChrysler,

---

[1]The following background information is taken from the parties' submissions and does not constitute findings of fact.

he was asked to "say a few things in Spanish," because he "didn't look Hispanic" (*id.* at A9-10, 73:24-74:8, 74:23-75:3). In May 1997, Petrocelli began working at DaimlerChrysler's Parts Distribution Center in Newark, Delaware ("Newark PDC"). (*Id.* at A11, 81:2-4.) Petrocelli worked on the night shift at Newark PDC, initially on the dock and later in the warehouse as a picker/packer. (*Id.* at A10-11, 77:12-78:10.)

Petrocelli testified at his deposition about several incidents at Newark PDC that he perceived to be harassment based on his national origin. First, he testified that his coworkers drew pictures of his "face with a beard . . . and [his] name under there and saying, 'Me no speak English' . . . [with] a sombrero . . . [o]r a jail cell with a sombrero with [his] name." (*Id.* at A23, 140:7-11.) Those pictures were drawn with markers "[i]n the bathrooms, on the work equipment, [and] out in the work area on boxes." (*Id.* at A23, 140:12-18.) One particular picture, drawn in the bathroom in October 2001, depicted "a snake with a sombrero, [Petrocelli's] name underneath of it, . . . bars of a jail cell around it, . . . [and] references to . . . [him] not speaking English." (*Id.* at A25, 169:21-24.) He further testified that "on several occasions," starting in January 2000, pictures and notes were left in work areas "referring to burritos and tacos . . . and references to [him] wearing a bandanna . . . being in gangs and calling [him] 'Esse'." (*Id.* at A26, 185:17-186:3.)

Petrocelli also testified that he was called "Spic" by coworkers on "numerous" occasions, including once in December 2001 in front of the control center at Newark PDC. (*Id.* at A26, 186:12-23.) Petrocelli testified that he was called "a lazy Latino," a "mushroom picker," and a "Spic" on other occasions in 1998 and 2000. (*Id.* at A34-35,

218:18-20, 220:16-221:1.) During some of those incidents, the speaker using those terms acted "like he was going to run [Petrocelli] over with his forklift." (*Id.* at A34-35, 220:23-221:1.)

According to Petrocelli, one of his supervisors saw him wearing a cross, asked if he was Catholic, and when Petrocelli said that he was, the supervisor "looked surprised . . . [and] said, 'Well, I thought you people practiced "Santaria" or Voodoo or something like that,' and laughed." (*Id.* at A31, 206:12-207:1; *see also id.* at A20, 121:4-17.)

Finally, Petrocelli testified that, starting in September 2001, coworkers made references about his relationship with a non-Hispanic white female coworker. (*Id.* at A26, 187:24-188:5.) Those references included sexually explicit drawings posted on billboards (*id.* at A26, 188:15-22), as well as a particular occasion where a coworker said to Petrocelli and the female coworker, "Are you down with the brown tour?" (*id.* at A26-27, 188:9-15, 189:7-14).

B.  *Events Leading Up to Petrocelli's Firing*

During his tenure at Newark PDC, which lasted from 1997 until January 2002, Petrocelli was disciplined many times for violating DaimlerChrysler's Standards of Conduct. Petrocelli's disciplinary record (*id.* at A99-119) includes, inter alia, violations for (1) leaving work during working hours without permission, or failing to return to work after lunch or relief without permission; (2) failing to exert normal work effort on the job, wasting time, loitering, loafing, or sleeping on the job; (3) failing to follow instructions from supervisors; (4) negligent or deliberate damage to DaimlerChrysler's property; and (5) threatening, intimidating, coercing, harassing, retaliating, or using abusive language

to others. (*See also id.* at A96-97 (DaimlerChrysler Standards of Conduct).) Between April 14, 1999 and June 14, 2001, Petrocelli received four disciplinary layoffs, each lasting between five and thirty days. (*Id.* at A100-10.) On September 19, 2001, Petrocelli was suspended for attempting to steal DaimlerChrysler property. (*Id.* at A111-14.) Finally, on January 9, 2002, Petrocelli was suspended indefinitely for violating DaimlerChrysler's standards of conduct. (*Id.* at A115-17.) That suspension was modified to a discharge effective January 11, 2002. (*Id.* at A118.)

Petrocelli testified that twelve of his coworkers committed similar violations but were not punished as severely as he was. (*Id.* at A21-23, 130:9-138:9.) Those violations included sleeping, loafing, and playing board games (*id.* at A22-23, 136:10-138:9), as well as the more severe issue of working under the influence of drugs (*id.* at A21-22, 133:11-134:23). According to Petrocelli, some coworkers received no discipline for those violations (*id.* at A22, 136:10-137:2), while others received too little discipline (*id.* at A22-23, 134:17-23, 138:1-9). Petrocelli also admitted, however, that he did not know precisely what discipline those coworkers received, although he perceived it to be less severe than what he received. (*Id.* at A22-23, 134:20-136:4, 138:1-9.)

After he was discharged in January 2002, Petrocelli filed a union grievance to appeal that decision. (*Id.* at A152-53.) That grievance addressed whether discharge was an appropriate response to Petrocelli's violations, but it did not include any allegations of discrimination based on national origin. (*Id.*) On April 11, 2002, the Appeal Board, which included representatives of DaimlerChrysler and the International

4

Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), directed that Petrocelli be offered reinstatement, and that offer was extended in a letter to Petrocelli dated May 22, 2002. (*Id.* at A154-56.) The reinstatement offer required Petrocelli to report to Newark PDC on May 28, 2002. (*Id.* at A156.)

However, Petrocelli did not report as directed because, in March 2002, while his grievance was being considered, he had been arrested for possession of cocaine and he remained in custody. (*Id.* at A4, 33:2-5; *id.* at A157.) He was convicted of possession of a controlled substance and violation of probation, which had been imposed after an earlier conviction for offensive touching. (*Id.* at A5, 34:4-20, 35:24-36:15.) He was incarcerated for approximately eight months, beginning in March 2002. (*Id.* at A33, 213:22-214:3.) After failing to report by June 6, 2002, and failing to substantiate the reason for his failure, Petrocelli's seniority was terminated. (*Id.* at A158-59.)

C. *Procedural History*

On January 22, 2002, while his grievance was pending, Petrocelli filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Delaware Department of Labor against DaimlerChrysler, alleging that he was subjected to discrimination and a hostile work environment in violation of Title VII and the Delaware Act. (*Id.* at A160.) On November 26, 2003, the Delaware Department of Labor issued a Reasonable Cause Finding that concluded there was evidence to support a finding of a hostile work environment but not a finding that the disciplinary actions and discharge resulted from discrimination. (*Id.* at A167-68.) The EEOC

5

adopted those findings in a Notice of Right to Sue dated May 18, 2004. (*Id.* at A169.) The EEOC also issued a Notice of Right to Sue on January 6, 2005, stating that the EEOC found reasonable cause to believe that a violation had occurred, but that it had not obtained a settlement with DaimlerChrysler and would not bring suit. (*Id.* at A161.) That notice concluded the EEOC's processing of Petrocelli's first charge of discrimination against the Company. (*Id.*)

On April 3, 2003, Petrocelli filed with the EEOC a second Charge of Discrimination, alleging that DaimlerChrysler had retaliated against him for filing his first charge by offering him reinstatement when the Company knew that he was incarcerated and unable to report. (*Id.* at A162.) The EEOC issued a Dismissal and Notice of Right to Sue on September 10, 2003, stating that the retaliation charge could not be investigated because it was not filed within the statutory time limit. (*Id.*) That notice informed Petrocelli that he had ninety days to file a claim based on that second charge, or the right to sue would be lost. (*Id.*)

Based on the May 18, 2004 Notice of Right to Sue on the first charge of discrimination, Petrocelli filed this suit against DaimlerChrysler on August 16, 2004, alleging that he was fired, disciplined, and subjected to a hostile work environment in violation of Title VII and the Delaware Act. (*Id.* at A164-70.) On September 28, 2005, Petrocelli was granted leave to amend his complaint. (D.I. 53.) That amended complaint provided more explanation in support of Petrocelli's allegations of discrimination, as well as articulating his claims for retaliation and defamation. (D.I. 58

6

at A171-75.) Petrocelli seeks reinstatement, back pay, front pay, and compensatory and punitive damages. (*Id.* at A174.)

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable dispute of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). To defeat a motion for summary judgment, Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

In his complaint, Petrocelli asserts that DaimlerChrysler violated both Title VII and the Delaware Act. (D.I. 58 at A164-70.) Since claims of employment discrimination under the Delaware Act are analyzed in the same way as claims under Title VII, *Giles v. Family Court*, 411 A.2d 599, 601-02 (Del. 1980), the following analysis uses the Title VII framework, and the conclusions apply equally to the claims of hostile work environment and disparate treatment under the Delaware Act.

### A. Hostile Work Environment

A hostile work environment may form the basis of a Title VII discrimination claim against an employer. *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-68 (1986)). The inquiry into whether an environment is hostile requires a look into "all the circumstances . . . [including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). That analysis "must concentrate not on individual incidents, but on the overall scenario." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 149 (3d Cir. 1999). To establish a Title VII claim based upon a hostile work environment, Petrocelli must show that "(1) he suffered intentional discrimination because of his national origin; (2) the discrimination was pervasive and regular; (3) it detrimentally affected him; (4) it would have detrimentally affected a reasonable person of the same protected class in his position; and (5) there is a basis for vicarious liability." *Cardenas*, 269 F.3d at 260.

For purposes of this Motion, DaimlerChrysler concedes four of those five elements, arguing only that the discrimination faced by Petrocelli was not pervasive and regular. (D.I. 57 at 28-32.) DaimlerChrysler first argues that the harassment discussed in Petrocelli's deposition is a series of isolated incidents. In particular, according to DaimlerChrysler, the name-calling, including epithets like "spic," "mushroom picker," "lazy Latino," and references to "you people" practicing Santaria or voodoo, were sporadic, and, in any event, constituted mere offensive utterances. (*Id.* at 29.) Also, according to DaimlerChrysler, the picture of the snake with the sombrero in a jail cell with Petrocelli's name was a one-time occurrence, and that a "single item of graffiti" is not pervasive and regular discrimination. (*Id.* at 30.)

DaimlerChrysler's argument misses the mark, because it focuses on individual incidents in isolation and, unsurprisingly, finds that each is a one-time occurrence. To the contrary, the analysis must consider the circumstances as a whole and not focus on each event individually. *Durham Life*, 166 F.3d at 149. According to Petrocelli's unrebutted testimony, he was called a "spic" on "numerous" occasions during his time at Newark PDC. (D.I. 58 at A26, 186:12-23.) Other derogatory terms, such as "lazy Latino," and "mushroom picker," were allegedly directed at him. (*Id.* at A34-35, 218:18-20, 220:16-221:1.) The reference to the religion practiced by "you people" was also clearly addressed to Petrocelli's Hispanic origin. (*Id.* at A31, 206:12-207:1.) Those statements, taken as a group and according to Petrocelli's testimony, were not sporadic, and they constitute more than offensive utterances. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 767 (6th Cir. 2000) (holding that the commonplace use of the

word "nigger" constituted more than mere offensive utterances). Finally, according to Petrocelli, pictures directed at his national origin were drawn in the bathrooms, on the work equipment, and out in the work area on boxes. (D.I. 58 at A23, 140:7-18; *id.* at A25, 169:21-24.) DaimlerChrysler points to one such picture and calls it an isolated occurrence. (D.I. 57 at 30.) Again, by isolating individual events, DaimlerChrysler ignores the totality of Petrocelli's allegations.

DaimlerChrysler also argues that many events that were perceived by Petrocelli to constitute harassment, including the statements and drawings referring to Petrocelli's romantic relationship with a non-Hispanic white coworker, the request that he speak Spanish at his interview, and the discipline he received for violating the standards of conduct, were not actually directed at his national origin. (D.I. 57 at 28-31.) While I agree that each of those events, viewed in isolation, might not be obviously directed at Petrocelli's Hispanic origin,[2] when they are considered along with the epithets and offensive graffiti, a reasonable jury might conclude that those acts were motivated by a discriminatory purpose. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996) (interpreting less obvious incidents in light of other racially-motivated events). Therefore, the less overt incidents reported by Petrocelli are properly included in the totality of circumstances examined by the factfinder.

DaimlerChrysler has failed to show that, viewing the evidence in the light most favorable to Petrocelli, the incidents of hostility were not "pervasive and regular" as required under Title VII. Petrocelli's unrebutted testimony raises a genuine issue of

---

[2]The "brown tour" comment does seem so directed, however. (*See* D.I. 58 at A26-27, 188:9-15, 189:7-14.)

material fact concerning the frequency and severity of the hostility he experienced. Therefore, because that is the only issue raised by DaimlerChrysler, I will deny the Motion as to the hostile work environment claim.

    B.    *Disparate Treatment*

Petrocelli alleges that when DaimlerChrysler disciplined him for violating the standards of conduct and eventually fired him, it discriminated against him based on his national origin. (D.I. 58 at A165.) Those disparate treatment claims are analyzed under the *McDonnell Douglas* burden shifting framework. *Jones v. Sch. Dist. Of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999) (referring to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Under that framework, Petrocelli must establish a prima facie case of discrimination based on national origin by showing: (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; and (3) that that action occurred under circumstances that give rise to an inference of unlawful discrimination, such as might occur when a similarly situated person not of the protected class is treated differently. *Jones*, 198 F.3d at 410-11; *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000). If Petrocelli succeeds in establishing a prima facie case, then DaimlerChrysler must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Jones*, 198 F.3d at 410. If DaimlerChrysler meets that burden, then Petrocelli must show by a preponderance of the evidence that those legitimate reasons were a pretext for discrimination. *Id.* If DaimlerChrylser raises a legitimate nondiscriminatory reason for its actions, Petrocelli may overcome a summary judgment motion with evidence "from which a factfinder

could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Here, for both the claim based on disciplinary action and the claim based on discharge, DaimlerChrysler concedes, for purposes of this Motion, the first two elements of Petrocelli's prima facie case, but argues that he has not established the third element: that the circumstances give rise to an inference of unlawful discrimination. (D.I. 57 at 21-23, 25.) Furthermore, DaimlerChrysler argues that it had legitimate nondiscriminatory reasons for disciplining and firing Petrocelli, and Petrocelli has failed to establish that those reasons were pretextual. (*Id.* at 23-25, 26-27.) The arguments concerning the inference of unlawful discrimination and the showing of pretext both focus on Petrocelli's failure to show that similarly situated coworkers were treated differently than he was. (*Id.* at 22-25, 27.)

If Petrocelli's assertions about the discipline received by his coworkers were the only relevant evidence, I would agree that Petrocelli had failed to establish an inference that his discipline and firing were based on unlawful discrimination. Petrocelli admitted that he did not know precisely what discipline other employees received (D.I. 58 at A22-23, 134:20-136:4, 138:1-9), and his unsubstantiated belief that he was punished more severely is insufficient to support his prima facie case. *See Seabrook v. Gadow*, No. Civ.A.01-802, 2003 WL 21383719, at *7 (D. Del. June 10, 2003). Also, considering that DaimlerChrysler has articulated legitimate nondiscriminatory reasons for its actions by presenting the details of Petrocelli's disciplinary record (D.I. 58 at A99-119), Petrocelli's

12

belief about the discipline given to other employees is insufficient to raise a genuine issue of material fact as to pretext. See Seabrook, 2003 WL 21383719, at *7.

However, for the claim based on disciplinary actions, Petrocelli has presented other relevant evidence. "Evidence of . . . a hostile work environment is relevant to whether one of the principal non-discriminatory reasons asserted by an employer for its actions was in fact a pretext for discrimination." Aman, 85 F.3d at 1086. As discussed above, supra Section IV.A, Petrocelli has presented sufficient evidence to overcome DaimlerChrysler's summary judgment motion as to his hostile work environment claim. That general evidence of a hostile environment, viewed in the light most favorable to Petrocelli, raises genuine issues of material fact both as to open hostility at Newark PDC and as to the reasons underlying the disciplinary actions taken against Petrocelli by his supervisors. That evidence is relevant not only for Petrocelli's prima facie case of discrimination, but could also support a reasonable factfinder's belief that an invidious discriminatory reason was a motivating or determinative cause of those actions. Fuentes, 32 F.3d at 764  Therefore, Petrocelli has presented sufficient evidence of pretext to survive a motion for summary judgment, and I will deny the Motion as to the disparate treatment claim based on the disciplinary actions taken against Petrocelli.

The evidence of a hostile work environment is not sufficient, however, to support Petrocelli's disparate treatment claim based on his discharge. DaimlerChrysler has articulated a legitimate nondiscriminatory reason for that action: Petrocelli failed to report to work after he was reinstated because he was incarcerated for possession of cocaine and violation of his probation. (D.I. 58 at A5, 34:4-20, 35:24-36:15; id. at A33,

213:22-214:3; *id.* at A157-59; *see also* D.I. 57 at 26.)  While the evidence about the environment at Newark PDC raises a factual issue as to the motivation behind the discipline given to Petrocelli by his supervisors, a reasonable factfinder could not infer that the decision to discharge Petrocelli after he failed to report was motivated by discrimination.  His failure to report was caused by his own actions in March 2002 and his subsequent arrest, conviction, and incarceration.  Therefore, I will grant the Motion as to the disparate treatment claim based on Petrocelli's discharge.[3]

C.    *Retaliation*

In his amended complaint, Petrocelli alleges that DaimlerChrysler discharged him in retaliation for filing his first Charge of Discrimination on January 22, 2002.  (*Id.* at A172, (1)(c).)  That allegation, made pursuant to Title VII, was first raised in a Charge of Discrimination filed by Petrocelli with the EEOC on April 3, 2003.  (*Id.* at A162.)  The EEOC issued a dismissal on September 10, 2003, giving Petrocelli notice that his right to sue on that charge would be lost after ninety days.  (*Id.* at A163.)

DaimlerChrysler correctly points out (D.I. 57 at 33) that Petrocelli did not file his compliant until August 16, 2004 (D.I. 58 at A164-66), and so his claim of retaliation under Title VII was filed outside the ninety-day window and is therefore time-barred.

---

[3]In his claim that DaimlerChrysler retaliated against him for filing a discrimination charge, Petrocelli alleged that the Company knew that he was incarcerated and that the timing of his reinstatement was manipulated so that he would be unable to report. (D.I. 58 at A162.)  As discussed below, *infra* Section IV.C, that retaliation claim is time-barred, and the allegations concerning the timing of his reinstatement were not raised in the EEOC charge which provides the basis for this suit (*id.* at A160).  Thus, those allegations may not be used to support the disparate treatment claim based on his discharge.  In addition, as noted below, *infra* Section IV.C, Petrocelli has adduced no evidence to support his allegation that the timing of his reinstatement was actually manipulated.

14

*See* 42 U.S.C. § 2000e-5(f)(1). That time bar is subject to equitable tolling if the filing was untimely "due to sufficiently inequitable circumstances." *Grice v. U.S. Postal Serv.*, No. Civ.A.05-2404, 2005 WL 1528880, at *4 (D.N.J. June 29, 2005). No such circumstances have been presented here. Even though Petrocelli is proceeding pro se, he filed his complaint in a timely manner after the EEOC dismissed his disparate treatment and hostile work environment charges, and there is no apparent excuse for his failure to do so for his retaliation charge. (D.I. 58 at A164-66, A169.) Thus, I conclude that Petrocelli's retaliation claim is time-barred.

Even if that claim were not time-barred, Petrocelli has failed to demonstrate a causal link between his charge of discrimination and his discharge. *See Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (requiring such a demonstration to support a prima facie claim of retaliation). As already noted, *supra* Section IV.B, Petrocelli was discharged after failing to report to work because he was incarcerated. Petrocelli has produced no evidence to support the allegation that that decision was caused by a retaliatory motive. Therefore, in addition to being time-barred, Petrocelli has failed to establish a prima facie case of retaliation.

D.   *Defamation*

Finally, in addition to his claims under Title VII and the Delaware Act, Petrocelli makes a defamation claim, apparently pursuant to Delaware common law. (D.I. 58 at A173.) In support of its Motion, DaimlerChrysler does not dispute whether Petrocelli has established a prima facie claim of defamation, but asserts that it is protected by the qualified privilege between employer and employee. (D.I. 57 at 35-36.)

DaimlerChrysler is correct that, under Delaware law, statements made in furtherance of the common interest of management and labor in operating a successful business are privileged. *Gonzales v. Avon Prods., Inc.*, 609 F. Supp. 1555, 1559 (D. Del. 1985) (citing *Battista v. Chrysler Corp.*, 454 A.2d 286, 291 (Del. Super. Ct. 1982)). The statements made about Petrocelli, including allegations of theft and loafing (D.I. 58 at A173), appear to fall within that common interest. However, the qualified privilege will be lost if the speaker knows the statement is false, or if the speaker acts with express malice, a desire to cause harm, or bad faith. *Gonzales*, 609 F. Supp. at 1559. The evidence raised by Petrocelli in support of his hostile work environment claim, when viewed in the light most favorable to him, also raises a genuine issue as to the motives behind the allegedly defamatory statements. Therefore, I will deny the Motion as to the defamation claim.

## V. CONCLUSION

Accordingly, I will grant the Motion for Summary Judgment as to the disparate treatment claim based on Petrocelli's discharge and as to the retaliation claim. I will deny the Motion in all other respects. An appropriate order will follow.

16